Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 1 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

```
 1              UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF GEORGIA

 3                   ATLANTA DIVISION

 4

 5   JOHN RUCH,
     Plaintiff,
 6                            CIVIL ACTION FILE NO.
     vs.                      1:15-CV-03296-MHC
 7
     CITY OF ATLANTA SERGEANT
 8   MICHELLE MCKENZIE SERGEANT
     ALAN GRUEN OFFICER BROWN,
 9   and DEPUTY CHIEF RODNEY
     BRYANT DEPUTY CHIEF JOSEPH
10   SPILLANE, and MAJOR JAMES
     WHITMIRE, each
11   individually,
     Defendants.
12   _____

13

14

15

16              DEPOSITION OF
                   JOHN RUCH
17

18                8:30 a.m.
            Thursday, April 12, 2018
19
            Stuckey & Manheimer, Inc.
20         150 E. Ponce de Leon Avenue

21              Decatur, Georgia

22   Anthony D. Lorenz, Certified Court Reporter
               RDR, CRR; CCR-B-2022
23

24

25
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 2

```
 1                    APPEARANCES OF COUNSEL

 2

 3    On Behalf of the Plaintiff:

 4         GERRY WEBER, ESQ.
           LAW OFFICES OF GERRY WEBER, LLC.
 5         Post Office Box 5391
           Atlanta, Georgia 31107
 6         404.522.0507
           E-mail: wgerryweber@gmail.com
 7         -and-
           HOLLIE MANHEIMER, ESQ.
 8         STUCKEY & MANHEIMER, INC.
           150 E. Ponce de Leon Avenue, Suite 230
 9         Decatur, Georgia 30030
           404.377.0485
10         E-mail: hmanheimer@mmolaw.com

11

12

13    On Behalf of the Defendants:

14         ALISHA I. WYATT-BULLMAN and
           MAIYSHA RASHAD and
15         STACIE J. MILLER, ESQS.
           CITY OF ATLANTA DEPARTMENT OF LAW
16         City Hall, Suite 5000
           55 Trinity Avenue
17         Atlanta, Georgia 30303-3520
           404.546.4100
18         E-mail: aiwyattbullman@atlantaga.gov

19

20

21

22

23

24

25
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                               April 12, 2018

Page 3

```
 1                       I N D E X

 2

 3                 WITNESS:  JOHN RUCH

 4

 5                 EXAMINATION:              PAGE

 6  BY MS. WYATT-BULLMAN  . . . . . . . . . . . . .5, 208

 7  BY MR. WEBER  . . . . . . . . . . . . . . . . . 207

 8

 9                    EXHIBITS:

10  RUCH              DESCRIPTION              PAGE

11  Exhibit-1   Delaware Municipal Court document.    12

12  Exhibit-2   2/1/2015 statement of John Ruch.      21

13  Exhibit-3   City of Atlanta arrest citation.      22

14  Exhibit-4   Ruch positions held listing.          29

15  Exhibit-5   Google maps.                          48

16  Exhibit-6   Series of Xeroxed Tweets by Ruch.     67

17  Exhibit-7   Series of Xeroxed photographs.       110

18  Exhibit-8   Sketch drawn by witness during the   150
                deposition.
19
    Exhibit-9   Series of Xeroxed photographs.       193
20
    Exhibit-10  Drone footage shot by American Drone  199
21              Industries.

22

23              (Original exhibits attached to

24          original deposition.)

25
```

Elizabeth Gallo
COURT REPORTING, LLC

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 4

```
 1                    Deposition of JOHN RUCH

 2                    Thursday, April 12, 2018

 3                    (Reporter disclosure made pursuant to

 4          Article 10.B of the Rules and Regulations of

 5          the Board of Court Reporting of the Judicial

 6          Council of Georgia.)

 7  THEREUPON --

 8  JOHN RUCH, having been first duly sworn, was examined

 9  and testified as follows:

10                    MS. WYATT-BULLMAN:  This is the

11          deposition of John Ruch, taken pursuant to

12          notice and agreement of counsel.  The

13          deposition is being taken for purposes of

14          discovery and cross-examination and for all

15          other lawful purposes.

16                    All objections as to notice, filing and

17          qualifications of the court reporter will be

18          waived, if that's acceptable?

19                    MR. WEBER:  Acceptable.

20                    MS. WYATT-BULLMAN:  All objections are

21          reserved until such time as the deposition is

22          used at trial, except as to the form of the

23          question or responsiveness of the answer, if

24          that's acceptable?

25                    MR. WEBER:  Acceptable.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                              April 12, 2018

Page 5

```
 1                MS. WYATT-BULLMAN:  Perfect.

 2                MR. WEBER:  And he'll read and sign the

 3       deposition.

 4                MS. WYATT-BULLMAN:  Okay.

 5

 6                         EXAMINATION

 7   BY MS. WYATT-BULLMAN:

 8        Q.    Good morning, Mr. Ruch.  My name is

 9   Alisha Wyatt-Bullman.  We met a moment ago.  I'm a

10   Senior Assistant City Attorney for the City of

11   Atlanta.  And I'm going to ask you some questions

12   today regarding the facts surrounding the complaint

13   you filed against the City of Atlanta and various

14   officers with the Atlanta Police Department.

15                Have you ever had your deposition taken

16   before?

17        A.    No.

18        Q.    Okay.  I'm going to go over a couple of

19   ground rules just to make sure that we get a clean

20   record.  The purpose of today is so that we get a

21   good clean record.  And everything that we say here

22   today is going to be taken down by the court

23   reporter, so it's very important that we speak up,

24   speak clearly.  It's also very important that we

25   provide verbal answers, so no "uh-huhs," "uh-uhs,"
```

Page 6

1    shoulder shrugs or head nods.  They don't really come

2    out very well on the record.  If you answer a

3    question and I ask you for a verbal response, that's

4    what I'm referring to.

5              We also need to work very hard not to

6    talk over each other.  And I'm the world's worst at

7    this, so if at any point, I interrupt your answer,

8    please let me know and I will let you finish

9    answering.

10             By the same token, if you could allow

11   me to finish asking my question fully before you

12   begin to answer, that will help ensure that you

13   answer what I'm wanting you to answer, and also that

14   the record is clear.

15             If you do not hear my question, or you

16   do not understand my question for any reason, please

17   let me know and I will rephrase it or repeat it so

18   that you do hear and/or understand it.  If you answer

19   my question, I'm going to assume that you both heard

20   my question and that you understood my question.  Is

21   that fair?

22        A.    Yes.

23        Q.    If you need a break for any reason,

24   please let me know.  I'm more than happy to provide

25   as many breaks as are needed.  I would ask that if

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 7

1    there's a question pending that you answer that

2    question before the break is taken.  Is that fair?

3         A.    Yes.

4         Q.    Have you understood everything we have

5    discussed so far?

6         A.    Yes.

7         Q.    Can you please state your full name for

8    the record.

9         A.    John Bartlett Ruch.

10        Q.    And what's your date of birth?

11        A.    8/9/1971.

12        Q.    Are you currently taking any

13   medication?

14        A.    No.

15        Q.    Did you forego taking any medication in

16   anticipation of today's deposition?

17        A.    No.

18        Q.    Are you currently under a doctor's care

19   for any reason?

20        A.    No.

21        Q.    Have you consumed alcoholic beverages

22   or illegal drugs in the last 24 hours?

23        A.    No.

24        Q.    Is there any reason why you would not

25   be able to provide honest and accurate testimony here

John Ruch vs City of Atlanta, et al.
John Ruch                                                               April 12, 2018

Page 8

```
 1   today?

 2        A.     No.

 3        Q.     Are there any problems with your

 4   hearing?

 5        A.     No.

 6        Q.     Perfect.  And you have your glasses on

 7   today, so I'm assuming that you need your glasses for

 8   vision; is that correct?

 9        A.     Yes.

10        Q.     But other than the use of your glasses,

11   you have no issues with your vision?

12        A.     No.

13        Q.     Have you kept a diary or a journal in

14   the last 10 years?

15        A.     No.

16        Q.     Are you married?

17        A.     No.

18        Q.     Were you married at the time of your

19   arrest on November 25th, 2014?

20        A.     No.

21        Q.     What is your current address?

22        A.     6050 Roswell Road, Apartment 512, Sandy

23   Springs, Georgia 30328.

24        Q.     And how long have you lived at this

25   address?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 9

1          A.      Since October of this -- of last year.

2          Q.      Since October of 2017?

3          A.      Yes.

4          Q.      And prior to living at the Roswell Road

5    address, where did you live?

6          A.      In Dunwoody, Georgia.

7          Q.      And how long were you at the Dunwoody

8    address?

9          A.      Starting in 2013.

10         Q.      And do you recall that address?

11         A.      2295, Apartment -- Dunwoody Crossing,

12   Apartment G, Dunwoody, Georgia 30338.

13         Q.      And you lived at the Dunwoody Crossing

14   apartment from 2013 to 2017; is that correct?

15         A.      Correct.

16         Q.      And you were arrested by the Atlanta

17   Police Department on November 25th of 2014; is that

18   correct?

19         A.      Yes.

20         Q.      And at the time of your arrest, was

21   your home address the Dunwoody Crossing apartment?

22         A.      Yes.

23         Q.      And did anyone live with you at that

24   address?

25         A.      No.

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 10

1       Q.      Do you have a cell phone?

2       A.      Yes.

3       Q.      What is your cell phone number?

4       A.      (617)817-3486.

5       Q.      Was this the cell phone number that you

6    had on the date of your November 25th, 2014 arrest?

7       A.      Yes.

8       Q.      Who is your service provider?  Your

9    cell phone service provider?

10      A.      Verizon Wireless.

11      Q.      And was Verizon Wireless your cell

12   phone service provider on the date of your arrest?

13      A.      I don't recall.

14      Q.      If it wasn't Verizon, who would it have

15   been?

16      A.      I don't recall.

17      Q.      But you had the same number?

18      A.      Yes.

19      Q.      Do you recall changing cell phone

20   service providers since 2014?

21      A.      I do not recall.

22      Q.      Do you have any children?

23      A.      No.

24      Q.      Do you have any family members that

25   live in Fulton County?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 11

```
 1          A.      No.

 2          Q.      Do you have any family members that

 3   live in the northern part of Georgia?

 4          A.      No.

 5          Q.      Are you related to anyone who works for

 6   the City of Atlanta?

 7          A.      Not to my knowledge, no.

 8          Q.      Are you known by any other names?

 9          A.      No.

10          Q.      Do you have any social media accounts?

11          A.      Yes.

12          Q.      Can you provide the list of social

13   media accounts that you have?

14          A.      Yes.

15          Q.      What are they?

16          A.      And I believe I have provided that in

17   discovery.

18          Q.      And what are those social media

19   accounts?

20          A.      One is a Facebook account.  I do not

21   recall the precise URL or identification of that

22   account.  That would have been provided in discovery.

23                  I have a Twitter account, which is John

24   Ruch Atlanta.

25          Q.      Anything other than Facebook and
```

Page 12

```
 1    Twitter?
 2          A.      No.
 3          Q.      Have you ever been convicted of a
 4    crime?
 5          A.      Yes.
 6          Q.      And what crime were you convicted of?
 7          A.      Trespass.
 8          Q.      And do you know when you were convicted
 9    of trespass?
10          A.      I do not recall the exact date.
11          Q.      Do you know where you were convicted of
12    trespass?
13          A.      It was Delaware, Ohio.
14          Q.      I'm going to pass you a document that
15    we're going to mark as Exhibit 1.
16                  (Exhibit 1 was marked for
17                  identification.)
18          Q.      (By Ms. Wyatt-Bullman) Are you familiar
19    with the document that has been marked as Defendant's
20    Exhibit 1?
21          A.      Yes.
22          Q.      And what is Defendant's Exhibit 1?
23          A.      I'm sorry -- can you repeat the
24    question?
25          Q.      What is Defendant's Exhibit 1?
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 13 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 13

1          A.     It is a Delaware Municipal Court

2     document.

3          Q.     Is this the judgment for your trespass

4     conviction?

5               MR. WEBER:  Object as to form.  Sorry.

6          Go ahead.

7               THE WITNESS:  I do not know literally

8          what type of formal record this is.  But it

9          describes and gives information about the

10          judgment in my trespass case.

11          Q.     (By Ms. Wyatt-Bullman) Okay.  And were

12     you an adult when this trespass conviction was made?

13          A.     Yes.

14          Q.     All right.  And have you satisfied all

15     the conditions of any punishment you may have

16     received for this trespass conviction?

17          A.     Yes.

18          Q.     Other than the trespass conviction,

19     have you been convicted of any other crimes?

20          A.     No.

21          Q.     Have you ever been a party to a

22     lawsuit, other than the lawsuit we are here to

23     discuss?

24          A.     Yes.

25          Q.     And which other lawsuits have you been

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 14

```
 1   a party to?
 2           A.      I was involved in a personal-injury
 3   lawsuit.
 4           Q.      And when was that?
 5           A.      I don't recall the exact date of that
 6   lawsuit.
 7           Q.      What jurisdiction was it brought in?
 8           A.      I also do not recall the specific
 9   jurisdiction, whether that was city or county court.
10           Q.      Okay.  What state was it brought in?
11           A.      Massachusetts.
12           Q.      And do you recall the year?
13           A.      I do not recall the specific year.
14           Q.      Would it have been more than 10 years
15   ago?
16           A.      Yes.
17           Q.      And were you the plaintiff or the
18   defendant in the lawsuit?
19           A.      Plaintiff.
20           Q.      And do you remember the circumstances
21   of the lawsuit?
22           A.      Can you clarify --
23           Q.      Sure.
24           A.      -- the question?
25           Q.      Why did you bring the lawsuit?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 15

```
 1          A.      I was injured by a driver who struck me

 2   while I was a pedestrian in a crosswalk.  I brought

 3   the suit to recover damages and medical costs.

 4          Q.      What injuries did you receive as a

 5   result of that accident?

 6          A.      It was injuries to my shoulder, various

 7   abrasions and bruises.

 8          Q.      And can you describe the injury to your

 9   shoulder in a little bit more detail?

10          A.      I do not recall a specific diagnosis.

11          Q.      Did you seek medical treatment for that

12   injury?

13          A.      Yes.

14          Q.      And which shoulder was it?

15          A.      My left shoulder.

16          Q.      And where did you seek medical

17   treatment for your left-shoulder injury?

18          A.      Can you clarify the question?

19          Q.      You said you sought medical treatment

20   for your left-shoulder injury that arose out of this

21   accident in which you were a pedestrian in a

22   crosswalk.  Where did you seek that treatment from?

23          A.      I was treated at a hospital emergency

24   room.  And by a physician, I do not recall a specific

25   name, address, or location.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 16

```
 1                      I also received physical therapy

 2    treatment.

 3          Q.     Do you recall what city you were in

 4    when this accident occurred?

 5          A.     Boston, Massachusetts.

 6          Q.     And you don't recall any specific

 7    diagnosis for your left-shoulder injury?

 8          A.     No.

 9          Q.     Did you have to undergo surgery for

10    your injury?

11          A.     No.

12          Q.     And did you receive a judgment -- let

13    me ask a better question.

14                 Did you receive any monetary

15    compensation as a result of the lawsuit you brought

16    for the injury we're speaking of that occurred in

17    Boston, Massachusetts?

18          A.     Yes.

19          Q.     Did you speak to anyone in preparation

20    for today's deposition?

21          A.     Yes.

22          Q.     Who did you speak with?

23          A.     My attorneys.

24          Q.     And about how long did you meet with

25    them?
```

Page 17

```
 1          A.      I don't recall.

 2          Q.      Was it more than an hour?

 3          A.      I don't recall.

 4          Q.      And when did you speak with them?

 5          A.      Last week.

 6          Q.      Did you just meet with them one time to

 7    prepare for today?

 8          A.      Yes.

 9          Q.      And that was a face-to-face meeting?

10          A.      Yes.

11          Q.      Other than speaking with your attorneys

12    in preparation for today, did you speak to anyone

13    else about today's deposition?

14          A.      Can you clarify what you mean by that?

15          Q.      Sure.  So we know that you spoke to

16    your attorneys in preparation for today.  Other than

17    speaking with your attorneys, did you speak to any

18    other person about today's deposition?

19          A.      Yes, in terms of my notifying people of

20    my schedule; not in terms of preparing in a legal

21    manner for the deposition.

22          Q.      And who did you notify?

23          A.      My employer and my coworkers.

24          Q.      All right.  Other than talking to your

25    attorneys about this case, have you spoken to any
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 18

```
 1    other person about any of the facts of this case?

 2           A.     Yes.  I have spoken to reporters.

 3           Q.     And which reporters are those?

 4           A.     I cannot recall all of them.  There

 5    have been a number of them.  One was Doug Richards of

 6    Channel 11 News.

 7           Q.     And when did you speak with

 8    Mr. Richards?

 9           A.     I don't recall specifically.

10           Q.     Would it have been --

11           A.     It was for a broadcast interview.

12           Q.     Would it have been within the last

13    year?

14           A.     No.

15           Q.     Would it have been within the last two

16    years?

17           A.     I don't recall with precision.

18           Q.     Would it have been within a year of

19    your arrest?

20           A.     I also do not recall with precision.

21           Q.     And do you know what the subject matter

22    of the story that Mr. Richards was doing?

23                  MR. WEBER:  Object as to form.

24                  THE WITNESS:  Does that mean I answer

25           it?
```

Page 19

```
 1                 MR. WEBER:  Yes.  I'm sorry.  When I
 2         say ""object as to form," you just let me say
 3         my few words and then you answer.
 4                 THE WITNESS:  All right.
 5         Q.    (By Ms. Wyatt-Bullman) He'll tell you
 6  very clearly if he doesn't want you to answer.
 7                 MR. WEBER:  Yes.
 8                 THE WITNESS:  Could you repeat the
 9         question?
10         Q.    (By Ms. Wyatt-Bullman) Sure.  Do you
11  know -- you indicated that you gave an interview for
12  Mr. Richards.  Do you know what the subject matter of
13  Mr. Richards' story that he was using your interview
14  in, entailed?
15                 MR. WEBER:  Object as to form.
16                 Go ahead.
17                 THE WITNESS:  I do not know.  I did not
18         view his report.
19         Q.    (By Ms. Wyatt-Bullman) Okay.  Other
20  than Mr. Richards, do you recall any other reporters
21  that you spoke to?
22         A.    I spoke to a reporter for the Fulton
23  County Report -- "Daily Report," I believe it is
24  called.  I do not recall the specific reporter.
25         Q.    Okay.  Anyone else?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                              April 12, 2018

Page 20

1          A.      Not that I specifically recall.

2          Q.      Other than speaking to reporters, did

3     you speak to anyone else regarding the facts of this

4     case?

5          A.      No.

6                  MR. WEBER:  And just for completeness,

7          you mean other than the OPS and citizen review

8          board folks.

9          Q.      (By Ms. Wyatt-Bullman) Did you speak to

10    Atlanta's Office of Professional Standards regarding

11    the facts of this matter?

12         A.      Yes.  And an Atlanta -- the -- the

13    Civilian Review Board had an investigator who I spoke

14    to about the facts of the case as well.

15         Q.      You haven't shared any of the facts of

16    the case with any of your friends or family members?

17         A.      No.

18         Q.      All right.  In preparation for today's

19    deposition, did you review any documents?

20         A.      Yes.

21         Q.      What documents did you review?

22         A.      My statement that I submitted as part

23    of the complaint to police, as part of the lawsuit

24    itself: the narrative.

25         Q.      I'm going to hand you a document that

Page 21

```
 1    we're going to mark as Exhibit 2.

 2                (Exhibit 2 was marked for

 3          identification.)

 4          Q.     (By Ms. Wyatt-Bullman) Take a moment to

 5    look at that and tell me when you're ready.

 6          A.     I'm ready.

 7          Q.     Okay.  Do you recognize the document

 8    that has been marked as Defendant's Exhibit 2?

 9          A.     Yes.

10          Q.     And what is Defendant's Exhibit 2?

11          A.     It is a copy of the statement that I

12    submitted as part of my complaint.

13          Q.     And is that the document that you

14    reviewed in preparation for today?

15          A.     Yes.

16          Q.     Is that the only document you reviewed

17    in preparation for today?

18          A.     No.

19          Q.     What other documents did you review in

20    preparation for today?

21          A.     The one other document was the actual

22    copy of my -- the citation that I was given by

23    officers following my November 25th, 2014 arrest.

24          Q.     I'm going to pass you a document we're

25    going to mark as Defendant's Exhibit 3.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

```
 1                    (Exhibit 3 was marked for

 2          identification.)

 3          Q.     (By Ms. Wyatt-Bullman) Do you recognize

 4   the document that's been marked as Defendant's

 5   Exhibit 3?

 6          A.     Yes.

 7          Q.     And what is Defendant's Exhibit 3?

 8          A.     It is a photocopy of my arrest citation

 9   from the November 25th incident.  2014 incident.

10          Q.     Is this the other document that you

11   reviewed in preparation for today?

12          A.     Yes.

13          Q.     And other than Defendant's Exhibit 2

14   and Defendant's Exhibit 3, did you review any other

15   documents in preparation for today?

16          A.     No.

17          Q.     Going back to Defendant's Exhibit 2, if

18   you could turn to the last page.  And there is a

19   signature line and a signature on that page.  Is that

20   your signature?

21          A.     Yes.

22          Q.     Based on your review of your statement

23   in preparation for today, do you believe that your

24   statement is true and accurate?

25          A.     Yes.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                  April 12, 2018

Page 23

```
 1          Q.      And are there any facts that you
 2    believe should be corrected within your statement?
 3          A.      No.
 4          Q.      I want to go through your educational
 5    background.  Where did you attend high school?
 6          A.      Seneca Valley High School.
 7          Q.      Where is Seneca Valley High School
 8    located?
 9          A.      Pennsylvania.
10          Q.      What part of Pennsylvania?
11          A.      I don't recall the -- I don't recall
12    the exact city or township.
13          Q.      How long did you -- let me ask a better
14    question.  Was the name of the school, Seneca Valley
15    High School?
16          A.      Yes.
17          Q.      And did you attend Seneca Valley High
18    School for all four years?
19          A.      Yes.
20          Q.      And when did you graduate, or did you
21    graduate?
22          A.      I did graduate.
23          Q.      Do you know when?
24          A.      I should recall.  I do not recall the
25    specific year.  I would have to do math on that.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

                                                                        Page 24
1           Q.      Okay.

2           A.      At an appropriate age.

3           Q.      Okay.  After completing high school,

4    did you attend college?

5           A.      Yes.

6           Q.      Where did you attend college?

7           A.      Ohio Wesleyan University.

8           Q.      How many years did you attend Ohio

9    Wesleyan?

10          A.      Four years.

11          Q.      Did you receive a degree?

12          A.      To finish my answer --

13          Q.      Yes, sorry.

14          A.      -- I attended for four years.  I later

15   completed the degree with outside courses, without

16   physically attending the university, including

17   classwork in attendance at Harvard University.

18          Q.      Okay.  And you ultimately received a

19   degree, correct?

20          A.      Yes.

21          Q.      And what was that degree in?

22          A.      It, as I recall, is a Bachelor of Arts

23   degree, without a specific subject focus.

24          Q.      So a general B.A.?

25          A.      Yes.

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 25

```
 1          Q.      And the degree was ultimately from Ohio
 2    Wesleyan?
 3          A.      Yes.
 4          Q.      Have you attended any courses since you
 5    completed your degree with Ohio Wesleyan?
 6          A.      Yes.
 7          Q.      What courses would those have been?
 8          A.      I attended Suffolk University Law
 9    School and Capella University, an online university.
10          Q.      Did you receive a degree from Suffolk?
11          A.      No.
12          Q.      How long did you participate in the law
13    school program at Suffolk?
14          A.      I don't recall specifically.
15          Q.      Did you complete your first year?
16          A.      No.
17          Q.      Did you complete the first semester?
18          A.      No.
19          Q.      So you were enrolled in Suffolk,
20    correct?
21          A.      Suffolk University Law School, correct.
22          Q.      Yes.  And you attended classes at
23    Suffolk University Law School, correct?
24          A.      Yes.
25          Q.      But you did not complete the first
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 26

1    semester at Suffolk University?

2            A.      Yes.

3            Q.      Did you receive any degree from Suffolk

4    University Law School?

5            A.      No.

6            Q.      Do you recall the timeframe that you

7    were at Suffolk University?

8            A.      I don't recall.

9            Q.      Do you know what year?

10           A.      I don't recall specifically.

11           Q.      Would it have been within the last 10

12   years?

13           A.      I don't recall specifically.

14           Q.      Let's do it this way:  After you

15   completed high school, did you go directly into

16   college?

17           A.      Yes.

18           Q.      And you then completed four consecutive

19   years of college; is that correct?

20           A.      Yes.

21           Q.      After those four years, what did you do

22   next?

23           A.      Could you clarify the question?

24           Q.      Sure.  After you completed the four

25   consecutive years at Ohio Wesleyan, what did you do

John Ruch vs City of Atlanta, et al.
John Ruch                                                         April 12, 2018

Page 27

1    next?

2                    MR. WEBER:  Object as to form.

3                    THE WITNESS:  Do you mean for

4          education?

5          Q.    (By Ms. Wyatt-Bullman) Well, did you go

6    into the workforce, or did you continue education?

7          A.    Yes.  I went into the workforce.

8          Q.    Okay.  And where did you work?

9          A.    CM Media in Columbus, Ohio.

10         Q.    And while you were working for CM Media

11   at Columbus, Ohio, did you attend any college

12   courses?

13         A.    No.

14         Q.    Did you participate in any college

15   courses, even in an online basis?

16         A.    As a student, no.

17         Q.    Okay.  And how long were you at CM

18   Media?

19         A.    1993 to the year 2000.

20         Q.    Okay.  When did you begin taking

21   courses at Harvard?

22         A.    I do not recall the specific year.

23         Q.    You testified earlier that you did not

24   participate in any college courses as a student while

25   you were at CM Media.  So would it be a correct

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 28

1    statement to say that you did not take any courses

2    with Harvard prior to 2000?

3           A.      Yes.

4           Q.      Okay.  So then it would also be a

5    correct statement to say that you did not receive

6    your bachelor's degree until after 2000?

7           A.      Correct.  Yes.

8           Q.      After you received your bachelor's

9    degree, did you immediately begin law school?

10          A.      No.

11          Q.      Okay.  So you left CM Media in

12   Columbus, Ohio in 2000.  Where did you go after that?

13          A.      Do you mean -- can you clarify?  As a

14   job?

15          Q.      Sure.

16          A.      Do you mean --

17          Q.      When you left CM Media in Columbus,

18   Ohio in 2000, did you leave to go to another job?

19          A.      No.

20          Q.      Did you leave to continue your

21   education?

22          A.      No.

23          Q.      Why did you leave CM Media?

24          A.      To move, with my fiancée.

25          Q.      And where did you move to?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 29

1          A.      Boston, Massachusetts.

2          Q.      Did you have any -- did you have a job

3     lined up when you moved to Boston?

4          A.      No.

5          Q.      How long were you unemployed?

6          A.      I continued to have part-time work.

7          Q.      And what was that part-time work doing?

8          A.      Freelance journalism.

9          Q.      How long were you employed as a

10    freelance journalist after you moved to Boston?

11         A.      I don't recall a specific end date for

12    freelance work.

13         Q.      While you were in Boston, at any point,

14    did you -- were you employed full-time?

15         A.      Yes.

16         Q.      And who employed you full-time?

17         A.      The Museum of Fine Arts, Boston; and

18    Gazette Publications; and another employer whose

19    formal name I do not recall at the moment.

20         Q.      Okay.  I think I'm going to help you

21    out here.  I'm going to pass you what's been marked

22    as Defendant's Exhibit 4.

23                 (Exhibit 4 was marked for

24          identification.)

25         Q.      (By Ms. Wyatt-Bullman) Are you familiar

Elizabeth Gallo
COURT REPORTING, LLC

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 30

```
 1   with Defendant's Exhibit 4?

 2          A.      Yes.

 3          Q.      Did you create Defendant's Exhibit 4?

 4          A.      Yes.

 5          Q.      Okay.  And what is Defendant's

 6   Exhibit 4?

 7          A.      It is a résumé of my employment.

 8          Q.      Perfect.  Would this document, which I

 9   am hoping will assist you in remembering years -- do

10   you know at what point you became enrolled in Suffolk

11   Law School?

12          A.      Yes.

13          Q.      When?

14          A.      Between my employment at Gazette

15   Publications Inc. and Independent Newspaper Group.

16          Q.      Okay.  So while you were enrolled in

17   law school, were you also employed?

18          A.      No.

19          Q.      And when did you begin taking classes

20   at Capella University?

21          A.      I do not recall specifically.

22          Q.      Did you receive a degree from Capella

23   University?

24          A.      No.

25          Q.      And what were you studying at Capella?
```

Page 31

1          A.      Psychology.

2          Q.      And how many semesters did you complete

3    with Capella University?

4          A.      I don't recall.  I don't recall if it

5    even has a semester system.

6          Q.      Okay.  Did you complete any courses

7    with Capella University?

8          A.      I don't recall.

9          Q.      Did you attend courses with Capella

10   University prior to enrolling in law school?

11         A.      No.

12         Q.      So it would have been after 2010 that

13   you attended Capella University?

14         A.      I just don't recall.

15         Q.      Okay.  But we know you attended -- you

16   enrolled in law school in 2010, correct?

17         A.      I believe that is correct.

18         Q.      And you did not attend University of

19   Capella prior to law school; is that correct?

20         A.      Correct.

21         Q.      So any courses that you may have taken

22   at Capella University would have been after 2010?

23         A.      I don't recall.

24         Q.      Okay.  Have you had any training as a

25   medical professional?

John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 32

 1          A.      No.

 2          Q.      And have you had any training as a

 3   legal professional?

 4          A.      I attended Suffolk University Law

 5   School.

 6          Q.      For a portion of a semester, correct?

 7          A.      Yes.

 8          Q.      Do you remember what courses you took

 9   during that partial semester?

10          A.      I do not recall specific names of

11   courses.

12          Q.      And is that partial semester of law

13   school, the only legal training you believe you've

14   had?

15          A.      Can you define "legal training"?

16          Q.      Sure.  Did you have any training as an

17   individual who practices law?

18          A.      No.

19          Q.      Did you have any training as a

20   paralegal?

21          A.      No.

22          Q.      And I assume you don't have any

23   training as a judge?

24          A.      No.

25          Q.      Are you currently employed?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

                                                                        Page 33

 1          A.     Yes.

 2          Q.     Who are you employed by?

 3          A.     Springs Publishing.

 4          Q.     Who is Springs Publishing?

 5          A.     Can you clarify the question?

 6          Q.     Yes.  What does Springs Publishing do?

 7          A.     It is a publisher.

 8          Q.     And what do they publish?

 9          A.     Newspapers.

10          Q.     Do you know which newspapers they

11   publish?

12          A.     The "Reporter" newspapers: "Atlanta

13   Intown" and "Atlanta Senior Life."

14          Q.     In what capacity do you serve Springs

15   Publishing?

16          A.     As managing editor of the "Reporter"

17   newspapers.

18          Q.     And what are the "Reporter" newspapers?

19          A.     They are community newspapers serving

20   the Buckhead neighborhood of Atlanta and the cities

21   of Brookhaven, Dunwoody and Sandy Springs.

22          Q.     And as managing editor, do you provide

23   content for the paper?

24          A.     Yes.

25          Q.     And in what capacity do you provide

John Ruch vs City of Atlanta, et al.
John Ruch                                                      April 12, 2018

Page 34

1    content?

2         A.    I report and write stories, and

3    photographs.  I manage a staff of reporters who

4    provide content.  And I manage freelancers who

5    provide content.

6         Q.    At the time of your November 25th, 2014

7    arrest, were you employed?

8         A.    Yes.

9         Q.    And who employed you?

10        A.    Independent Newspaper Group.

11        Q.    Okay.  And where were they based out

12   of?

13        A.    Massachusetts.

14        Q.    So at the time of your November 25th,

15   2014 arrest, you worked for a Massachusetts company?

16        A.    That was part-time employment, yes.

17              I also was employed on a freelance

18   basis by other publications.

19        Q.    And do you recall which publications

20   you were employed by on November 25th, 2014, on a

21   freelance basis?

22        A.    I was employed by "Creative Loafing,"

23   Atlanta.

24        Q.    And was that the only publication that

25   you provided freelance content to?

Page 35

1            MR. WEBER:  Object as to form.

2            THE WITNESS:  On that specific date, I

3        do not recall.

4        Q.    (By Ms. Wyatt-Bullman) When did you

5    move from Massachusetts to Georgia?

6        A.    2013.

7        Q.    Why did you move to Georgia?

8        A.    For better job opportunities.

9        Q.    The mayor will be very happy to hear

10   that there are better job opportunities in Atlanta

11   than there were in Boston.

12       A.    Also to elaborate on a prior answer, I

13   was also, at that time, employed on a part-time basis

14   by the "Rockdale News" in Conyers, Georgia; though

15   the actual work was -- had more of a freelance

16   character.  But that was technically part-time

17   employment.

18       Q.    So on November 25th, 2014, you worked

19   part-time for Independent Newspaper Group out of

20   Boston; and also worked --

21       A.    Out of -- I'm sorry, out of

22   Massachusetts.

23       Q.    Out of Massachusetts-- I apologize.

24   And also worked part-time for "Rockdale News" in

25   Conyers, Georgia; is that correct?

John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 36

1         A.    Correct.

2         Q.    And you also provided freelance work?

3         A.    Yes.

4         Q.    And you recall that you provided

5    freelance -- or that you worked on a freelance basis

6    for "Creative Loafing."  Any other publications that

7    you can think of at that time?

8         A.    On that specific date, no.

9         Q.    Well, let's say just in 2014, do you

10   recall which publications you provided freelance work

11   to in 2014?

12        A.    I don't recall specifically for that

13   year.

14        Q.    Okay.  Did you ever provide freelance

15   articles to the "Atlanta Journal-Constitution"?

16        A.    No.

17        Q.    Okay.  What type of work did you

18   provide for the Independent Newspaper Group?

19        A.    I served as editor of the "Mission Hill

20   Gazette" and the "Jamaica Plain Gazette."

21        Q.    And what were your duties with the

22   "Rockdale News" in Conyers?

23        A.    As a staff reporter.

24        Q.    How long were you -- let me ask a

25   better question.  When did you start working for

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 37 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 37

1    "Rockdale News"?

2         A.    2013.

3         Q.    That would have been through the

4    Covington Newspaper Company, correct?

5         A.    Yes.

6         Q.    Okay.  Prior to November 25th, 2014,

7    did you participate in any protests?

8              MR. WEBER:  I'll object as to form on

9         this.

10              THE WITNESS:  Yes.

11        Q.    (By Ms. Wyatt-Bullman) Do you recall

12   which protests you participated in?

13              MR. WEBER:  And I'll just object as to

14        form.  And just as an explanation, I'm trying

15        to figure out, because I think differentiating

16        reporter from participant -- that's why I'm

17        objecting.  I'm just a little confused.

18              MS. WYATT-BULLMAN:  I'm going to ask

19        about reporting, too.

20              MR. WEBER:  Okay.  Cool.

21              THE WITNESS:  I'm sorry -- can you

22        repeat the question?

23        Q.    (By Ms. Wyatt-Bullman) Sure.  You

24   testified that prior to November 25th of 2014 that

25   you had participated in a protest, and I'm asking

Page 38

1    which protest, or protests, have you participated in.

2          A.    I was a child at the time.  It was one

3    protest.  It related -- it was in Pittsburgh,

4    Pennsylvania, and related to abortion and was

5    organized by my church.  I have no other specific

6    memory as to its content, purpose, or what I was

7    doing there.

8          Q.    Okay.  Other than the protest when you

9    were a child, have you been -- have you been a

10   participant --

11              (Telephonic interruption.)

12              MR. WEBER:  I apologize.

13         Q.    (By Ms. Wyatt-Bullman) Prior to

14   November 25th of 2014, other than this protest in

15   which you were a child, did you participate in any

16   other protests?

17         A.    No.

18         Q.    Prior to November 25th of 2014, did you

19   cover any protests as a reporter?

20         A.    Yes.

21         Q.    And which protests did you cover as a

22   reporter?

23         A.    I covered a march -- a protest march by

24   a group affiliated with the Occupy movement.

25         Q.    In what city did you cover that Occupy

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 39

```
1   group?

2        A.     In Boston, Massachusetts.

3        Q.     Do you recall the year?

4        A.     I do not recall specifically.  I
5   believe it was 2011 or 2012.

6        Q.     Okay.  Other than the Occupy movement,
7   as a reporter, prior to November 25th, 2014, have you
8   covered any other protests?

9        A.     Can you clarify what you mean by
10  "protest," in terms of a march?  I have been to many,
11  many -- innumerable events where people, in a
12  meeting, held signs and so forth, is what I'm trying
13  to clarify.

14       Q.     Sure.  So let's define it as -- let's
15  say prior to November 25th, 2014, other than the
16  Occupy movement that you discussed, have you covered,
17  as a reporter, an event in which a large group of
18  individuals marched or stood in an outdoor place to
19  advocate a position?

20       A.     Yes.

21       Q.     Okay.  And which ones?

22       A.     I also attended the Occupy Boston --
23  "camp," I believe is the proper term, which I believe
24  was in 2011, as a journalist.

25       Q.     Okay.  Anything else?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 40

1        A.      Yes.  It's hard to characterize this

2    one: an Occupy-type display, or demonstration, also

3    in Boston, Massachusetts, in the similar timeframe.

4        Q.      Anything else?

5        A.      Not that I immediately recall.

6        Q.      Would it be a correct statement to say

7    that the November 25th, 2014 protest in Atlanta,

8    Georgia, was the first protest that you covered as a

9    reporter in Georgia?

10        A.      I believe it was the first I covered in

11    person.

12        Q.      What do you mean by "in person"?

13        A.      I may have written about other protests

14    that I did not directly attend --

15        Q.      Did you --

16        A.      -- but that happened in other places.

17    I don't recall.

18        Q.      Okay.  Did you attend any of the

19    protests surrounding the Occupy movement in Boston?

20        A.      Yes, as described just moments ago.

21        Q.      Well, I'm asking for clarification,

22    because you indicated that you have covered protests

23    that you have not attended.  So you were physically

24    present at the Occupy movement in Boston,

25    Massachusetts?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 41

```
 1            A.     At the ones I just described, yes.
 2            Q.     Okay.  And it's your testimony that the
 3   November 25th, 2014 protest, was the first in-person
 4   protest that you reported on, in Georgia; is that
 5   correct?
 6            A.     To the best of my recollection, yes.
 7                   MS. WYATT-BULLMAN:  I keep checking my
 8           watch because I'm on a meter.
 9                   MR. WEBER:  When you reach -- if you're
10           at the end of a section, maybe we can take a
11           couple-of-minute break.
12                   MS. WYATT-BULLMAN:  That's fine.  I can
13           move my car now, if you want to.  Do you want
14           to go off the record?  We've been going for
15           about an hour and 25 minutes.
16                   MR. WEBER:  Yes.  That's fine.
17                   (A short recess was taken, after which
18           the following proceedings were had:)
19                   MS. WYATT-BULLMAN:  Back on the record.
20            Q.     (By Ms. Wyatt-Bullman) Mr. Ruch, when
21   we -- right before we took our break, we were
22   discussing that the November 25th, 2014 protest was
23   the first in-person protest that you attended in
24   Georgia; is that correct?
25            A.     To the best of my recollection, yes.
```

Page 42

```
 1          Q.      Okay.  And how did you come to be in

 2   attendance of the March 25th, 2014 protest?

 3          A.      I was attempting to find breaking news

 4   in Atlanta about spontaneous protests that were

 5   happening nationwide, relating to the Ferguson,

 6   Missouri police controversy.  And in doing so, I

 7   happened to encounter the News Editor of "Creative

 8   Loafing," who was my boss for freelance assignments.

 9   We realized the protest was continuing, not over, as

10   I had thought, and he then employed me to cover it.

11          Q.      Would it be a correct statement to say

12   that your presence at the November 25th, 2014 protest

13   in Atlanta, Georgia, was solely driven by your

14   interest as a reporter?

15          A.      Yes.

16          Q.      Okay.  You said that you started out in

17   an attempt to find breaking news.  Did anyone charge

18   you with the task of finding breaking news?

19          A.      No.

20          Q.      That was something that you took upon

21   yourself; is that correct?

22          A.      Yes.

23          Q.      Okay.  And what time did you arrive at

24   the protest in downtown Atlanta on November 25th,

25   2014?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                         April 12, 2018

Page 43

```
 1          A.      I don't recall.

 2          Q.      Was it daylight outside?

 3          A.      No.

 4          Q.      Do you think it was before 7 o'clock?

 5   7 p.m.?

 6          A.      It was after 7 p.m.

 7          Q.      Do you believe it was before 9 p.m.?

 8          A.      I don't recall.

 9          Q.      Was it before 11 p.m.?

10          A.      I don't recall.

11          Q.      But you do know you arrived at the

12   protest after 7 p.m.?

13          A.      Yes.

14          Q.      And what location did you meet up with

15   the protest?

16          A.      To be distinct, I saw some protesters

17   in the area of Woodruff Park, but the main protest

18   turned out to be some distance away.  And I do not

19   recall where Thomas and I encountered them.

20          Q.      Who is Thomas?

21          A.      Thomas Wheatley, the news editor of

22   "Creative Loafing" Atlanta at that time.

23          Q.      Did you have plans to meet Thomas at

24   the November 25th, 2014 protest?

25          A.      No.
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 44

1      Q.     So it was just happenstance that you

2   saw him there?

3      A.     Yes.

4      Q.     When you sought out -- well, let me ask

5   this question:  How did you learn that there was a

6   protest occurring in Atlanta on November 25th, 2014?

7      A.     From local and national media reports.

8      Q.     And when you began your journey to meet

9   up with the protest, where did you park your car?

10     A.     I did not begin my journey with the

11  intent of meeting this protest.

12     Q.     Okay.  You were watching the news and

13  learned that there was a protest occurring in

14  Atlanta; is that correct?

15     A.     Yes.

16     Q.     And that information prompted you to

17  take action; is that correct?

18     A.     Yes.

19     Q.     What action did you take?

20     A.     I drove to the Vine City area of

21  Atlanta to see if other protests might be forming.  I

22  then drove into downtown Atlanta, again, to see if

23  other protests might be forming.

24     Q.     Okay.  And when you drove into downtown

25  Atlanta, what did you discover?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 45

1        A.      Could you be more specific?

2        Q.      Sure.  You said you drove into downtown

3    Atlanta to see if other protests were forming.  What

4    did that inquiry show you?

5        A.      I saw a number of police officers with

6    vehicles, both parked and moving, in apparent

7    preparation to deal with protesters.  Eventually, I

8    saw a group of police officers standing on a street

9    and, investigating that observation further, led me

10   to covering the main protest.

11       Q.      Okay.  When you saw a number of APD

12   vehicles parked on the street, were you in your

13   vehicle at that time?

14       A.      Yes.  And to clarify, they may have

15   been from other police agencies as well.

16       Q.      And do you recall the street that they

17   were on?

18       A.      I do not recall.

19       Q.      Okay.  And then you also testified that

20   you saw a group of police officers standing in the

21   street.  Did you make that observation from your

22   vehicle as well?

23       A.      Yes.

24       Q.      At what point -- let me ask a better

25   question.  Did you, at some point, exit your vehicle

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 46

1    in downtown Atlanta to cover the protest?

2          A.    Yes.

3          Q.    Where did you park your car?

4          A.    I do not recall.

5          Q.    Do you recall the street?

6          A.    No.

7          Q.    Any landmarks?

8          A.    I may not have even known the streets

9    at the time.  I do not recall specific landmarks.

10         Q.    Okay.  So after you saw the group of

11   police officers standing in the street, you were

12   still in your vehicle, correct?

13         A.    Yes.

14         Q.    When did you exit your vehicle?

15         A.    I don't recall specifically.

16         Q.    Do you recall what part of downtown you

17   were in?

18         A.    I don't, no.

19         Q.    Do you recall what time you saw the

20   officers standing in the street?

21         A.    I do not recall.

22         Q.    Was it dark outside?

23         A.    Yes.

24         Q.    Okay.  Did you speak to any of the

25   police officers that were standing in the street?

Page 47

```
1          A.    No.
2          Q.    On the night of November 25th, 2014,
3    prior to your arrest, did you speak to any officer of
4    any police force?
5          A.    I don't recall.
6          Q.    On the night of November 25th, 2014,
7    prior to your arrest, did you speak to anyone?
8          A.    Yes.
9          Q.    Who did you speak to?
10         A.    I spoke to Thomas Wheatley; I spoke to
11   Max Blau; I spoke to various people involved in the
12   protest; I spoke to the operators of a drone.  I
13   don't recall anyone else I may have spoken to.
14         Q.    Okay.  Did you travel to the protest
15   with anyone?
16         A.    No.
17               To clarify, depending on what we mean
18   by "protest."  When I became -- Thomas and I became
19   aware of the main protest's continuous at the same
20   time, so we then proceeded to that scene together.
21               In terms of me going to downtown
22   Atlanta, it was alone.
23         Q.    So no one rode in your vehicle with
24   you?
25         A.    No.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                          April 12, 2018

```
 1           Q.      You said earlier that you saw police
 2   vehicles parked in an apparent attempt -- or in
 3   apparent preparation to deal with protesters.  Did
 4   you speak to any officers in order to determine what
 5   they were doing?
 6                   MR. WEBER:  Object as to form.
 7           A.      Not that I recall, no.
 8           Q.      (By Ms. Wyatt-Bullman) I'm going to
 9   pass you what I've marked as Defendant's Exhibit 5.
10   It is a very sophisticated Google map.  And there's
11   two of them.
12                   (Exhibit 5 was marked for
13           identification.)
14           Q.      (By Ms. Wyatt-Bullman) Mr. Ruch, I'm
15   going to ask you a series of questions in hopes that
16   we can determine where you were and what you did and
17   in what sequence you made those actions and
18   movements.
19                   And what I have passed you as
20   Defendant's Exhibit 5 is a map of the downtown
21   area -- there's two maps.  The second map is a
22   zoomed-in version of the first.  And the second map
23   includes what we have been advised is your arrest
24   location -- or the second map includes a zoomed-in
25   version of what we've been advised is your arrest
```

Page 49

1    location.  And there are various landmarks noted on

2    the map.  So if, at any point, the map assists you in

3    your testimony, please use it as you need to.

4                 Once you stepped out of your vehicle,

5    where did you go?

6         A.     Towards the gathered police officers.

7         Q.     And do you recall there being any

8    landmarks or any street signs that might have

9    assisted you in knowing your location?

10        A.     The central area was a park that I

11   believe was Woodruff Park.

12        Q.     So you exited your vehicle and you went

13   towards Woodruff Park; is that correct?

14        A.     I went towards the gathered police

15   officers.  I did not know the area at the time.

16        Q.     But you now believe that the police

17   officers were gathered at Woodruff Park; is that

18   correct?

19        A.     In the vicinity of Woodruff Park, yes.

20        Q.     Okay.  And why did you go in that

21   direction?

22        A.     To view and report on what they were

23   doing.

24        Q.     Who was doing?

25        A.     The police officers.

John Ruch vs City of Atlanta, et al.
John Ruch                                                              April 12, 2018

1        Q.      Was your sole motive on the night of

2    November 25th, 2014, to view and report on police

3    officers' activity?

4        A.      No.

5        Q.      When you exited your vehicle, your

6    intent was to review and report on what police

7    officers were doing; is that correct?

8             MR. WEBER:  Object as to form.

9             THE WITNESS:  Partially correct.  My

10            intent was to report on any type of protest

11            activity and any type of official response to

12            the protest activity.

13       Q.      (By Ms. Wyatt-Bullman) When you reached

14   the police officers that were gathered, did you take

15   any photographs or videos of the police officers?

16       A.      Yes; though not necessarily the ones

17   who I specifically saw and attracted me to the area.

18   There turned out to be a number of police officers

19   gathered in various areas in the vicinity.

20       Q.      Do you know if the police officers that

21   you photographed at the first location you went to

22   after exiting your car were Atlanta police officers?

23       A.      I do not recall.

24       Q.      Did anyone stop you from taking those

25   photographs?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 51

```
 1          A.    No.

 2          Q.    And what were the police officers doing

 3    at that location?

 4          A.    I'm sorry -- can you clarify?

 5          Q.    Sure.

 6          A.    Do you mean the specific location,

 7    or . . .

 8          Q.    So it's my understanding that you

 9    exited your vehicle, and you went towards a group of

10    police officers near what you now know as Woodruff

11    Park.  What were those police officers doing at that

12    location?

13          A.    I do not recall what those specific

14    officers were doing.

15          Q.    Did you speak to any of those officers?

16                MR. WEBER:  Object as to form.

17                THE WITNESS:  Not as I recall.

18          Q.    (By Ms. Wyatt-Bullman) Okay.  After you

19    arrived at the Woodruff Park area, what did you do

20    next?

21          A.    I walked around the vicinity to see if

22    any protesters were in attendance and, in doing so,

23    took photos of various police officers and passersby.

24    And then did find some protesters and took

25    photographs of them and attempted to interview them.
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 52

1      Q.      When you say you walked around the
2  vicinity, what does that mean to you?
3      A.      I walked on -- along the streets of a
4  few blocks in the area where I had seen the police
5  activity that originally inspired me to stop and take
6  the opportunity to do news reporting.
7      Q.      Okay.  And what was that activity that
8  you observed?
9      A.      There were several types of activity,
10 such as officers standing in a line together as if
11 preparing to march.  Some were sitting in their
12 vehicles; some were standing along the streets.  And
13 in the vicinity of the protesters, some were
14 observing the protesters.
15     Q.      And what do you mean by "observing the
16 protesters"?
17     A.      Standing on the sidewalk or in the
18 street, looking at them, and -- yeah, looking at
19 them.
20     Q.      When you observed the officers
21 observing the protesters, do you recall any of the
22 protesters filming the police officers?
23             MR. WEBER:  Object as to form.
24             THE WITNESS:  I do not recall.
25     Q.      (By Ms. Wyatt-Bullman) Do you recall

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 53 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 53

1    any of the protesters having recording devices with

2    them?

3          A.    I do not recall.

4                MR. WEBER:  Object as to form.

5                Sorry.  Go ahead.

6          Q.    (By Ms. Wyatt-Bullman) Okay.  When you

7    found the protesters, do you recall what location

8    they were at?

9          A.    They were near a park -- or alongside a

10   park that I was told, as I recall, by Thomas, is

11   Woodruff Park.

12         Q.    Okay.  Did you meet up with

13   Mr. Wheatley at Woodruff Park?

14         A.    No.

15         Q.    Where did you meet up with

16   Mr. Wheatley?

17         A.    On a sidewalk in this vicinity.

18         Q.    In the vicinity of Woodruff Park?

19         A.    Yes.

20         Q.    And do you recall about what time you

21   would have met Mr. Wheatley?

22         A.    I don't recall.

23         Q.    Approximately how long had you been on

24   the streets, or out of your vehicle, when you met up

25   with Mr. Wheatley?

John Ruch vs City of Atlanta, et al.
John Ruch                                                              April 12, 2018

Page 54

1           A.    I don't recall specifically.

2           Q.    Would it have been longer than an hour?

3           A.    Probably not.  I can't recall

4    specifically.

5           Q.    So you saw Mr. Wheatley less than an

6    hour after you'd been in downtown Atlanta on foot?

7           A.    I don't recall specifically.

8           Q.    How many protesters were in the area

9    when you met up with Mr. Wheatley?

10          A.    I don't know.  I did not count them.

11          Q.    Were there more than a thousand?

12          A.    No.

13          Q.    Were there more than 50?

14          A.    I don't know.  It was plainly not the

15   main full-scale protest march.

16          Q.    And how do you know that?

17          A.    So it was a much smaller group of

18   people, but I did not count the exact number.

19          Q.    Was it more than 10 people?

20          A.    I don't know.  I don't recall, and I

21   did not count.

22          Q.    How did you know there was a larger

23   group of protesters?

24          A.    From national and local media reports.

25          Q.    And how did you come to interact with

John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 55

```
 1    Mr. Wheatley?

 2         A.    He approached me on the sidewalk.

 3         Q.    And did you-all have a conversation?

 4         A.    Yes.

 5         Q.    And what did you discuss?

 6         A.    We discussed his presence and my

 7    presence there and the coincidence of us encountering

 8    each other.  We discussed the protest march, which we

 9    believed to be ending.  And we discussed "Creative

10    Loafing" reporter Max Blau's work in covering the

11    protest.

12         Q.    Okay.  Was that all that you discussed

13    with Mr. Wheatley?

14         A.    That's all I recall.

15         Q.    At what point did Mr. Wheatley,

16    quote-unquote, "hire you" to cover the story?

17         A.    Could you clarify what you mean by "at

18    what point"?

19         Q.    Well, during this initial conversation,

20    did Mr. Wheatley hire you to cover the story?

21         A.    No.

22         Q.    How long do you believe this

23    conversation with Mr. Wheatley went on for?

24         A.    A few minutes.

25         Q.    And after your conversation with
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 56

```
 1   Mr. Wheatley ended, what did you do next?

 2        A.     I joined Thomas in looking for Max

 3   Blau.

 4        Q.     All right.  And where did you look for

 5   Mr. Blau at?

 6        A.     In a nearby location, Thomas was taking

 7   the lead.  I was not familiar with the location or

 8   Max's location.  So I was following Thomas.

 9        Q.     And do you know how far you traveled to

10   look for Mr. Blau?

11        A.     I don't know specifically.  I don't

12   recall.  It was not a long journey.

13        Q.     And you were on foot, correct?

14        A.     Yes.

15        Q.     And do you recall any of the streets

16   that you were walking along?

17        A.     No.

18        Q.     And were you --

19        A.     I do not recall.

20        Q.     Were you walking with protesters?

21        A.     No.

22        Q.     Approximately how long did it take you

23   and Mr. Wheatley to find Mr. Blau?

24        A.     I don't recall.  A matter of minutes.

25        Q.     And once you found Mr. Blau, what did
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 57

1    you do next?

2         A.    We spoke with Max and then began to

3    discuss professional coverage of the protest.

4         Q.    And what did that professional coverage

5    discussion entail?

6         A.    Thomas offered to employ me to cover

7    the protest.  I accepted and was then assigned to

8    cover a particular part of the protest.

9         Q.    Okay.  When you found Mr. Blau, were

10   there protesters in the area where he was located?

11        A.    Yes.

12        Q.    And how many protesters?

13        A.    I don't know, and I did not count.  A

14   large number.

15        Q.    More than a hundred?

16        A.    I can't be specific.  I don't know.

17        Q.    And do you know what location Mr. Blau

18   was at?

19        A.    I do not know.

20        Q.    Do you recall any landmarks around him?

21        A.    I do not recall them, no.

22        Q.    Or any street names?

23        A.    I do not.

24        Q.    Okay.  Approximately how long, after

25   exiting your vehicle on November 25th, 2014, did you

John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 58

 1    find Mr. Blau?

 2          A.    I don't recall specifically.

 3          Q.    Would it have been more than an hour

 4    after you exited your vehicle?

 5          A.    I just am not sure.

 6          Q.    Would it have been more than four hours

 7    after you exited your vehicle?

 8          A.    No.

 9          Q.    Would it have been more than three

10    hours after you exited your vehicle?

11          A.    No.

12          Q.    Would it have been more than two hours

13    after you exited your vehicle?

14          A.    No.

15          Q.    So somewhere between an hour and two

16    hours, you believe you met up with Mr. Blau; is that

17    correct?

18          A.    Possibly less than that.  I just don't

19    recall.  I was not watching a clock.

20          Q.    So it's possible that you met up with

21    Mr. Blau less than an hour after you exited your

22    vehicle?

23          A.    It is possible, yes.

24          Q.    What were your specific duties as

25    assigned by Mr. Wheatley?

John Ruch vs City of Atlanta, et al.
John Ruch                                                      April 12, 2018

Page 59

1          A.     I was to cover the -- not the end of

2     the -- the tail of the protest, such as it was,

3     loosely defined.

4          Q.     What do you mean, "such as it was

5     loosely defined"?  What do you mean by that?

6          A.     The protesters' main activity was

7     engaging in a March along the sidewalk; thus forming

8     a line of people.  And so my duty was to cover the

9     people towards the end of that line.

10         Q.     Okay.  And when you say "cover," what

11    were you to do to cover that event?

12         A.     I was to take photographs and write

13    Tweets documenting and reporting on anything

14    significant that they did or said, which was then

15    incorporated into "Creative Loafing's" live blog of

16    the protest, and also to use that material for

17    potential future stories to be determined.

18         Q.     So one of your duties was to Tweet

19    photographs and written content during the protest;

20    is that correct?

21         A.     Correct.

22         Q.     And were there any specific ways in

23    which you were to share that with "Creative Loafing,"

24    or note that it was supposed to be content for

25    "Creative Loafing"?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 60

1        A.     No.  That was not a technical

2   requirement of the process.

3        Q.     So you were -- part of your duties, as

4   assigned by Mr. Wheatley, was to just to Tweet on

5   your own personal Twitter feed?

6        A.     Yes, which was then incorporated into

7   "Creative Loafing's" live blog report on its website,

8   as well as its social media.

9        Q.     Okay.  And were you able to -- were you

10  able to post Tweets regarding the protest to Twitter,

11  as assigned by Mr. Wheatley?

12       A.     Yes.

13       Q.     And you were essentially to follow

14  behind the protesters at the end of the protest or at

15  the end of the group of protesters as they moved; is

16  that correct?

17            MR. WEBER:  Object as to form.

18            MS. WYATT-BULLMAN:  Yes.  That's a

19       messy question.  Let me ask it better.

20       Q.     (By Ms. Wyatt-Bullman) Mr. Wheatley

21  assigned you to, as you said, "cover the tail end of

22  the protest."  And in your mind, that meant that you

23  followed the end of the protest as they marched along

24  the sidewalk; is that correct?

25       A.     Correct.  After, or alongside them,

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 61

1    whatever allowed me to understand what they were

2    doing and how officials might be reacting to them or

3    how passersby might be reacting to them.

4         Q.    Okay.  So it wasn't as if you had to be

5    the last person in the line of marchers; you just

6    needed to be in that back area; is that correct?

7         A.    Correct.

8         Q.    Okay.  Do you know what streets you

9    were marching along?

10         A.    Some, but certainly not all.

11         Q.    Okay.  Do you recall what street you

12    started at?

13         A.    I do not.

14         Q.    Do you recall any landmarks around

15    where you started?

16         A.    No.

17         Q.    And you said you were attempting to

18    interview protesters.  Did anyone agree to be

19    interviewed by you?

20         A.    It was not that formal a process.  Some

21    protesters spoke briefly with me.

22         Q.    And did you have any of their names?

23         A.    No.

24         Q.    So they spoke with you, but you didn't

25    acquire any names?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 62

1          A.     Correct.

2          Q.     **Did you quote any of the protesters in**

3   **any of the content you provided for that night?**

4          A.     I don't recall.

5          Q.     **Okay.  When you began to follow the**

6   **protesters, did you observe any police officers in**

7   **the area?**

8          A.     Yes.

9          Q.     **And were those police officers members**

10  **of the Atlanta Police Department?**

11         A.     Some of them certainly were.  I do not

12  recall if some may have been with other police

13  agencies.

14         Q.     **Okay.  And what were those officers**

15  **doing?**

16         A.     A wide variety of activities.

17         Q.     **Okay.  And what were those activities?**

18         A.     Standing on sidewalks and in the

19  streets; some directing traffic; some sitting in

20  cars; some driving in cars; some speaking with

21  protesters; flying a helicopter, and possibly other

22  activities.

23         Q.     **Were there any other activities that**

24  **you observed?**

25         A.     I don't recall.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 63

```
 1        Q.     The "possibly other activities," what
 2   would that encompass?
 3        A.     I don't know.
 4        Q.     Did you -- when you began to follow the
 5   protesters, did you observe any protesters who had
 6   recording devices with them? -- devices that could
 7   take photographs or take video recordings?
 8        A.     Yes.
 9        Q.     And were those protesters utilizing
10   those recording devices?
11               MR. WEBER:  Object as to form.
12               THE WITNESS:  Can you clarify what you
13        mean by "utilizing as recording devices,"
14        or . . .
15        Q.     (By Ms. Wyatt-Bullman) Sure.  Did you
16   observe any protesters taking any photographs during
17   the protest?
18               MR. WEBER:  Object as to form.
19               THE WITNESS:  Yes.
20        Q.     (By Ms. Wyatt-Bullman) And did you
21   observe APD stopping any of those individuals from
22   taking any photographs?
23               MR. WEBER:  Object as to form.
24               THE WITNESS:  No.
25        Q.     (By Ms. Wyatt-Bullman) And did you
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 64

1    yourself -- were you able to take photographs of the

2    protesters as you began to follow them?

3         A.    As I began, yes.

4         Q.    And what type of device were you using

5    to take those photographs?

6         A.    A cell phone.

7         Q.    What type of cell phone?

8         A.    An Apple iPhone.

9         Q.    On November 25th, 2014, did you have

10   press credentials on you?

11        A.    Yes.

12        Q.    And where were those credentials from?

13        A.    They were from the "Rockdale News" and

14   the "Mission Hill" and "Jamaica Plain" gazettes.

15        Q.    And in what form were the credentials?

16   Were they in a card? a badge?

17        A.    A form of -- two passes each in the

18   form of a laminated business-type card.

19        Q.    At any point, did you inquire as to

20   whether there was an area set up for reporters to

21   cover the protest?

22        A.    No.  And nor was there -- there would

23   not be an expectation of such a thing.

24        Q.    So you would be surprised to know that

25   there was a press area set up for -- maintained for

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 65

```
 1    reporters covering the protest?

 2         A.    Yes.  The protest was -- appeared to be

 3    moving under its own direction, and there would be no

 4    way to anticipate where it was going.

 5         Q.    So after the protesters began to move,

 6    do you know which direction you went?

 7         A.    I do not.

 8         Q.    Do you recall any of the streets that

 9    you walked upon?

10         A.    In -- I'm sorry, can you clarify

11    when --

12         Q.    Sure.  So I'm still trying to work

13    chronologically from -- you know, we're talking about

14    from the time you got out of your vehicle, you're at

15    Woodruff Park, you met up with Mr. Wheatley; you and

16    Mr. Wheatley then went and found Mr. Blau, you found

17    Mr. Blau, you became employed by Mr. Wheatley, the

18    march began to move.  Where did it go?

19         A.    I do not recall specific streets or

20    directions.

21         Q.    Okay.

22         A.    Particularly in chronology.

23         Q.    Do you recall any of the streets in

24    which you walked upon?

25         A.    At the beginning, or . . .
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 66

```
 1          Q.     Yes.

 2          A.     I do not.

 3          Q.     Do you recall any landmarks or

 4    buildings that you passed by?

 5          A.     In the early phase, I do not.

 6          Q.     Do you recall passing by the CNN

 7    Center?

 8          A.     I recall seeing a CNN sign and perhaps

 9    referring to that in my coverage.  I don't know if

10    that was literally the CNN Center, however.

11          Q.     Okay.  How long did you move with the

12    group of protesters?

13                 MR. WEBER:  Object as to form.

14                 THE WITNESS:  I don't recall with

15          precision.  A significant time.

16          Q.     (By Ms. Wyatt-Bullman) Would it have

17    been more than four hours?

18          A.     I'm not sure.

19          Q.     Would it have --

20          A.     I don't -- I don't think so, but I'm

21    not sure.

22          Q.     Okay.  Would it have been more than

23    five hours?

24          A.     I believe not.

25          Q.     Okay.  Would it have been more than
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 67

1    three hours?

2         A.    I'm just not sure.

3         Q.    Okay.  It could perhaps have been

4    somewhere between three and four hours?

5         A.    It's possible.

6         Q.    But definitely no more than five?

7         A.    That's -- yes.

8         Q.    Okay.  Do you recall at what time you

9    started Tweeting?

10        A.    I don't recall.

11        Q.    Okay.  Let's do this.  This might help.

12              I'm going to pass you a bundle of what

13   I have been told are Tweets that you made on

14   November 25th, 2014, and we're going to mark this as

15   Defendant's Exhibit 6.

16              (Exhibit 6 was marked for

17              identification.)

18        Q.    (By Ms. Wyatt-Bullman) Just take as

19   long as you need to look through those.

20              MR. WEBER:  Are you going to have

21        specific questions about ones?

22              MS. WYATT-BULLMAN:  Yes.

23              MR. WEBER:  Okay.

24        Q.    (By Ms. Wyatt-Bullman) Are you familiar

25   with the documents held within Defendant's Exhibit 6?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 68

```
 1        A.    Yes.
 2        Q.    And do you believe that Defendant's
 3   Exhibit 6 encompasses all the Tweets that you made on
 4   November 25th, 2014, relevant to the Ferguson protest
 5   that occurred in Atlanta?
 6        A.    I am not sure.  I would have to check
 7   it against the -- the original list of what we
 8   submitted in discovery.
 9        Q.    Okay.  Is it --
10        A.    It's a large number of documents.  I
11   just -- I'm not sure.
12        Q.    Okay.  Do you believe that you have
13   turned over all of your Tweets relevant to the
14   Ferguson protest that occurred in Atlanta, Georgia,
15   on November 25th, 2014?
16        A.    Yes.
17        Q.    And you believe that all of those have
18   been produced in this matter?
19        A.    Yes.
20        Q.    All right.  So the first Tweet, which
21   has been labeled "Ruch Plaintiff Production 506," do
22   you recall how soon after you took this photograph
23   that you would have put it on Twitter?
24        A.    I don't recall precisely, but a short
25   time.
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 69

```
 1          Q.     So you were taking photographs and then

 2    Tweeting them while you were out in the field; is

 3    that correct?

 4          A.     Yes.

 5          Q.     Okay.  And would this first Tweet have

 6    occurred before or after Mr. Wheatley hired you to

 7    cover the protest?

 8          A.     This was before Thomas hired me.

 9          Q.     And why were you Tweeting before

10    Mr. Wheatley hired you?

11          A.     In my role as a journalist, to provide

12    news to those who follow me, you know, as part of

13    the -- a -- you know, marketing my services.  As well

14    as having this documentation available to myself for

15    possible freelance stories, if I were able to sell

16    them to an outlet in the future.

17          Q.     Okay.  And the Tweet says, "Prison

18    buses ready to go on Edgewood."  Based on that

19    statement, do you believe that the photograph was

20    taken on Edgewood Avenue?

21          A.     Yes.

22          Q.     And how do you know it was a prison

23    bus?

24          A.     Based on looking at it, its design.

25          Q.     Did you stop and ask anybody if it was
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 70

1    a prison bus?

2         A.    No.

3         Q.    Could it have been used to transport

4    personnel?

5         A.    Yes.

6         Q.    So you just assumed it was a prison

7    bus?

8         A.    I was referring to its -- its physical

9    design, in describing it.

10        Q.    How does a prison bus differ from any

11   other bus?

12        A.    With the metal grilles on the -- or

13   security devices on the windows.

14        Q.    And did the bus have any writing on it

15   indicating it was a prison bus?

16        A.    I don't recall.

17        Q.    But you would agree that this bus could

18   have been used to transport personnel?

19        A.    Yes.

20        Q.    Did you see any prisoners in the bus?

21        A.    I don't recall.  I don't believe so.

22        Q.    Did you see -- at the time you took the

23   photograph in what has been labeled "Ruch Plaintiff

24   Production 506," did you see anyone being arrested?

25        A.    I'm sorry -- can you repeat that?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 71

1        Q.      At the time you took the photograph, in

2    the document that's been labeled "Ruch Plaintiff

3    Production 506," did you see anyone being arrested?

4        A.      Not that I recall.

5        Q.      Okay.  How long after you arrived --

6    let me ask a better question.  How long after you

7    exited your vehicle did you take the photograph

8    that's been labeled "Ruch Plaintiff Production 506"?

9        A.      I don't recall.

10       Q.      Would it have been two hours after you

11   arrived?

12       A.      No.  A relatively short time.  A matter

13   of minutes.

14       Q.      Okay.  So then would it be accurate to

15   say you parked your vehicle somewhere around 8:40 at

16   night?

17       A.      Around -- around that time, yes.

18       Q.      Okay.  So 8:40, 8:30, is most likely

19   the time that you exited your vehicle in order to

20   cover the protest on November 25th, 2014?

21       A.      First of all, I can't say with that

22   specific a certainty.  Second of all, I stopped twice

23   in downtown Atlanta.  So this -- you are referring to

24   what became my coverage of the main protest march,

25   that was an entirely separate parking and approaching

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 72

```
 1   sequence.
 2          Q.      Okay.  Well, let's talk about that.
 3   Because you said you stopped twice in downtown
 4   Atlanta.
 5          A.      Yes.
 6          Q.      So I know you went to Vine City first.
 7          A.      Yes.
 8          Q.      And then you came into downtown
 9   Atlanta.
10          A.      Yes.
11          Q.      And you said you observed some
12   officers, vehicles in the street, and then you
13   observed officers standing in the street.  Did you
14   stop somewhere in downtown Atlanta, prior to making
15   those observations?
16          A.      I'm sorry -- can you clarify?
17                  MR. WEBER:  Stopped in the park?  I'm
18          sorry.
19          Q.      (By Ms. Wyatt-Bullman) You said you
20   made two stops in downtown Atlanta.
21                  MR. WEBER:  Oh.
22          Q.      (By Ms. Wyatt-Bullman) I'm trying to
23   figure out when the stops were.
24          A.      This is during the first stop that I
25   recall, this Edgewood -- this Tweet referring to
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                        April 12, 2018

Page 73

1    "Edgewood" was during the first time that I recall

2    stopping and exiting my vehicle.

3          Q.    Okay.  And after you made the Tweet

4    that included the "prison bus," did you return to

5    your vehicle?

6          A.    Yes.

7          Q.    And how long after you made the "prison

8    bus" Tweet did you return to your vehicle?

9          A.    I don't recall.  But not a long period

10   of time.

11         Q.    Less than an hour?

12         A.    Most likely.

13         Q.    Less than 30 minutes?

14         A.    I don't recall.

15         Q.    Okay.  And did you -- between the time

16   that you got out of your vehicle and posted the

17   8:48 Tweet and returned to your vehicle, did you

18   speak to anyone?

19         A.    Not that I recall.

20         Q.    Okay.  And so you returned to your

21   vehicle, and what did you do once you were back in

22   your vehicle?

23         A.    I proceeded to drive through downtown

24   Atlanta, again, keeping my eyes open for any type of

25   protest activity outside of the main protest that was

John Ruch vs City of Atlanta, et al.
John Ruch                                                                         April 12, 2018

Page 74

1    garnering major media attention.

2          Q.    And what prompted you to park your

3    vehicle and get out of your vehicle?

4          A.    I'm sorry -- can you clarify when --

5          Q.    Sure.  You said you stopped twice.

6          A.    Yes.

7          Q.    And pardon me if my assumption is

8    wrong, but I assume when you said you stopped twice,

9    that you parked your vehicle and exited your vehicle.

10   Is that a false assumption?

11         A.    I'm sorry -- can you rephrase that?

12   Is --

13         Q.    You said you stopped your vehicle

14   twice, correct?

15         A.    I said I exited my vehicle twice.

16         Q.    And we know that after you posted the

17   8:48 p.m. Tweet, you returned to your vehicle and

18   drove around downtown Atlanta?

19         A.    Yes.

20         Q.    Where did you stop your vehicle that

21   second time?

22         A.    I don't recall.  I don't recall the

23   specific street.

24         Q.    And so when you stopped your vehicle,

25   you exited your vehicle that second time; is that

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 75

1    correct?

2          A.     Yes.

3          Q.     And that second time when you exited

4    your vehicle, is that when you went to what you know

5    is Woodruff Park?

6          A.     Yes.

7          Q.     If we could look at the second Tweet in

8    the stack, "Ruch Plaintiff 507," do you recall if

9    this second Tweet, the one that was posted at 9:59,

10   occurred after you exited your vehicle the second

11   time?

12         A.     This occurred beforehand.

13         Q.     This occurred before you exited your

14   vehicle the second time?

15         A.     As I recall, yes.

16         Q.     Okay.  In looking at the first two

17   Tweets together, what happened between Tweeting the

18   8:48 Tweet and Tweeting the 9:59 Tweet?

19                MR. WEBER:  Object as to form.

20                THE WITNESS:  I don't recall

21         specifically.  There were -- can you be more

22         specific?

23         Q.     (By Ms. Wyatt-Bullman) Did you exit

24   your vehicle for the second time between the

25   8:48 Tweet and the 9:59 Tweet?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 76

```
 1          A.     I do not believe so.

 2          Q.     Okay.  So when you posted the

 3  9:59 Tweet, were you still in your vehicle?

 4          A.     Yes.

 5          Q.     All right.

 6          A.     I actually -- I'd like to clarify that.

 7  It was -- the photograph was taken when I was in my

 8  vehicle.  I'm not sure, literally, physically where I

 9  was when I sent that.

10          Q.     Okay.  Well, the Tweet says, "Cops on

11  Peachtree Moving In."  Do you believe you were near

12  Peachtree Street?

13          A.     Yes.

14          Q.     And you were taking photos with your

15  iPhone while you were in a moving vehicle; is that

16  correct?

17          A.     It was not a moving vehicle.

18          Q.     Were you parked at the time?

19          A.     This was at a traffic signal, and

20  police vehicles passing through temporarily halted

21  traffic at this intersection.  So I took that

22  opportunity to take this photo of a particular

23  vehicle that had passed onto the sidewalk at that

24  time.

25          Q.     And it says, "Cop can nearly hit me."
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 77

1     What did you mean by "cop can nearly hit me"?

2          A.    I meant "cop car," but I made a typo.

3          Q.    And is the cop car photographed in the

4     photograph on the 9:59 Tweet, is that the cop car

5     that nearly hit you?

6          A.    As I recall, the vehicle pictured in

7     the photograph is indeed the one that passed very

8     close to me and onto the -- onto a portion of the

9     sidewalk.

10         Q.    Did that vehicle have its lights and

11    sirens on at the time it passed you?

12         A.    I believe it had its lights on.  I do

13    not recall a siren.  I just don't recall.

14         Q.    Okay.  So we know that the photograph

15    in the 9:59 Tweet was taken prior to you meeting

16    Mr. Blau at Woodruff Park; is that correct?

17         A.    As I recall, yes.

18         Q.    Did you post to Twitter the

19    9:59 photograph prior to meeting with Mr. Blau?

20         A.    I don't recall.

21         Q.    All right.

22         A.    I believe so, but I don't recall.

23         Q.    You said you believe so?

24         A.    Yeah.  But I don't recall.

25         Q.    So after you took the photograph in the

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

```
 1    9:59 photo, at some point after that, you parked your
 2    vehicle; is that correct?
 3           A.     Well, I don't recall when I posted that
 4    photo --
 5           Q.     Well, when you took the photo --
 6           A.     -- was my answer.
 7           Q.     When you took the photo -- sometime
 8    after you took the photo, you parked your vehicle and
 9    exited; is that correct?
10           A.     As I recall, yes.
11           Q.     So let's look at the next photo.  This
12    photo has been labeled "Ruch Plaintiff Production
13    508," and it was posted at 10:11 p.m.; is that
14    correct?
15           A.     According to Twitter's timestamp there.
16           Q.     Do you have any reason --
17           A.     I did not -- you know, I have not
18    verified that against a clock or something, so I
19    don't have personal knowledge of the exact . . .
20           Q.     Do you have any reason to doubt the
21    accuracy of the time and date stamp on these Twitter
22    posts?
23           A.     No.
24           Q.     Do you recall where you were when you
25    took the photograph in Plaintiff's Exhibit Production
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 79

1    508?

2         A.    I don't recall specifically.

3         Q.    Do you recall if you were in your

4    vehicle when this photograph was taken?

5         A.    I was not in my vehicle.

6         Q.    Would this photograph have been taken

7    after you exited your vehicle for the second time?

8         A.    Yes.

9         Q.    Was this photo taken before you met up

10   with Mr. Wheatley at Woodruff Park?

11        A.    I believe so.

12        Q.    Okay.  Were there any protesters around

13   when you took the photograph that was posted at

14   10:11 p.m. on November 25th, 2014?

15        A.    In this immediate vicinity, no.

16        Q.    And again, you believe that the

17   photograph posted at 10:11 p.m. was taken before you

18   met up with Mr. Wheatley, correct?

19        A.    I believe so, yes.

20        Q.    How long after you took the photograph

21   did you post it to Twitter?

22        A.    A short time later, as I recall.

23        Q.    Did anyone stop you from taking this

24   photograph?

25        A.    No.

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

                                                                   Page 80
1          Q.      Were you standing in the street when

2    you took the photograph?

3          A.      I was standing on a sidewalk.

4          Q.      All right.  Let's look at the next

5    photograph.  The next photograph is Bates-labeled

6    "Ruch Plaintiff Production 509."  And what time did

7    you post this photo to your Twitter feed?

8          A.      Again, according to the timestamp, that

9    I have no independent knowledge of, it was 10:18 p.m.

10         Q.      And do you recall where you were when

11   you took this photo?

12         A.      It appears to be in the vicinity of --

13   the Woodruff Park vicinity that I was referring to.

14         Q.      And do you believe that this photograph

15   was taken before you spoke to Mr. Wheatley?

16         A.      I believe so, yes.

17         Q.      And are those Atlanta police officers

18   pictured in the photograph?

19         A.      I believe so.

20         Q.      And did anyone stop you from taking

21   this photograph?

22         A.      No.

23         Q.      Let's look at the next picture.  And

24   the next picture -- Twitter post has been labeled

25   "Ruch Plaintiff Production 510."  What time did you

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 81

1    post this photograph to Twitter?

2          A.      Again, according to the timestamp, that

3    I have not independently verified or have independent

4    knowledge of, it was at 10:20 p.m.

5          Q.      And what were you taking a picture of?

6          A.      I was taking a photograph of police

7    officers after they had made an order to some -- a

8    group of protesters.

9          Q.      And what order did they provide to that

10   group of protesters?

11         A.      I recall two orders.  One was to keep

12   moving, rather than standing with signs, as they were

13   doing at that time, which made it difficult for me to

14   speak with them.  They also told the group to leave

15   the sidewalk completely.

16               I don't recall in what order those

17   orders were made, as they have some contradiction,

18   obviously.  But those are what I recall hearing.

19         Q.      Do you generally understand that the

20   police officers were asking the protesters to leave

21   the area?

22               MR. WEBER:  Object as to form.

23               THE WITNESS:  With the first order to

24          leave the sidewalk -- or the one order about

25          leaving the sidewalk seemed to be indicating

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 82

```
 1              to clear the -- clear the area.

 2                   The one about keeping moving, I -- that

 3              just meant keep moving, I guess.  I don't

 4              know.  I have no independent knowledge of it.

 5              Q.    (By Ms. Wyatt-Bullman) Did you ever ask

 6       any of the officers what they meant by their orders?

 7              A.    No.

 8              Q.    And were you on foot when you took the

 9       photograph that you posted at 10:20?

10              A.    Yes.

11              Q.    And was this photograph taken before

12       you met up with Mr. Wheatley?

13              A.    I believe so.

14              Q.    Did you post this photograph shortly

15       after you took the same?

16              A.    Yes.

17              Q.    Did any of the officers prevent you

18       from taking the photograph that you posted on 10:20?

19              A.    No.

20              Q.    The next Twitter post was labeled "Ruch

21       Plaintiff Production 511."  Do you recall taking the

22       photograph that's been labeled "Ruch Plaintiff

23       Production 511"?

24              A.    Yes.

25              Q.    And did you post this photograph to
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 83

1    your Twitter feed at 10:22?

2         A.    I don't recall.  That is the timestamp

3    that Twitter gave it.  I just -- I don't recall.

4         Q.    And do you believe that you took the

5    10:22 photograph after you posted the

6    10:20 photograph?

7         A.    I don't recall.

8         Q.    Was it your practice to take a series

9    of photographs and then slowly post them to Twitter,

10   or was your practice to take a photograph and then

11   post it to Twitter, take another photograph and then

12   post it to Twitter?

13        A.    There was no -- I do not have a

14   distinct, unified practice.  It depends on the

15   timeliness of what I documented, depends on the

16   quality of the paragraph.  So it is possible that

17   I -- well, my practice as a reporter is to sometimes

18   send out a photo immediately; sometimes to withhold

19   it and send it out later; and sometimes to not send

20   it at all if it appears to be irrelevant or of poor

21   quality.

22        Q.    You posted a caption for this

23   photograph -- the content of this photograph says,

24   "Red Bull ad car tries to run cop gauntlet."  What

25   did you mean by that?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 84

1        A.     I do not recall specifically what

2   police activity I was referring to.  I recall

3   generally that police officers had either -- were

4   blocking some portion of the street with their

5   presence.  And that my interpretation of this

6   advertising vehicle's intended route was to go to --

7   somewhere that was interfering with what the police

8   were doing.

9        Q.     Okay.  Do you believe the police were

10  blocking a street from cars -- from vehicular travel

11  or from pedestrian travel?

12             MR. WEBER:  Object as to form.

13             THE WITNESS:  I don't recall.  And I do

14         not recall what form that took, as the police

15         were doing a number of different activities,

16         including standing in a marching order and

17         having vehicles parked in various locations.

18         So I just do not recall specifically what that

19         meant.

20        Q.     (By Ms. Wyatt-Bullman) Did any police

21  officer prevent you from taking the photograph that

22  you posted to Twitter at 10:22?

23        A.     No.

24        Q.     Were there police officers in the area

25  when you took the photograph?

John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 85

 1          A.     Can you define "area"?  I do not recall
 2   officers being immediately near me.
 3          Q.     All right.  Oh.  Going back to the
 4   10:22 photograph -- and I may have asked this, and if
 5   I did, I apologize.  Did you take this photograph
 6   before you met up with Mr. Wheatley?
 7          A.     I believe so, but I cannot be certain.
 8          Q.     Did you post this photograph before you
 9   met up with Mr. Wheatley?
10          A.     Again, I believe so.  I'm not
11   absolutely certain.
12          Q.     Okay.  Let's go to the next photograph.
13   It's labeled "Ruch Plaintiff Production 512."  Do you
14   recall taking the photo that has been marked as "Ruch
15   Plaintiff's Production 512"?
16          A.     Yes.
17          Q.     And did you post this photograph to
18   Twitter?
19          A.     Yes.
20          Q.     And what is occurring in the
21   photograph?
22          A.     A group of police officers is walking
23   on a sidewalk.
24          Q.     Okay.  And your caption says, "Cops
25   Allowed on Streets."  What did you mean by that?

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 86 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 86

1          A.     I believe this was a reference to their

2   previous order, telling civilians they had to leave

3   the streets.

4          Q.     Okay.  Are the police officers on the

5   sidewalk or on the streets?

6          A.     They are on the sidewalk.

7          Q.     Okay.  Did any of these police officers

8   prevent you from taking any photographs or videos?

9          A.     No.

10                Not at that time.  I can't recognize

11   any of them.  So, for example, I don't know if they

12   may have been involved in my later arrest.

13          Q.     Okay.  At the time you took the

14   photograph that you posted to Twitter at 10:27 p.m.

15   on November 25th, 2014, did any officer instruct you

16   not to take a photograph or prevent you from taking

17   that photograph?

18          A.     No.  Not directly.

19                Indirectly, in ordering protesters to

20   keep moving, making it difficult or impossible to

21   report on them, yes.  Directly, no.

22          Q.     Do you believe that when the police

23   officers made the order asking the protesters to keep

24   moving, that they made that order in an effort to

25   prevent you from reporting on the story?

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 87

1              MR. WEBER:  Object as to form.

2              THE WITNESS:  I don't know why they did

3         that.

4         Q.    (By Ms. Wyatt-Bullman) To the best of

5    your knowledge, did you announce to any of those

6    officers that you were a reporter?

7         A.    No.

8         Q.    Do you have any reason to believe that

9    any of the officers knew you were a reporter at the

10   time that they ordered the protesters to continue

11   moving?

12        A.    Yes, in terms of it being obvious that

13   I was speaking to and photographing protesters.  If

14   anybody observed me, it could a rational conclusion

15   that I was reporting on their activity and

16   documenting it.

17        Q.    And the equipment that you had with

18   you, was your cell phone; is that correct?

19        A.    A cell phone and a notebook.

20        Q.    Based on the fact that you had a cell

21   phone and a notebook and you were speaking to

22   individuals, you believe that the cops should have

23   been able to infer that you were a reporter?

24        A.    They should have been able to infer

25   that I was -- that I had a First Amendment right to

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 88

1   speak to and document people on a public sidewalk, as

2   any citizen does, or noncitizen.

3         Q.      But again, you don't know why the

4   police asked the protesters to continue moving?

5         A.      No.

6         Q.      But you believe it was an effort to

7   thwart your reporting activity directly?

8         A.      That is not my claim.  My claim is that

9   the result was thwarting my reporting activity

10  directly.

11        Q.      Okay.  So you do not believe that the

12  police officers issued an order to directly thwart

13  your reporting activity?

14              MR. WEBER:  Object as to form.

15              THE WITNESS:  I don't know why they

16        issued the order.

17        Q.      (By Ms. Wyatt-Bullman) Let's take a

18  look at --

19        A.      I'm sorry.  Could we take a break?  I

20  don't necessarily need a break, but I could use some

21  water.

22              MS. WYATT-BULLMAN:  No, we can take a

23        break.  We can all use a break.  Absolutely.

24              (A short recess was taken, after which

25        the following proceedings were had:)

John Ruch vs City of Atlanta, et al.
John Ruch                                                                          April 12, 2018

Page 89

```
 1                    MS. WYATT-BULLMAN:  Back on the record.

 2         Q.    (By Ms. Wyatt-Bullman) Continuing to

 3   look at the photograph that you posted at 10:27 p.m.

 4   on November 25th, 2014.  Did you post this photo

 5   shortly after you took the photo?

 6         A.    As I recall, yes.

 7         Q.    And again, this was before you met up

 8   with Mr. Wheatley; is that correct?

 9         A.    I believe so.  I can't be totally sure,

10   but I believe so.

11         Q.    And it was posted before you met up

12   with Mr. Wheatley?

13         A.    Again, I believe so, but I am not

14   totally sure.

15         Q.    All right.  We can turn to the next

16   photograph.  This photograph has been Bates-labeled

17   "Ruch Plaintiff's Production 513."  Did you take the

18   photograph in Document No. 513?

19         A.    Yes.

20         Q.    And did you then post the photograph to

21   Twitter?

22         A.    Yes.

23         Q.    The timestamp on it says "10:30 p.m."

24   Do you have any reason to believe that that timestamp

25   is incorrect?
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 90

```
 1        A.    No.
 2        Q.    And the caption for the photograph
 3   says, "No Justice, No Peace."  Why did you include
 4   that caption?
 5        A.    As you will see, the phrase is
 6   contained within quote marks.  It is a quotation of
 7   what some of the pictured protesters were chanting.
 8        Q.    And do you know what location these
 9   protesters were at, at the time that you took the
10   photo?
11        A.    I do not recall.
12        Q.    Was the photo that you posted at
13   10:30 p.m. taken before or after you met up with
14   Mr. Wheatley?
15        A.    I believe this was taken after I met
16   Thomas, and he had hired me to begin coverage.
17        Q.    Okay.
18        A.    As I recall.
19        Q.    Okay.  So let's look at 512 and 513
20   together.  So 512 was posted at 10:27 p.m., and 513
21   was posted at 10:30 p.m.  So you believe in that
22   three-minute time span, you met up with Mr. Wheatley
23   and he hired you?
24        A.    I don't recall, and I can't say
25   specifically what the time span was.  Again, I may
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 91

1    have Tweeted the Number 512 while I was speaking with

2    Thomas or walking with Thomas elsewhere.  I just

3    don't recall.

4              In short, that's not definitive.

5         Q.    Okay.  You believe the photograph that

6    you posted at 10:30 p.m. was taken after Mr. Wheatley

7    hired you?

8         A.    To the best of my recollection, yes.

9         Q.    And you have no knowledge of where the

10   photograph was taken at?

11        A.    I don't recall.

12        Q.    Did anyone prevent you from taking the

13   photograph that you posted at 10:30 p.m.?

14        A.    In 513?

15        Q.    Yes.

16        A.    No.

17        Q.    And do you recall a police presence at

18   the time you took the photograph that you posted at

19   10:30 p.m.?

20        A.    I do not recall a police presence at

21   this particular location.

22        Q.    Okay.  We can move on to the

23   photograph -- the next photograph.  It's labeled

24   "Ruch Plaintiff Production 514."  Do you recall

25   taking the photograph that was labeled "Ruch

Page 92

```
 1    Plaintiff Production 514"?

 2         A.    Yes.

 3         Q.    And did you post this photograph to

 4    Tweeter at 10:43 p.m. on November 25th, 2014?

 5         A.    I don't recall.

 6         Q.    Okay.

 7         A.    I don't know.

 8         Q.    And do you believe that you took the

 9    photograph that you posted at 10:43 p.m. after

10    Mr. Wheatley hired you?

11         A.    Yes.

12         Q.    And do you recall your location when

13    you took the 10:43 photograph?

14         A.    No.

15         Q.    Do you recall a police presence at the

16    time you took the 10:43 photograph?

17         A.    I don't recall.

18         Q.    In looking at the next Twitter post,

19    it's labeled "Ruch Plaintiff Production 515."  Do you

20    recall taking the photo that's labeled "515"?

21         A.    Yes.

22         Q.    And did you post this photograph to

23    Twitter?

24         A.    Yes.

25         Q.    Did you post it at 10:47 p.m.?
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 93 of 233
John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 93

```
 1          A.    I don't know.
 2          Q.    Do you have any reason to believe that
 3   the Twitter time and date stamp is incorrect?
 4          A.    No.
 5          Q.    And the caption for it says, "Singing
 6   We Want Peace."  Why did you include that caption?
 7          A.    The "we want peace" phrase is contained
 8   within quotation marks.  So I was communicating that
 9   the pictured people were singing the phrase, "We want
10   peace."
11          Q.    Did anyone prevent you from taking this
12   photograph?
13          A.    No.
14          Q.    And it looks like you have captured
15   someone else capturing that image, if you turn back
16   to the 10:15 photo.  Does it appear that there's a
17   gentleman on the right-hand side also recording?
18          A.    It appears to be a man with a camera.
19          Q.    Okay.  Did you see many individuals
20   with cameras during the protest?
21          A.    A number -- yes.  A number of
22   individuals.
23          Q.    And do you recall the police preventing
24   any of those individuals from taking photographs?
25          A.    Aside from me, you mean, or -- can you
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 94

1    be more specific?

2         Q.    Sure.  The question was, you know, you

3    testified that you saw many other individuals --

4         A.    Uh-huh.

5         Q.    -- at the protest with a camera.

6         A.    Uh-huh.

7         Q.    My question is, did you observe Atlanta

8    Police Department prevent any of those other

9    individuals from taking any of those photos?

10        A.    During the entire protest?

11        Q.    Yes.

12        A.    No.

13        Q.    Let's move on to "Ruch Plaintiff

14   Production 516."  Do you recall taking the photograph

15   that's been marked as "Ruch Plaintiff Production

16   516"?

17        A.    Yes.

18        Q.    And did you then post this photograph

19   to Twitter?

20        A.    Yes.

21        Q.    And do you believe that this photograph

22   was taken after Mr. Wheatley hired you to cover the

23   protest?

24        A.    Yes.

25        Q.    And do you know what location you were

Page 95

 1    at when this photograph was taken?

 2           A.     I don't recall.

 3           Q.     And do you have any reason to believe

 4    that the Twitter time and date stamp of 10:48 p.m.,

 5    on November 25th, 2014, is inaccurate?

 6           A.     No.

 7           Q.     Okay.  And why did you take this

 8    photograph?

 9           A.     As part of my news reporting of the

10    protesters' actions.

11           Q.     Okay.  And do you recall if the

12    protesters had been moving at the time this

13    photograph was taken?

14           A.     I'm sorry -- can you clarify what you

15    mean by that?

16           Q.     Sure.  Yes, absolutely.

17                  So you testified earlier that

18    Mr. Wheatley hired you to cover sort of the tail end

19    of the protest.

20           A.     Uh-huh.

21           Q.     And that you were to sort of follow

22    along with them.  So was this photograph taken after

23    you began your following duties?

24           A.     Yes.

25           Q.     And do you know how long you had been

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 96

1   following the protest after this photograph was

2   taken?

3          A.   I don't recall.

4          Q.   In looking at 513, the Tweet with the

5   caption, "No Justice, No Peace," do you believe that

6   this photograph was taken after your following duties

7   had begun?

8          A.   In 513?

9          Q.   Yes.

10          A.   I don't recall.

11          Q.   Okay.  Let's look at 514.  Was the

12   photograph in 514 taken after your following duties

13   began?

14          A.   Yes.

15          Q.   Okay.  And were you Tweeting

16   photographs while you were following the protesters?

17          A.   Yes.

18          Q.   Okay.  So you were taking photographs,

19   attempting to interview people, Tweeting and walking

20   at the same time?

21          A.   Yes.

22          Q.   Okay.  Did any police officers prevent

23   you from taking the photograph that has been marked

24   "Ruch Plaintiff Production 516"?

25          A.   No.

Page 97

1      Q.     All right.   Let's turn to the next

2   photograph.   The next document is labeled "Ruch

3   Plaintiff Production 517."  Do you recall taking this

4   photograph?

5      A.     Yes.

6      Q.     And do you recall -- and did you post

7   this photograph to Twitter?

8      A.     Yes.

9      Q.     And do you have any reason to believe

10  that you did not post this photograph at 10:51 p.m.

11  on November 25th, 2014?

12     A.     No.

13     Q.     And why did you take this photograph?

14     A.     As part of my duties as a reporter

15  covering the actions of the protesters and official

16  response to them.

17     Q.     And what was occurring in the

18  photograph?

19     A.     At this time, the protesters had

20  stopped on a sidewalk and sat down; a large group of

21  police officers was observing them.

22     Q.     Were these officers in any way

23  prohibiting them from protesting?

24     A.     Not that I recall.

25     Q.     And did any of the officers prevent you

Page 98

1   from taking the photograph that you posted at 10:51

2   to Twitter?

3          A.     No.

4          Q.     Do you recall any of the police

5   officers issuing any orders while this crowd was

6   sitting?

7          A.     At -- during -- not necessarily during

8   this photograph.

9          Q.     Okay.  So the police officers were

10  allowing the protesters to exercise their First

11  Amendment rights at the time that this photograph

12  that you tweeted at 10:51 p.m. was taken; is that

13  correct?

14              MR. WEBER:  Objection as to form.

15              THE WITNESS:  In terms of my direct

16       experience at that particular spot, yes.

17         Q.     (By Ms. Wyatt-Bullman) Okay.

18         A.     I can't speak to the entire protest or

19  other actions.

20         Q.     Based on your observations, none of the

21  police officers depicted in the photograph that you

22  took at -- or that you posted to Twitter at 10:51

23  interfered with anyone's First Amendment rights; is

24  that correct?

25         A.     I don't know.  I don't know who they

John Ruch vs City of Atlanta, et al.
John Ruch                                                                      April 12, 2018

Page 99

1    are.

2         Q.     But you didn't observe any violations

3    at that time?

4         A.     At that time, no.

5         Q.     All right.  Well, let's move on to

6    what's been marked as "Ruch Plaintiff Production

7    518."  And did you take the photo that's been

8    labeled, "Ruch Plaintiff Production 518"?

9         A.     Yes.

10        Q.     And did you post it to Twitter at

11   10:52 p.m. on November 25th, 2014?

12        A.     I don't know.

13        Q.     Do you have any reason to believe that

14   the time and date stamp for Twitter is inaccurate?

15        A.     No.

16        Q.     And what were you depicting in this

17   photograph?

18        A.     This is a group of protesters sitting

19   on a sidewalk, some of them playing music, while

20   other protesters do other things.

21        Q.     Do you know what "other things" they

22   were doing?

23        A.     Not with specific detail.

24        Q.     You don't remember what you observed?

25        A.     Not specifically.

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 100 of 233

April 12, 2018

Page 100

```
1              Q.    And would you have posted this
2    photograph to Twitter shortly after you took it?
3              A.    Yes.
4              Q.    And does the photograph in 518 just
5    appear to be another angle of 517?
6              A.    I don't recall.
7              Q.    Well, were there separate sit-in
8    locations?
9              A.    I don't recall.
10             Q.    And do you have any idea of the
11   location you were at when you took the photograph
12   that you posted at 10:52?
13             A.    I -- no.
14             Q.    Okay.  Did any police officer prevent
15   from you taking the photograph that you posted to
16   Twitter at 10:52 p.m. on November 25th, 2014?
17             A.    No.
18             Q.    Let's turn to Ruch Plaintiff Production
19   1015.
20                   "1019" -- sorry.  1019.
21                   THE WITNESS:  Or --
22                   MR. WEBER:  "519."
23                   THE WITNESS:  Five --
24                   MS. WYATT-BULLMAN:  519.  I apologize.
25             Q.    (By Ms. Wyatt-Bullman) Did you take the
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 101 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 101

1    photograph that has been marked "Ruch Plaintiff

2    Production 519"?

3          A.    Yes.

4          Q.    And did you post that photograph to

5    Twitter?

6          A.    Yes.

7          Q.    Do you have any reason to believe that

8    you did not post this photograph at 10:56 p.m. on

9    November 25th, 2014?

10         A.    No.

11         Q.    And it says -- the caption says, "News

12   Drone, Guy Says."  What does that caption mean?

13         A.    The photograph depicts a drone, and the

14   caption refers to it.

15         Q.    Okay.

16         A.    So it's describing its purpose.

17         Q.    Who is "guy"?  Who was the guy you

18   mention in the Tweet?

19         A.    One of two men operating the drone.

20         Q.    Do you know who they were?

21         A.    I do not recall their names.

22         Q.    Do you know if they were with a

23   specific company?

24         A.    Yes.

25         Q.    Do you know what company that is?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 102

```
 1          A.     I believe it is American Drone
 2     Industries.
 3          Q.     And do you recall how long American
 4     Drone Industries filmed the protest?
 5               MR. WEBER:  Objection as to form.
 6               THE WITNESS:  I don't recall.  And I
 7          don't have -- I don't have the knowledge.
 8          Q.     (By Ms. Wyatt-Bullman) Okay.  Can you
 9     point out the drone in the photograph?
10          A.     It is at the very top of the
11     photograph, as I recall.  I believe that this is not
12     the full-sized photograph.  It is the Twitter
13     cross-fit.
14          Q.     Okay.  Did any police officer prevent
15     you from taking this photograph?
16          A.     No.
17          Q.     Do you recall your location at the time
18     this photograph was taken?
19          A.     No.
20          Q.     Let's move to what's been marked as
21     "Ruch Plaintiff Production 520."  Do you recall
22     taking the photograph labeled "Ruch Plaintiff
23     Production 520"?
24          A.     Yes.
25          Q.     And did you post this photograph to
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 103 of 233

April 12, 2018

Page 103

1    Twitter?

2          A.    Yes.

3          Q.    Do you have any reason to believe that

4    you did not post this photograph at 11:02 p.m. on

5    November 25th, 2014?

6          A.    No.

7          Q.    And what were you capturing in this

8    photograph?

9          A.    Two people wearing T-shirts saying,

10   "Legal observers."

11         Q.    Did you speak to either of these

12   individuals at any point during the protest?

13         A.    Not as I recall.

14         Q.    Okay.  So you have no knowledge of

15   their actual involvement in the protest?

16         A.    No.

17         Q.    Do you recall where you were at at the

18   time you took this photograph?

19         A.    No.

20         Q.    And you were still covering the,

21   quote-unquote, "Tail end of the protest" at the time

22   the photograph was taken?

23         A.    Yes.

24         Q.    Okay.  Do you recall interacting with

25   any other reporters who were covering the protest

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 104

1   while you were covering the tail end?

2          A.     I spoke with the two individuals from

3   the drone company.  I spoke with Thomas and Max, my

4   coworkers.  I do not recall speaking to any other

5   reporter.

6          Q.     Okay.  Look at what's been marked as

7   "Ruch Plaintiff Production 521."  Do you recall

8   taking this photograph?

9          A.     Yes.

10         Q.     And did you post it to Twitter?

11         A.     Yes.

12         Q.     And do you have any reason to believe

13  that you did not post this photograph to Twitter at

14  11:04 p.m. on November 25th, 2014?

15         A.     No.

16         Q.     And what were you depicting in this

17  photograph?

18         A.     I was depicting the footwear of a TV

19  reporter.

20         Q.     Do you recall which station she was

21  reporting for?  And I assume it was a female.  If I'm

22  not correct, please let me know.

23         A.     I do not recall her affiliation.

24         Q.     Did you speak to her at any point?

25         A.     Not as I recall.

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 105 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 105

1        Q.    But you felt like her shoes were

2    newsworthy?

3        A.    I felt it was impressive that she was

4    marching the whole way in those shoes.

5        Q.    Okay.  So at this point, you have been

6    Tweeting from 8:48 p.m. to 11:04 p.m.; is that

7    correct?

8        A.    I don't know.

9        Q.    Based on the Tweets in front of

10   you . . .

11       A.    According to timestamps, yes.

12       Q.    So according to the timestamps for

13   Twitter --

14       A.    I don't know.

15       Q.    According to the timestamps for

16   Twitter, you had been Tweeting from 8:48 p.m. until

17   11:04 p.m.; is that correct?

18       A.    Yes.

19       Q.    Did you Tweet every photograph that you

20   took while marching with the protesters?

21       A.    I don't recall.

22       Q.    Okay.  Let's talk about the last Tweet

23   in Defendant's Exhibit 6.  Did you take the

24   photograph that's been marked as Defendant's

25   Exhibit 6?

Page 106

```
 1        A.    Yes.

 2        Q.    And did you post this photograph to

 3   Twitter?

 4        A.    Yes.

 5        Q.    And you posted it -- do you have any

 6   reason to believe that you did not post it at

 7   5:16 p.m. on November 26th, 2014?

 8        A.    No.

 9        Q.    And what were you photographing?

10        A.    I was photographing the interaction

11   between protesters and police officers.

12        Q.    Do you recall where you were standing

13   at the time this photograph was taken?

14              MR. WEBER:  Object as to form.

15              THE WITNESS:  On the sidewalk -- on a

16        sidewalk.

17        Q.    (By Ms. Wyatt-Bullman) Okay.  What were

18   you wearing on the night of the protest?

19        A.    I was wearing a hat, a jacket, T-shirt,

20   overshirt, jeans and shoes.

21        Q.    Okay.  What type of hat?

22        A.    A cowboy-style hat.

23        Q.    Do you recall the color?

24        A.    Black.

25        Q.    And what type of jacket were you
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 107 of 233

April 12, 2018

Page 107

1    wearing?

2         A.    A leather jacket.

3         Q.    Do you know what color?

4         A.    Black.

5         Q.    Do you still own the jacket?

6         A.    Yes.

7         Q.    And what type of pants did you have on?

8    I'm assuming you had pants on.

9         A.    Yes.  Jeans.

10        Q.    And to the best of your recollection is

11   the photo that you posted to Twitter at 5:16 p.m. on

12   November 26, 2014, the last photo that you took

13   before you were arrested?

14        A.    I don't know.

15        Q.    The caption for this photo reads, "Last

16   photo I took before cops arrested me."

17        A.    Uh-huh.

18        Q.    So do you believe that your caption's

19   inaccurate?

20        A.    No.  I don't believe it's inaccurate.

21   It was the last photo on my phone.  I attempted to

22   take a photo during my arrest, which the officer

23   interrupted.  I don't know if that took an image that

24   the police deleted.  But I -- I was not in possession

25   of a photograph.

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 108

1          Q.     And we're going to get into that in a

2    minute.  So this is the last image that was on your

3    phone, prior to your arrest; is that correct?

4          A.     Yes, as far as I know.

5          Q.     Okay.

6          A.     I don't know if I was able to complete

7    taking the other photographs.

8          Q.     So as you sit here today, your

9    testimony is that you attempted to take a photo just

10   prior to your arrest, but you are unsure if that

11   photograph was completed?

12         A.     Yeah.  Yes.

13         Q.     So as you sit here today, can you say

14   with 100 percent accuracy that any photographs were

15   deleted off of your phone?

16         A.     No.

17         Q.     So you are not aware of any photographs

18   that were deleted off of your phone?

19         A.     After my arrest, no, I'm not aware.

20   It's possible that I deleted prior ones myself.

21         Q.     Okay.  Let's clarify that.  So as you

22   sit here today, are you aware of any photographs that

23   any member of the Atlanta Police Department deleted

24   from your phone?

25                MR. WEBER:  Object as to form.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 109

1          MS. WYATT-BULLMAN:  What is wrong with

2      the form?  Because I want to make sure I get

3      that correctly on the record.

4          MR. WEBER:  Because you are asking

5      whether he's aware what police did, and he

6      doesn't have any personal knowledge of what

7      police did or didn't do.

8          MS. WYATT-BULLMAN:  Well, he's aware of

9      what's on his phone, so -- and his allegations

10     in his complaint is that the police did

11     something.

12     Q.    (By Ms. Wyatt-Bullman) So I'm asking,

13  as to your knowledge, are you aware of any

14  photographs that the Atlanta Police Department -- any

15  member of the Atlanta Police Department deleted from

16  your phone that you were using as a video device or a

17  photographic device on November 25th, 2014?

18     A.    I don't know.  I don't know if I

19  completed taking that photograph that was interrupted

20  by the officer.  I just don't know.

21     Q.    I'm going to pass you what we're going

22  to mark --

23          MR. WEBER:  Are you done with this one

24      for now?

25          MS. WYATT-BULLMAN:  For a minute.  You

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 110

```
 1            might keep it close.
 2            Q.     (By Ms. Wyatt-Bullman) I'm going to
 3      pass you what we're going to mark as Defendant's
 4      Exhibit 7.
 5                 (Exhibit 7 was marked for
 6                 identification.)
 7            Q.     (By Ms. Wyatt-Bullman) And I'm going to
 8      put the sticker up here in this black space.
 9                 Just take all the time you need to look
10      through those.
11                 Mr. Ruch, are you familiar with the
12      photographs that have been marked as Defendant's
13      Exhibit 7?
14            A.     Yes.
15            Q.     And did you take the photographs that
16      have been marked as Defendant's Exhibit 7?
17            A.     Yes.
18            Q.     And does Defendant's Exhibit 7
19      represent all of the photographs that you took on
20      November 25th, 2014, of the Ferguson, Missouri
21      protests that happened in downtown Atlanta?
22                 MR. WEBER:  Object as to form.
23                 THE WITNESS:  I don't know.  Again, I
24                 would have to consult against the list of what
25                 we submitted in discovery.  And again, I'm not
```

John Ruch vs City of Atlanta, et al.
John Ruch
Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 111 of 233
April 12, 2018
Page 111

```
 1            sure if I completed the photograph I was

 2            attempting to take but was arrested while --

 3            prevented from taking.

 4       Q.     (By Ms. Wyatt-Bullman) Okay.  When you

 5   were gathering the photographs in response to

 6   defendants' discovery requests, did you notice if any

 7   photographs were missing of those that you took on

 8   that evening?

 9            MR. WEBER:  Object as to form.

10            THE WITNESS:  I don't recall.

11       Q.     (By Ms. Wyatt-Bullman) Okay.  When you

12   look through Defendant's Exhibit 7, do you believe

13   that there are any photographs that you took that are

14   not included in Defendant's Exhibit 7?

15            MR. WEBER:  Object as to form.  And I

16            can explain it.

17            MS. WYATT-BULLMAN:  Sure.

18            THE WITNESS:  Sure.

19            MR. WEBER:  So he's already testified

20            that he wasn't sure whether he was able to

21            complete the photograph that he was taking

22            prior to his being arrested.  So that's why

23            I'm objecting as to form, because he doesn't

24            know whether he did in fact complete that

25            photograph.
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 112 of 233

April 12, 2018

Page 112

1              MS. WYATT-BULLMAN:  Absolutely.  I can

2        clarify.

3              MR. WEBER:  Yes.

4        Q.     (By Ms. Wyatt-Bullman) So excluding the

5   photograph that you are unsure as to whether or not

6   you completed at the time of your arrest, does what

7   we have identified as Defendant's Exhibit 7 include

8   all the photographs that you anticipate you took or

9   that you believe you took on November 25th, 2014?

10       A.     I don't recall.

11       Q.     Okay.  When you were gathering

12  photographs in order to respond to the discovery

13  requests that defendants made in this matter, other

14  than the photograph that you were attempting to take

15  at the time of your arrest, did you notice that any

16  photographs were missing from your device?

17       A.     I don't recall.

18       Q.     Is it your belief that you have turned

19  over all photographs relevant to this matter --

20       A.     Yes.

21       Q.     -- that you took on your device on

22  November 25th, 2014?

23       A.     Yes.

24       Q.     And as you sit here today, can you

25  specifically recall any photographs that APD deleted

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 113 of 233

April 12, 2018

Page 113

1    from your device?

2         A.    I don't know the fate of the photograph

3    I was attempting to take that my arrest interrupted.

4         Q.    So other than the photograph you are

5    unsure if you completed taking at the time of your

6    arrest, are you aware of any photographs that you

7    believe APD deleted from your device on November 25th

8    or 26th of 2014?

9         A.    I don't -- I don't know.  I don't know

10   how I would know.

11        Q.    The question was, are you aware.  So

12   are you aware of any photographs that APD deleted --

13        A.    No.  I'm not aware of that.

14        Q.    Okay.  The document that we've marked

15   as Defendant's Exhibit 7 includes Ruch Plaintiff

16   Production 523 through Ruch Plaintiff Production 551.

17   Do you recall APD preventing you from taking any of

18   the photographs that are marked as Exhibit 7?

19        A.    No.

20        Q.    During the time that you were charged

21   with following the protesters and collecting

22   photographs and interviews for Mr. Wheatley's

23   publication, did you observe APD prevent any person,

24   other than yourself, from taking any photographs?

25        A.    No.

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

                                                                        Page 114
 1          Q.     Did you observe APD preventing anyone

 2    from making any video recordings?

 3          A.     No.

 4          Q.     Based on our review of Defendant's

 5    Exhibit 6, I believe that Ruch Plaintiff Production

 6    513 that you posted at 10:30 p.m. was taken after

 7    Mr. Wheatley hired you, correct?

 8                 MR. WEBER:  Wait.

 9                 Oh.  I gotcha.  Sorry.

10                 THE WITNESS:  I don't -- I don't recall

11          specifically.

12          Q.     (By Ms. Wyatt-Bullman) Okay.  Let me

13    ask this question:  In looking at Defendant's

14    Exhibit 6, do you recall how long -- look at 521, the

15    shoes photograph.

16          A.     Okay.

17          Q.     Do you recall how long after you posted

18    the shoes photograph to Twitter that you were

19    arrested?

20          A.     No.

21          Q.     Was it an hour after you made this

22    Tweet?

23          A.     I don't recall.

24          Q.     Was it more than two hours after you

25    made the Tweet?

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 115

```
 1          A.     I don't recall.
 2          Q.     Do you think you were there five hours
 3   after you made the Tweet?
 4          A.     I don't know.  I don't know the
 5   specific amount of time.
 6          Q.     Okay.  Do you recall -- after you
 7   Tweeted about the reporter's shoes, do you recall how
 8   far you continued to march before you were arrested?
 9          A.     No.  I was not measuring distance.
10          Q.     Do you recall how many blocks you
11   passed?
12          A.     I do not.
13          Q.     Do you have any idea of where this
14   photograph was taken?
15          A.     I believe it was the vicinity of
16   Centennial Olympic Park.
17          Q.     Okay.  At any point when you were
18   following the group of protesters that you were
19   following, did that group of protesters enter what we
20   call in Atlanta as the connector? -- Highway 75-85?
21                 MR. WEBER:  Can you repeat the
22          question?
23                 MS. WYATT-BULLMAN:  Sure.
24          Q.     (By Ms. Wyatt-Bullman) At any point
25   while you were following the group of protesters that
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 116 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 116

1   you were hired to follow, do you recall the

2   protesters entering onto what we refer to in Atlanta

3   as the connector, which is Highway 75-85?

4           MR. WEBER:  And you're just talking

5       about his personal observations, right?

6           MS. WYATT-BULLMAN:  Him.

7           MR. WEBER:  All right.

8           THE WITNESS:  I'm sorry -- can you

9       rephrase?  I don't remember how much --

10      Q.    (By Ms. Wyatt-Bullman) Have you been

11  told how to answer questions?

12      A.    No.  Just if it's a negative or a

13  positive.  I'm sorry.  Sorry.  Rephrase.

14      Q.    I said, do you recall -- do you recall

15  while you were following the protesters that you were

16  hired to follow --

17          MR. WEBER:  Got it.

18      Q.    (By Ms. Wyatt-Bullman) -- that that

19  group of protesters, and presumably yourself, entered

20  on to what we refer to in Atlanta as the connector,

21  which is Highway 75-85?

22      A.    They did not, and I did not enter the

23  highway.

24      Q.    Okay.  Perfect.  If you go back to

25  Defendant's Exhibit 5, which is the maps -- the very

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 117 of 233

April 12, 2018

Page 117

```
 1    fancy maps, you indicated that the shoes photograph
 2    was taken around Centennial Olympic Park.  Do you
 3    recall where or which cross streets you were close to
 4    on Centennial Olympic Park?
 5         A.    No.
 6         Q.    Okay.  Do you recall walking on John
 7    Portman Boulevard on November 25th, 2014, prior to
 8    your arrest?
 9         A.    I don't recall specific streets.
10         Q.    Okay.  Do you recall the location of
11    your arrest?
12         A.    Yes.
13         Q.    And where were you arrested at?
14         A.    Outside the police station area.
15         Q.    Okay.  If you look at the second map --
16    the zoomed-in map for Defendant's Exhibit 5, do you
17    see -- able to identify the police department in
18    which you were arrested in front of?
19              MR. WEBER:  This is actually one of the
20         little things?
21              MS. WYATT-BULLMAN:  It is.  This is
22         like a fun game.  I can tell that you --
23              MR. WEBER:  We are fine with you
24         pointing to it.
25              THE WITNESS:  Yes.
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 118 of 233

April 12, 2018

Page 118

1      Q.      (By Ms. Wyatt-Bullman) And do you

2    believe that that is the precinct in which you were

3    arrested in front of?

4      A.      Or alongside, yes.

5      Q.      Okay.

6      A.      It was not at the front door.

7      Q.      Okay.  Do you recall which route you

8    took in order to arrive at the location of your

9    arrest?

10             And I would also say that Centennial

11   Olympic Park is the large green space on the

12   left-hand side.

13     A.      I do not recall which specific cross

14   street I took.

15     Q.      Okay.  Do you recall any of the

16   landmarks noted in Page 2 of Defendant's Exhibit 5?

17   There are several hotels.

18     A.      In terms of . . .

19     Q.      Do you recall passing any of those

20   landmarks prior to your arrest?

21     A.      No.  No.  Immediately prior, I

22   recognize the Americas Mart.

23     Q.      Okay.  The Americas Mart building is

24   actually buildings, so it encompasses several

25   buildings.  Do you recall which one you were at?

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 119 of 233

April 12, 2018

Page 119

1        A.      The one adjacent to the police -- the

2    Zone 5 Police Precinct depicted on this map.

3        Q.      Okay.  But you have no recollection of

4    whether you were on any of the streets listed or

5    noted in the map on Page 2 of Defendant's Exhibit 5?

6        A.      Yeah.  I don't recall which street.

7        Q.      Okay.  And at the time you were

8    arrested, how long had you been following the

9    protesters?

10       A.      I don't recall.

11       Q.      Do you recall any fights breaking out

12   amongst the protesters, prior to your arrest?

13       A.      No.

14       Q.      Do you recall any of the protesters

15   committing any acts of vandalism prior to your

16   arrest?

17       A.      No.

18       Q.      Do you recall marching by a Wells Fargo

19   building where protesters had thrown rocks through

20   the windows?

21       A.      No.

22       Q.      Do you recall passing by any cabs in

23   which the protesters had knocked the windows out of

24   the cabs?

25       A.      No.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 120

1        Q.      Do you recall any protesters breaking

2   out any windows to restaurants?

3        A.      No.

4        Q.      Do you have any reason to believe that

5   those events did not occur?

6              MR. WEBER:  Object as to form.

7              THE WITNESS:  I certainly didn't

8         observe them, if that's -- what's the

9         question?

10        Q.      (By Ms. Wyatt-Bullman) Do you have any

11   reason to believe that protesters did not -- do you

12   have any reason to believe that protesters did not

13   break out windows in a bank, a restaurant, parked

14   vehicles, on the night of the protest?

15              MR. WEBER:  Same objection.

16              THE WITNESS:  I mean, my knowledge of

17         the actual protesters around me, I -- they did

18         not do that.

19        Q.      (By Ms. Wyatt-Bullman) Okay.

20        A.      I don't know how else to answer that.

21        Q.      Okay.  I'm going to move into what you

22   call -- recall immediately around the time of your

23   arrest.  As you were moving with the protesters, were

24   you moving on the sidewalk or in the street?

25        A.      On the sidewalk.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 121

1          Q.      And why were you on the sidewalk?

2          A.      Because that is where the protesters

3     were and common cultural practice.

4          Q.      Do you recall any Atlanta police

5     members directing protesters to stay on the sidewalk?

6          A.      Yes.

7          Q.      And do you believe that was --

8               MR. WEBER:  I'm sorry.  If you could

9          put a time.

10              MS. WYATT-BULLMAN:  Time.  Yes.  No

11         problem.

12              MR. WEBER:  Thank you.

13         Q.      (By Ms. Wyatt-Bullman) So after

14    Mr. Wheatley hired you, while you were following the

15    tail end of the protest, do you recall Atlanta police

16    officers directing protesters to stay on the

17    sidewalk?

18         A.      Yes.

19         Q.      And --

20         A.      In -- once.

21         Q.      One time?

22         A.      One time.

23         Q.      All right.  And do you recall Atlanta

24    police officers following the protesters as they

25    moved through the city after Mr. Wheatley hired you?

Page 122

```
1          A.     Yes.

2          Q.     Okay.  And while those police officers

3    were following the group of protesters after

4    Mr. Wheatley hired you, were they blocking any

5    streets to allow the protesters to travel in certain

6    directions?

7                 Let me ask a better question.

8                 MR. WEBER:  Yes.

9          Q.     (By Ms. Wyatt-Bullman) After

10   Mr. Wheatley hired you, did you observe Atlanta

11   police officers directing vehicle traffic to

12   accommodate the protesters as they moved through the

13   city?

14         A.     Yes.

15         Q.     Was Mr. Blau with you when you were

16   arrested?

17         A.     No.

18         Q.     Was a gentleman by the name of Gary

19   Blustien with you or Greg Blustien with you when you

20   were arrested?

21         A.     He was not with me when I was arrested,

22   but I spoke to him after I was in custody.

23         Q.     Was Mr. Wheatley with you when you were

24   arrested?

25         A.     No.  He was not with me during the
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Case 1:15-cv-03296-MLB  Document 124-2  Filed 06/13/18  Page 123 of 233

Page 123

1    arrest.  He was with me in the immediate aftermath,

2    when I was in custody.

3        Q.     Was Barry Fleming with you at the time

4    of your arrest?

5        A.     No.

6        Q.     And American Drone Industries, do you

7    believe the gentleman with American Drone Industries

8    were with you at the time of your arrest?

9        A.     No.

10       Q.     Okay.  Just before you were arrested,

11   what were the crowd of protesters doing?

12       A.     There was no unified crowd of

13   protesters.

14       Q.     What do you mean by that?

15       A.     The crowd of protesters I had been

16   following had appeared to have broken up into smaller

17   groups.  And I did not -- I did not know their

18   status.  So I saw a small -- smaller group of

19   protesters on the sidewalk and various people

20   standing and walking in the street and on sidewalks.

21       Q.     So at some point, you lost track of the

22   large crowd; is that correct?

23       A.     Yes.

24       Q.     Do you know how that happened?

25       A.     I was writing a Tweet.  I paused on the

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 124 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 124

1  sidewalk as the main group went around a corner, and

2  so I fell a bit behind.

3       Q.    And how many people were in the large

4  group?

5       A.    I don't recall.

6       Q.    More than a hundred?

7       A.    I don't know.

8       Q.    Okay.  So the larger group of people

9  moves down a corner, and you lose track of them,

10  correct?

11       A.    Yes.

12       Q.    Did you look for them?

13       A.    Yes.

14       Q.    And you were unable to find them?

15       A.    I saw some people still walking on the

16  sidewalk.  I followed them, and I heard a commotion

17  some distance ahead.  And after that point, there

18  appeared to no longer be a unified group of

19  protesters to find.

20       Q.    Did it appear that they were

21  dispersing?

22       A.    I could not tell what was happening.

23       Q.    Okay.  So you --

24       A.    I believed there was a larger group

25  somewhere ahead of me, but I could not tell what was

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 125

1   happening.

2        Q.    Okay.  But you located the smaller

3   group; is that correct?

4        A.    Yes.  I encountered a small group

5   gathered on the sidewalk as well as a number of

6   people standing and walking around on the sidewalks

7   and in the streets.

8        Q.    Did this group appear to be stationary?

9        A.    The small group I'm referring to, yes.

10        Q.    And was this smaller group gathered in

11   front of the Zone 5 Police Precinct?

12        A.    No.  But alongside it.  Again, not at

13   its front door.

14        Q.    And you said you heard a loud

15   commotion.  What was the commotion?

16        A.    It was inarticulate, loud cries and

17   shouts.

18        Q.    Okay.  And upon hearing the commotion,

19   what did you do?

20        A.    I jogged to catch up and see what was

21   happening so that I could continue reporting on the

22   event.

23        Q.    And when you -- were you able to catch

24   up with the crowd?

25        A.    Again, the nature of the activity

Page 126

1    appeared to have changed.  So I caught up with some

2    people, but I couldn't tell what was happening or if

3    the main group was continuing.

4                 I felt -- my sense was that there

5    was -- that there had to be more people farther

6    ahead, so that I had not caught up to the entire

7    event.

8         Q.     Okay.  And you said that the nature of

9    the activity of the group had changed.  What do you

10   mean by that?

11        A.     It was no longer a unified crowd

12   marching on a sidewalk, but rather, was the small

13   group and individuals variously standing and walking

14   around.

15               In addition, the police had blocked off

16   the street from vehicular traffic, which had not been

17   done on most of the previous streets we had passed

18   along.

19        Q.     Okay.  Do you recall any members of the

20   Atlanta Police Department providing any orders when

21   you caught up with the small crowd?

22        A.     No.

23        Q.     Do you recall any officers with a

24   bullhorn, issuing orders to the crowd?

25        A.     No.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 127

1       Q.     Do you recall or were you able to

2   determine what the commotion was?

3       A.     At that time, no.

4       Q.     Prior to your arrest, were you able to

5   determine what the commotion was?

6       A.     No.

7       Q.     So at the time of your arrest, you had

8   no knowledge of what the commotion was?

9       A.     Correct.

10       Q.     When you reached this crowd, what was

11   happening?

12       A.     There was a small group of protesters,

13   gathered on the sidewalk, facing some -- several

14   police officers.  The group appeared to be gathered

15   around someone or something.  And they were shouting

16   and chanting slogans at the police officers.

17       Q.     Okay.  And what were the police

18   officers doing?

19       A.     The majority of the police officers

20   were standing still and listening, if that's the

21   word.  I could briefly see, in the back, behind them,

22   at least one officer grabbing a civilian.

23       Q.     Do you know why the officer grabbed the

24   civilian?

25       A.     No.

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 128 of 233

April 12, 2018

Page 128

 1          Q.     And what was your response?  What

 2   actions did you take when you caught up with the

 3   small group?

 4          A.     I took a photo of them.

 5          Q.     And is that the photo that you Tweeted

 6   in Defendant's Exhibit 6? -- Ruch Plaintiff

 7   Production 522?

 8          A.     Yes.

 9          Q.     And what did you do after you took this

10   photograph?

11          A.     I proceeded ahead, again believing that

12   the main protest was occurring somewhere ahead.

13          Q.     How far ahead did you proceed?

14          A.     I don't know.  A short distance.

15          Q.     Ten feet? 50 feet?

16          A.     I don't know.

17          Q.     Did you proceed further than the length

18   of this room?

19          A.     In that vicinity sounds right.  I don't

20   know.

21               MR. WEBER:  And if we could have an

22          agreement as to how far that is since -- I

23          mean . . .

24               MS. WYATT-BULLMAN:  I think it's

25          probably 15 feet.

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 129 of 233

John Ruch vs City of Atlanta, et al.
John Ruch                                                April 12, 2018

Page 129

```
 1                    MR. WEBER:  I'd say that's -- 15 to 20,
 2          yes.  I think that's fair.  I just wanted to
 3          put something on there.
 4                    MS. WYATT-BULLMAN:  Yes.  I'd say that
 5          the room is approximately 15 to 20 feet
 6          across.
 7                    MR. WEBER:  Fair enough.
 8                    MS. WYATT-BULLMAN:  No problem.
 9          Q.     (By Ms. Wyatt-Bullman) So after you
10   proceeded approximately 15 to 20 feet ahead from
11   where you took the photograph that you posted to
12   Twitter at 5:16 p.m. on November 26, 2014, what
13   happened next?
14          A.     I saw police officers arresting --
15   appearing to arrest an individual and bringing them
16   down to the ground, down to the sidewalk.
17          Q.     And what happened next?
18          A.     I immediately attempted to take a photo
19   of the arrest.
20          Q.     Okay.  What happened next?
21          A.     A hand was waved in front of my phone,
22   blocking me from taking the photo.  I looked up to
23   see a person who had jumped in front of me.  That
24   person grabbed my camera and my arm, and I saw it was
25   a police officer.
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 130

1     Q.     How were you holding your phone when
2   you attempted to take the photograph?
3     A.     In my hands, extended outward from my
4   torso.
5     Q.     How far did you have the phone extended
6   away from your torso?
7     A.     I don't know.  A foot or so?
8     Q.     Were your arms fully extended when you
9   were holding the phone?
10    A.     I don't recall.
11    Q.     And you were holding the phone with
12  both hands; is that correct?
13    A.     I don't recall.  I believe so.
14    Q.     Okay.  And it's your testimony that the
15  officer grabbed your phone; is that correct?
16    A.     Yes.
17    Q.     And with which hand did the officer
18  grab your phone with?
19    A.     I don't recall.
20    Q.     And your testimony is also that at the
21  same time she grabbed your phone, she grabbed your
22  arm; is that correct?
23    A.     Yes.
24    Q.     And which arm did she grab?
25    A.     My left arm.

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 131 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 131

1     Q.    And do you know where on your left arm
2  she grabbed you?
3     A.    In the wrist and forearm area.
4     Q.    So between your wrist and your elbow?
5     A.    I don't recall a specific point.  It
6  was in that vicinity.
7     Q.    Did she grab you higher than your
8  elbow?
9     A.    No.
10    Q.    Did she grab you lower than your wrist?
11    A.    It was my wrist and forearm area.
12    Q.    And do you recall with which hand she
13  grabbed your arm?
14    A.    I don't recall that she was facing me.
15          MS. WYATT-BULLMAN:  We can take a break
16       here for a second.
17          (A short recess was taken, after which
18       the following proceedings were had:)
19          MS. WYATT-BULLMAN:  Back on the record.
20    Q.    (By Ms. Wyatt-Bullman) Mr. Ruch, right
21  before we took our break, you were describing how
22  the -- how an Atlanta police officer grabbed your
23  left arm and your cell phone and arrested you; is
24  that correct?
25    A.    Yes.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 132

1          Q.     Prior to your arrest -- just prior to

2     your arrest, do you recall any officers issuing any

3     orders?

4          A.     No.

5          Q.     Do you recall anyone on a bullhorn

6     issuing any orders?

7          A.     No.

8          Q.     Do you recall any officers attempting

9     to clear a certain area of individuals?

10         A.     No.

11         Q.     And you stated that you were holding

12    your phone approximately a foot away from you, with

13    both hands; is that correct?

14         A.     To the best of my recollection, yes.

15         Q.     And were you holding your phone higher

16    than your waist?

17         A.     Yes.

18         Q.     Were you holding your phone higher than

19    your shoulders?

20         A.     No.

21         Q.     Approximately how long would it have

22    taken you to take a photo on your cell phone?

23                MR. WEBER:  Object as to form.

24                THE WITNESS:  It varies, depending on

25          what you're trying to take a picture of.

John Ruch vs City of Atlanta, et al.   Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 133 of 233
John Ruch

April 12, 2018

Page 133

```
 1          Seconds to minutes.
 2          Q.     (By Ms. Wyatt-Bullman) Did you have the
 3     camera app open on your cell phone prior to entering
 4     the area where you were attempting to take the photo,
 5     before your arrest?
 6          A.     I don't recall.
 7          Q.     Do you recall how long you stopped in
 8     order to take that photo?
 9          A.     Seconds.
10          Q.     Okay.  Less than 30 seconds?
11          A.     Yes.
12          Q.     Less than 10 seconds?
13          A.     I can't -- I don't know.
14          Q.     Okay.  Why do you believe that the
15     officer stopped you?
16                 MR. WEBER:  And I'll object as to form.
17                 But go ahead.
18                 MS. WYATT-BULLMAN:  What's the --
19          what's the problem with the question?
20                 MR. WEBER:  You said, "Why do you
21          believe the officer stopped you," and the
22          "stop" is what I have concerns about, because
23          I think his testimony is that first the
24          officer was interfering with the filming and
25          then the officer was arresting him.  So I
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB  Document 124-2  Filed 06/13/18  Page 134 of 233

April 12, 2018

Page 134

1          don't know what the "stop" means.  That's all.

2                    MS. WYATT-BULLMAN:  That's fine.  I'll

3          clarify.

4          Q.    (By Ms. Wyatt-Bullman) Why do you

5     believe that the officer interfered with your taking

6     a photo?

7          A.    I don't know.

8          Q.    Is it your belief that the officer

9     intentionally interfered with you taking a photo?

10         A.    Yes.

11         Q.    Why do you hold that belief?

12         A.    Her behavior was consistent with

13    someone attempting to block a photo, waving her hand

14    in front of the device without saying a word, and

15    then physically grabbing me, to the extent that

16    before I realized it was a police officer, I assumed

17    it was just some obnoxious, random person on the

18    street.

19         Q.    Do you encounter a lot of obnoxious

20    people?

21                    MR. WEBER:  I guess I'll object as to

22         form.

23                    THE WITNESS:  It's hard to quantify,

24         but not uncommon in my line of work.  Some of

25         them are other journalists.

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 135 of 233

April 12, 2018

Page 135

1      Q.     (By Ms. Wyatt-Bullman) So it's sort of
2   all very perception-based.  Would you agree?
3               MR. WEBER:  And I'll object as to form.
4               THE WITNESS:  A lot of it is
5          practice-based, I would -- I think you would
6          agree.
7      Q.     (By Ms. Wyatt-Bullman) Okay.  So you
8   testified that from the time you stopped to attempt
9   to take the photo, from the time that the officer
10  grabbed your arm, was seconds, correct?
11     A.     Yes.
12     Q.     How do you know that she knew you were
13  taking a photograph?
14               MR. WEBER:  Object as to form.
15               THE WITNESS:  Her first action was to
16          wave her hand in front of my phone that was
17          pointed at an arrest plainly transpiring on
18          the sidewalk.
19     Q.     (By Ms. Wyatt-Bullman) And your phone
20  was higher than your waist, but lower than your
21  shoulders; is that correct?
22     A.     Yes.
23     Q.     So again, how do you know that she
24  wasn't just moving through the area?
25               MR. WEBER:  Object as to form.

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 136 of 233

April 12, 2018

```
 1                    THE WITNESS:  She waved her hand in
 2          front of my camera phone.
 3          Q.     (By Ms. Wyatt-Bullman) I know we're not
 4   going to be able to capture this on the record, but
 5   for my benefit, can you please demonstrate how she
 6   waved her hand?
 7                    MR. WEBER:  I guess I will object
 8          because we can't put it on the record.
 9                    MS. WYATT-BULLMAN:  I'll describe it as
10          best I can, but -- I think it will assist me
11          in better understanding what happened that
12          evening.
13                    MR. WEBER:  And we're going to object
14          to the questioner describing what happened, if
15          it's a demonstration.
16                    MS. WYATT-BULLMAN:  So are you
17          instructing him not to provide the
18          demonstration?
19                    MR. WEBER:  Well, go ahead and try.  I
20          think I'm probably going to have an objection
21          through this whole testimony.  But that's
22          fine, if you want to try.  I think I'm going
23          to have an objection.  I don't know.
24                    MS. WYATT-BULLMAN:  Well, you know, I
25          think for the record, I'm just trying to get a
```

Page 137

1  better understanding so that then I can ask

2  the questions that I need to.  Because at this

3  moment, I don't have a very clear

4  understanding of what actually happened.  So,

5  you know, if the witness can demonstrate that,

6  then that might allow me to ask a question

7  that better clarifies for the record.

8         MR. WEBER:  And part of my objection is

9  that for him to demonstrate, you will have to

10  establish that he is certain as to particular

11  moves.  Because otherwise, it's just like him

12  guessing as to exactly where his hands were or

13  where his arms were.  That's the problem with

14  a demonstration in the course of a deposition,

15  but . . .

16         MS. WYATT-BULLMAN:  No.  And I

17  understand it.  But it's his testimony that

18  she intentionally waved his hand in front of

19  the camera and I need to know how that

20  happened.

21         MR. WEBER:  But if he doesn't recall if

22  his fingers were here or a half an inch

23  further, the demonstration is not an accurate

24  reflection of his recollection, because he

25  doesn't recall.

John Ruch vs City of Atlanta, et al.
John Ruch
Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 138 of 233
April 12, 2018

Page 138

1    Q.    (By Ms. Wyatt-Bullman) To the best of

2  your ability, can you demonstrate how the officer

3  waved her hand in front of the camera?

4            MR. WEBER:  And we'll object to this

5        question, for sure.

6            THE WITNESS:  If my glasses are the

7        camera, it's to this effect, very rapidly

8        (indicating), palm facing me.

9    Q.    (By Ms. Wyatt-Bullman) So it was one

10  hand, correct?

11    A.    Yes.

12    Q.    Do you recall if it was the officer's

13  left or right hand?

14    A.    I don't recall.

15    Q.    And do you recall -- and it's your

16  testimony that the officer was waving her hand in a

17  rapid fashion, correct?

18            MR. WEBER:  In front of the camera is

19        what he demonstrated.  Directly in front of

20        the camera, and only in front of the camera,

21        is what he demonstrated.

22            MS. WYATT-BULLMAN:  Are you testifying

23        for him?

24            MR. WEBER:  No.  I'm just describing

25        what I saw because you're describing what you

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 139

```
 1          saw.

 2                    But go ahead.

 3                    MS. WYATT-BULLMAN:  Well, no, I'm

 4          asking him -- that was a question.

 5                    THE WITNESS:  Can you ask it again?

 6          Q.    (By Ms. Wyatt-Bullman) Yes.  Is it your

 7     testimony that the officer was waving the one hand in

 8     front of the camera rapidly?

 9          A.    Yes.

10          Q.    Okay.  And how far away was the

11     officer's hand from your phone?

12          A.    I don't know.

13          Q.    Was she more than a foot away?

14          A.    I just don't know.  She was pretty

15     close --

16          Q.    Was she four feet away?

17          A.    -- but I don't know.

18                    I don't know.  I didn't measure it.

19          Q.    Did you get a sense of how far away her

20     hand was from the camera?

21          A.    My sense was that it was close.

22          Q.    And what does "close" mean to you?

23          A.    It means close.  I didn't -- it's not a

24     measurement.

25          Q.    Does "close" mean more than a foot?
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 140 of 233

April 12, 2018

Page 140

 1    Just --

 2         A.    I don't know the distance.  I don't

 3    know the specific distance.

 4         Q.    Was she further than four feet away?

 5         A.    I don't know.

 6         Q.    Did you have your camera zoomed in at

 7    the time?

 8         A.    No.

 9         Q.    So this officer could have been

10    standing anywhere between a couple of inches and

11    four feet away from you, just prior to your arrest?

12         A.    As I said, I do not recall any specific

13    measured distance.

14              MR. WEBER:  And --

15              THE WITNESS:  It was close enough to

16         block the shot.

17              MR. WEBER:  And you asked for the

18         demonstration and he did it.  I mean, we can

19         actually measure the distance, if that was his

20         recollection.  Because, I mean, it looked like

21         it was less than a foot to me.  But -- I mean,

22         whatever you want to do.

23              MS. WYATT-BULLMAN:  Yes.

24         Q.    (By Ms. Wyatt-Bullman) If you would

25    like to hold up a phone and place your hand where you

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 141

1   believe her hand was at, we can certainly measure

2   that?

3                    MR. WEBER:  Yes.  That's fine.

4                    THE WITNESS:  Again, I was looking

5            through the camera at the time, so I'm more

6            familiar with the hand blocking it than with,

7            you know, what she was doing or where she was

8            in time and space.

9                    You know, that feels about right

10           (indicating).

11       Q.      (By Ms. Wyatt-Bullman) Okay.  Hold on.

12       A.      This is getting really abstract.

13                   MR. WEBER:  We have a dollar bill,

14           which is six inches.

15                   MS. WYATT-BULLMAN:  This is eight and a

16           half right here.

17       Q.      (By Ms. Wyatt-Bullman) So do you

18   believe that her hand was less than eight-and-a-half

19   inches away from your --

20       A.      I can't specify a distance in inches.

21   I can't do that.  It would just be -- that's a false

22   precision.  I can't do it.

23       Q.      Presumably her hand is attached to her

24   body, correct?

25       A.      Correct.

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 142 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 142

```
 1          Q.      Where was her body in relation to you

 2    at the time the hand went in front of your camera?

 3                  MR. WEBER:  Could you repeat the

 4          question?  I'm sorry.

 5                  MS. WYATT-BULLMAN:  Sure.

 6          Q.      (By Ms. Wyatt-Bullman) Where was her

 7    body in relation to you at the time she -- the hand

 8    was waved in front of your camera?

 9          A.      So I recall she was to my left and

10    leaning a bit, to wave her hand.  And then she moved

11    directly in front of me.

12          Q.      How much time passed between the time

13    that she waved her hand and she moved in front of

14    you?

15          A.      Very -- very brief.  Seconds.

16          Q.      Less than 10 seconds?

17          A.      Yes.

18          Q.      And did you see her prior to attempting

19    to take the photograph?

20          A.      No.

21          Q.      And again, the hand was moving in a

22    very rapid kind of waving fashion?  Is that an

23    accurate description?

24          A.      Yes.

25          Q.      And she was standing to your left?
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

```
 1          A.     As I recall, yes.

 2          Q.     Let's do this.  I'm going to hand you a

 3     piece of paper.

 4                 I'm going to hand you a piece of paper

 5     and a pen.  And if you could draw for me -- and I

 6     understand and I do not expect everyone to be an

 7     artist.  So to the best of your ability, if you could

 8     draw your location on the sidewalk, and then I'll

 9     have you add pieces of it from there.

10                 Can you draw --

11                 MR. WEBER:  We can do this.  I'm just

12          going to interpose an objection to it because

13          there's obviously going to be problems with

14          accuracy and --

15                 MS. WYATT-BULLMAN:  I'm not asking it

16          to be to scale.

17                 MR. WEBER:  Fair enough.

18          Q.     (By Ms. Wyatt-Bullman) Certainly not to

19     scale.  But let's start with just drawing the

20     sidewalk and where you were at.

21          A.     (Witness complies.)

22                 MR. WEBER:  And this is at the time

23          of --

24                 MS. WYATT-BULLMAN:  At the time of your

25          arrest.
```

```
 1                    MR. WEBER:  -- the officer's

 2        interaction.

 3        Q.     (By Ms. Wyatt-Bullman) At the time of

 4   the hand waving.

 5        A.     So it's quite a wide sidewalk at that

 6   point --

 7                    MR. WEBER:  If you'll put "sidewalk" on

 8        it.

 9        Q.     (By Ms. Wyatt-Bullman) Just write it

10   there at the top.  And could you mark the street so

11   we know which side is the building side and which

12   side is the street side?

13        A.     Yeah.  So if we show this as the -- how

14   would you like me to --

15                    MR. WEBER:  This is Zone 5?

16                    THE WITNESS:  These are buildings, this

17        is street, you mean --

18        Q.     (By Ms. Wyatt-Bullman) Okay.  So

19   whatever's the street, put "street."

20        A.     (Witness complies.)

21        Q.     Okay, great.  Now indicate where a

22   building began.  You said it was a wide sidewalk.

23        A.     I'm assuming the building begins at the

24   sidewalk, and it goes to the wall.  I don't know what

25   was going on over here.
```

Page 145

```
 1          Q.      Where's the wall?

 2          A.      The wall, as I recall -- the building

 3   goes right up to it.

 4          Q.      Okay.  So where were you standing --

 5          A.      To --

 6          MR. WEBER:  Put a "J" --

 7          Q.      (By Ms. Wyatt-Bullman) -- at the time

 8   of the hand waving?

 9          MR. WEBER:  Can he put a "JR" for him?

10          MS. WYATT-BULLMAN:  Well, yes.

11          Q.      (By Ms. Wyatt-Bullman) I'm not

12   expecting you to draw yourself.  Stick figures are

13   fine.

14          MR. WEBER:  No, just "JR" as who it is.

15          THE WITNESS:  Again, very generally

16   without scale and so forth here.

17          Q.      (By Ms. Wyatt-Bullman) Right.

18          A.      So if I'm -- I was near the curb --

19          Q.      You were in the street?

20          A.      No.  I was on the sidewalk.

21          MR. WEBER:  Okay.  We have to do it

22   over again.

23          MS. WYATT-BULLMAN:  Well, then you have

24   to draw the sidewalk again.

25          THE WITNESS:  I'm sorry.  I've confused
```

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 146

```
 1        everybody, including myself.

 2        Q.      (By Ms. Wyatt-Bullman) Do you want

 3   another piece?

 4                MR. WEBER:  So the sidewalk is up here?

 5                THE WITNESS:  I'm sorry.  Let me start

 6        over.

 7        Q.      (By Ms. Wyatt-Bullman) Do you want

 8   another piece?

 9        A.      Yeah.  I didn't want to put "sidewalk"

10   on the sidewalk.

11        Q.      (By Ms. Wyatt-Bullman) We'll let your

12   attorney keep it.

13        A.      Well, let's just do it this way.  I'll

14   make that the sidewalk, and this the street

15   (indicating).

16        Q.      Much better.

17        A.      Okay.  And building.

18                MR. WEBER:  Do you want him to put

19        where he was?

20        Q.      (By Ms. Wyatt-Bullman) Where were you

21   at at the time of the hand waving?

22                MR. WEBER:  And that will be designated

23        by a "JR."

24                THE WITNESS:  Here (indicating).

25        Q.      (By Ms. Wyatt-Bullman) And where was
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 147

1    the crowd at the time of the hand waving?

2         A.    The crowd is over here (indicating).

3         Q.    Okay.  And where was the incident that

4    you were attempting to photograph located?

5         A.    So the arrest was closer to the wall --

6    approximately in that area (indicating).

7         Q.    And the event you were attempting to

8    photograph, you have labeled "arrest"; is that

9    correct?

10        A.    Yes.

11        Q.    And where was the officer who waved the

12   hand standing?

13        A.    Should I call her "officer"?

14        Q.    You can say "officer."

15             MR. WEBER:  Was she behind you, or in

16        front of you?  You've had prior testimony

17        about her location.  I'm just trying to make

18        sure the diagram is somewhat reflective --

19             THE WITNESS:  It's a long word.  Anyway

20        she was essentially in front of me and to my

21        left and then came in, you know, the hand and

22        then -- and her body coming in front of me, as

23        I recall.

24        Q.    (By Ms. Wyatt-Bullman) Your back was to

25   the street, correct?

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 148 of 233

April 12, 2018

Page 148

```
 1            A.    Yes.

 2            Q.    And she was facing the street?

 3            A.    Yes.

 4                  Or facing me.

 5            Q.    Okay.  And were there other officers in

 6      the area at the time of the hand waving?

 7            A.    Yes.

 8            Q.    And you can just put a star or a dot

 9      where the other officers were.

10                  MR. WEBER:  And I think I'll object to

11            it.  I mean, there were a lot of officers

12            around there, but . . .

13                  THE WITNESS:  Yes.  And this is really

14            with no precision and location, but as I

15            recall, there were at least two involved in

16            this arrest.  So there were some dealing with

17            the crowd.  And I believe after my arrest, I

18            realized there were a couple over -- at least

19            some over here (indicating).

20            Q.    (By Ms. Wyatt-Bullman) Okay.

21                  MR. WEBER:  And are you including any

22            officers that may have been in the street?

23                  THE WITNESS:  Yes.  Does that -- how

24            far do I go?

25            Q.    (By Ms. Wyatt-Bullman) Well, were there
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 149 of 233

April 12, 2018

Page 149

1    any officers in your immediate vicinity in the

2    street?

3          A.      I don't recall.  Since my back was to

4    it.  There were officers, again, just sort of

5    wandering around all over the place, so -- including

6    in the street.

7          Q.      So I know you were attempting to

8    photograph the arrest that was occurring close to the

9    building.  What was the crowd doing at that time?

10         A.      I don't know.  I wasn't paying

11   attention to them.  I certainly -- I didn't detect

12   any change.

13         Q.      Okay.  Can you go ahead and sign and

14   date your drawing for me?

15         A.      (Witness complies.)

16               MR. WEBER:  And we'll just interpose an

17         objection to it.  But that's fine.

18               And we won't have a copy --

19               THE WITNESS:  As I'm signing it, I'm

20         adding question marks to a number of copies,

21         so . . .

22               MR. WEBER:  Maybe we can take this off

23         the record for a second.

24               (Thereupon an off-the-record discussion

25         was had.)

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 150 of 233

April 12, 2018

Page 150

1          Q.      (By Ms. Wyatt-Bullman) And we are going

2    to mark your drawing as Exhibit 8 to the deposition.

3                  (Exhibit 8 was marked for

4          identification.)

5                  MS. WYATT-BULLMAN:  And you indicated

6          you had an objection to the drawing.  I just

7          want to make sure we get the objection on the

8          record.

9                  MR. WEBER:  I'm just interposing an

10         objection due to the accuracy of the diagram,

11         the inability of the diagram to capture the

12         location of all involved, based upon his

13         testimony.  That's fine.

14                 MS. WYATT-BULLMAN:  Okay.

15         Q.      (By Ms. Wyatt-Bullman) To the best of

16    your ability, Mr. Ruch, do you believe that that

17    diagram reflects your location as it relates to the

18    individual you were trying to photograph and the

19    officer who waved the hand?

20         A.      In the vaguest terms possible, yes.

21    It's certainly not to any kind of scale or -- you

22    know, or utility.  It's as rough as it could be.

23         Q.      That's fine.

24                 So after the officer grabbed your

25    arm -- your left arm, what happened next?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 151

```
 1          A.     I looked at her and realized she was a
 2   police officer, and she looked at me.  And I
 3   immediately said something to the effect of, "I'm a
 4   reporter.  I'm with the media.  I'm with the media."
 5          Q.     Okay.
 6          A.     And she -- since she had grabbed my arm
 7   with some force, I took a step back, and we just
 8   looked at each other for half a second.
 9          Q.     For half a second?
10          A.     And she said nothing.
11          Q.     Okay.  And --
12          A.     Approximately half a second.
13          Q.     And what happened next?
14          A.     I felt a pat or tug on my jacket, and I
15   heard a male voice from behind me, say, "Take this
16   one."
17          Q.     Okay.  Do you know who the voice was
18   connected to?
19          A.     I did not know at the time.  I've since
20   been told it was a commanding officer on the scene.
21          Q.     And who told you that?
22          A.     My attorneys.
23          Q.     Okay.  Do you have any independent
24   knowledge of who the individual who tapped you on the
25   back was?
```

Page 152

1          A.     No.

2          Q.     Okay.  After you were tapped on the

3    back, what happened next?

4          A.     The officer who grabbed me told me I

5    was under arrest.

6          Q.     All right.  And what happened next?

7          A.     She ordered me to get on the ground, so

8    I laid down on the sidewalk and complied.

9          Q.     After you were on the sidewalk, what

10   happened?

11         A.     I was handcuffed, my phone and hat were

12   taken by the police, and that -- yeah.

13         Q.     Okay.  Do you remember which officer

14   took your phone?

15         A.     I do not recall.

16         Q.     Okay.  So after you were handcuffed,

17   what happens next?

18         A.     I was brought back to my feet, and I

19   was kept with the officer who grabbed me, as well as

20   another officer, for some time, during which I saw

21   Thomas Wheatley nearby and alerted him to the fact I

22   was being arrested.  And he and I protested to the

23   officers that I was a reporter and demanded to know

24   what the charges were.  And to -- you know, to effect

25   my release.

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 153

1       Q.      And what happened next?

2       A.      The officers repeatedly refused to say

3   what the charge was and asked us about the -- whether

4   I was carrying a media badge, which -- the -- neither

5   of us -- we asked what that meant.  The officers

6   could not explain what that meant.

7               Thomas explained there is no -- you

8   know, no such thing as a license, or something like

9   that, and that he himself had no badge.  But they

10  continued to keep me in custody.

11      Q.      During that time, did you attempt to

12  show any of the officers the press credentials that

13  you said you had in your wallet?

14      A.      No.  That would have been

15  inappropriate, as that was for other media

16  organizations that I was not representing.

17      Q.      Did you offer to show those press

18  credentials at any point?

19      A.      No.

20      Q.      So when the officer was asking you for

21  a media badge, you didn't think to offer the press

22  credentials in your wallet?

23      A.      No.  Those are not media badges, and

24  there is no such thing, in fact, as a media badge.

25      Q.      Why didn't you offer to show the press

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 154

1   credentials that you had in your wallet --

2                   MR. WEBER:  Asked and answered.

3        Q.      (By Ms. Wyatt-Bullman) -- at that time?

4        A.      You asked; I answered already.

5        Q.      Well, we can have the court reporter

6   read it back, if you want that.

7                   MR. WEBER:  Yes.  That's fine.

8                   MS. WYATT-BULLMAN:  Let's do that.

9                   (The record referred to was read back

10          by the reporter as follows:

11              "QUESTION:  During that time, did you

12          attempt to show any of the officers, the press

13          credentials that you said you had in your

14          wallet?

15              "ANSWER:  No.  That would have been

16          inappropriate, as that was for other media

17          organizations that I was not representing.")

18       Q.      (By Ms. Wyatt-Bullman) So you didn't

19   have any press credentials for the organization that

20   hired you that evening; is that correct?

21       A.      Correct.

22       Q.      Okay.  Did Mr. Wheatley offer you press

23   credentials for the organization you were hired to

24   represent that evening?

25       A.      No.  And he himself did not have press

Page 155

```
 1   credentials.
 2        Q.     All right.  So you said that you were
 3   with the officer for some time.  What does "some
 4   time" mean?
 5        A.     I don't know precisely.  So -- several
 6   minutes.
 7        Q.     Less than an hour, correct?
 8        A.     Yes.
 9        Q.     Less than 30 minutes?
10        A.     Yes.
11        Q.     Okay.  And after -- what happened after
12   you left that area?
13        A.     I was taken into the street and made to
14   stand in the street next to a police car for some
15   time.  Then I was transferred into the hands of other
16   officers who led me onto a nearby street where I
17   waited some more in various locations at their order.
18        Q.     And how long do you believe you stood
19   next to that police car?
20        A.     I don't recall with precision.  No.
21   Some matter of minutes.
22        Q.     Was your phone returned to your person
23   at that time?
24        A.     No.
25        Q.     Okay.  Let's see.  At some point, your
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 156

1   cuffs were exchanged; is that correct?

2          A.     Yes.  Metal handcuffs were replaced

3   with a plastic zip tie.

4          Q.     Do you recall who placed those flex

5   cuffs on you?

6          A.     No.  And I don't recall being able to

7   see them as I was face down on the ground during the

8   arrest, and all of the handcuffing went on behind my

9   back.  So I don't recall.

10         Q.     So is it your testimony that the metal

11  cuffs were exchanged for the flex cuffs while you

12  were still laying on the ground?

13         A.     I don't recall, at the moment, where

14  that transpired in the series of events.  I would

15  refer to my written statement as my freshest memory

16  of those events more than three years ago.  I believe

17  I reference the particular sequence in that document.

18         Q.     So you said you stood behind a cop car

19  for a little while and then you were taken to another

20  location.  What happened after that?

21         A.     Again, for a stretch of time, I was

22  ordered to stand with some other people who had been

23  arrested in various locations, including the entrance

24  to a parking garage on a sidewalk and in the street,

25  as the officers tried to figure out what to do with

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 157

```
 1   me, as no one seemed to know why -- why I had been

 2   arrested or what I was being charged with.

 3        Q.     Okay.  Did you speak to any of the

 4   other arrestees?

 5        A.     No.

 6        Q.     So again, after that happened, what

 7   happened next?

 8        A.     I believe the next event was Officer

 9   Gruen approaching me and leading me a distance away

10   from the other arrestees and chatting with me.

11        Q.     How do you know it was Officer Gruen?

12        A.     It was according to his name on his

13   uniform.

14        Q.     So he was wearing his nametag?

15        A.     I don't recall what specific device had

16   his name on it.

17        Q.     Okay.  And you said that he led you

18   some distance away.  What does "some distance" mean?

19        A.     I don't recall a specific distance,

20   but.  At that point I recall most of the arrestees

21   being along a sidewalk or edge of the street.  And he

22   led me into the street.

23        Q.     Would it have been more than 10 feet

24   away?

25        A.     Approximately 10 feet to -- but it's
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 158

1    speculation.  I really don't know.

2         Q.     Okay.  And what happened after he led

3    you away from the group?

4         A.     He said something to the effect of

5    asking me what I had done to be arrested and

6    suggesting I must have done something.  And I said

7    that that was not true; I had not committed any

8    crime.

9              And he then became a bit more

10   aggressive and said something to the effect that they

11   can't unarrest me because that makes liability, and I

12   said, "Nonetheless, I did not commit a crime."

13             And I believe, either during that

14   conversation or sometime after is when he returned my

15   phone to me, putting it in my shirt pocket.

16        Q.     Okay.

17        A.     Again, I would refer to my written

18   statement as the most accurate recollection of his

19   specific statements to me and the particular sequence

20   of such things as returning the phone.

21        Q.     Was your phone damaged in any way

22   after -- between the time that the officer grabbed it

23   and the time it was returned to you?

24             MR. WEBER:  Object as to form.  I can

25             explain it.

John Ruch vs City of Atlanta, et al.
John Ruch                                                                    April 12, 2018

Page 159

```
 1                    He's not sure whether there were any

 2          deleted images in that because he construed it

 3          as damage to phone.  That's all I'm saying.

 4          Q.    (By Ms. Wyatt-Bullman) As you sit here

 5   today, are you aware of any damage that was done to

 6   the phone you carried on your person on

 7   November 25th, 2014?

 8          A.    During the arrest sequence or at any

 9   time?

10          Q.    During the arrest sequence.

11          A.    No.

12          Q.    Was your phone fully operational when

13   it was returned to you?

14          A.    Yes.

15          Q.    No cracked screen?  The screen was not

16   cracked by Atlanta Police Department; is that

17   correct?

18          A.    Correct.

19          Q.    And it was capable of taking images and

20   recording videos; is that correct?

21          A.    Correct.

22          Q.    And it could be used for the purposes

23   of making and receiving phone calls?

24          A.    Yes.

25          Q.    And you could still post to social
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 160 of 233

April 12, 2018

Page 160

1    media or receive text messages on your phone after it

2    was returned by APD; is that correct?

3         A.    Correct.

4         Q.    So to the best of your knowledge, there

5    was no damage done to your cell phone that you

6    carried on November 25th, 2014, by APD?

7         A.    Not to the hardware, no.

8         Q.    Did the officer who waved the hand in

9    front of your camera ever tell you to stop taking

10   photos?

11        A.    No.

12        Q.    Do you recall her issuing any order

13   whatsoever?

14        A.    No.  Except -- well, not prior to the

15   immediate arrest, when she told me, "You're under

16   arrest.  Get on the ground."

17        Q.    Okay.

18        A.    That was the first, and I believe only,

19   order she gave me.

20        Q.    Okay.  And was her order to get on the

21   ground made after the individual tapped you on the

22   back and said, "Take this one"?

23        A.    Yes.

24        Q.    Okay.  Okay.  So back to the sequence

25   of events, you said that Gruen returned the phone to

Page 161

1    you.  What happened next?

2         A.    I went back onto the -- to waiting with

3    other arrestees.  Again, I will refer to my written

4    statement as the best recollection of specific

5    sequences of events.  But as I recall now, the other

6    significant incident that took place at that site is

7    when another officer approached me with what he -- a

8    document he referred to as a ticket that he was

9    attempting to fill out with my information.  And he

10   wanted my assistance with that on such matters as my

11   name.

12        Q.    Okay.

13        A.    Yeah.

14        Q.    Did you assist the officer in providing

15   information necessary to complete the ticket?

16        A.    Yes.  However, he could not locate the

17   arresting officer and did not know what I was being

18   charged with, so it could not be completed.  And

19   there was much effort being made by the officers in

20   the vicinity to locate my arresting officer.  Because

21   they did not know what to do with me and speculated

22   freely on many different things that could happen,

23   including going to jail, being released on a ticket,

24   not being charged.  And then charging me, but not

25   knowing what to charge me with.

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 162 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 162

1          Q.     Okay.  So from the time -- let's see.

2    After the officer who you alleged waved the hand in

3    front of the camera asked you to get on the ground,

4    okay? -- that stated you were under arrest and asked

5    you to get on the ground, how long were you in her

6    custody, after you were on the ground?

7                 MR. WEBER:  I object as to form.

8          "Custody" is a legal term.

9                 THE WITNESS:  I was going to ask if you

10         could specify.  I was traded amongst hands

11         frequently, with and without her.

12         Q.     (By Ms. Wyatt-Bullman) What I want to

13   know is just about the officer that you are saying

14   grabbed your phone and your arm, okay?  How long were

15   you in her presence?

16         A.     I don't recall precisely.  It was the

17   period from the arrest to the time that I was led

18   into the street to the -- stand next to the police

19   car in the street.

20         Q.     Would that have been more than an hour?

21         A.     No.

22         Q.     Would it have been more than 30

23   minutes?

24         A.     I'm not totally -- I don't know.

25         Q.     Do you believe that you were in her

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 163

 1    presence for more than 30 minutes?

 2          A.    I just don't know.

 3          Q.    Okay.  From the time you were placed in

 4    handcuffs till the time you had the conversation with

 5    Officer Gruen -- the first conversation with Officer

 6    Gruen, how long was that time span?

 7          A.    I also can't say with any specifics.

 8          Q.    Was it longer than five hours?

 9          A.    No.

10          Q.    Was it longer than an hour?

11          A.    I don't know.

12          Q.    Was it longer than three hours?

13          A.    I don't think so.

14          Q.    Let's see.  So you were moved to

15    another location, and the individual was attempting

16    to complete the ticket.  Do you know which officer

17    was attempting to complete the ticket?

18          A.    No.

19          Q.    What happened next?

20          A.    After some more waiting, with no clear

21    answer as to what was going to happen to any of us, I

22    and other people who had been arrested, were placed

23    on a bus that appeared to be a prison -- prisoner

24    transport-style bus.  And we sat in the seats of the

25    bus.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 164

```
 1            Q.     Okay.  How do you know it was a
 2     prisoner transport bus?
 3            A.     Again, it appeared to have secured
 4     windows and had a -- yeah, had secured windows and
 5     was attended to by police officers.
 6            Q.     Okay.  Do you have very much experience
 7     with prisoner transport buses?
 8            A.     I do not.
 9            Q.     So it was just an assumption that the
10     bus was a prisoner transport bus?
11            A.     It was certainly an arrestee transport
12     bus.
13            Q.     That's what its purpose was that
14     evening -- the evening of your arrest; is that
15     correct?
16            A.     Yes.
17            Q.     Okay.
18            A.     So that was most -- that was my
19     assumption.
20            Q.     So how long did you sit on the bus?
21            A.     Again, I can't recall the specific
22     period of time, and -- there were two periods of
23     waiting on the bus as we sat for some time.  The bus
24     was then started and driven, but only through the
25     intersection, and then stopped in front of the police
```

John Ruch vs City of Atlanta, et al.
John Ruch
Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 165 of 233
April 12, 2018

Page 165

1    station, or precinct.  And then we waited for another

2    period of time that I cannot -- I don't recall

3    specifically and had no method of timing.

4        **Q.    So after the bus was moved through the**

5    **intersection, what happened next?**

6        A.    After the wait, we were -- I and most

7    of the arrestees were moved into the police station.

8        **Q.    Okay.  And what happened once you got**

9    **inside the police station?**

10        A.    I was seated with a number of other

11    arrestees in chairs, in a large room that had devices

12    for bicycle storage, as well as various computers

13    and -- and some desks.  And again, a long period of

14    waiting began.

15        **Q.    Okay.  What happened next?**

16        A.    After a lengthy period of waiting, the

17    officers began setting up -- kind of stations on a

18    table and asked us to come up -- brought us up, one

19    by one, and had us pose for photographs and took our

20    possessions and placed them into bags.

21        **Q.    Okay.  What happened after that?**

22        A.    I asked what this all was being done

23    for, and the officers told me they didn't know, the

24    photographer told me they didn't know.  And we were

25    then, after each, or most of us underwent that

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 166

1    procedure, we were seated back in the chairs.

2        **Q.      Okay.   What happened after that?**

3        A.      After another period of time, Officer

4    Gruen approached me again and individually asked me

5    to step aside from the larger group to have a

6    conversation with him.

7        **Q.      Okay.   And what were the details of**

8    **that conversation?**

9        A.      Again, I will refer to my written

10   statement as my best and freshest recollection of

11   exact words and sort of the sequence of the thoughts

12   he was expressing.  But in sum, he told me that they

13   had decided to charge me with disorderly conduct

14   obstruction.  And I said, "Is that one charge or

15   two"?

16              And he said, "It's one charge."

17              He then offered words to the effect

18   that it is a bullshit charge and that if it were up

19   to him, he would cut me loose, but that his

20   lieutenant had ordered that I be charged.  Which, of

21   course, was astonishing and frightening.

22              He made comments to me which attempted

23   to put him in a good light as one who had been kind

24   to some of the other arrestees and at one point

25   remarked that he probably shouldn't even be a police

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 167

1   officer.  And I made a remark to the effect of, "You

2   know, being kind to people sounds like you would be a

3   good police officer."

4              And I asked him what was going to

5   happen to me now that I had been charged.  And he

6   said that we would be taken to jail, but that I would

7   be released on something called a signature bond that

8   he presented as meaning I would immediately be

9   released, in essence.

10             And after that conversation, he

11  returned me to my seat.

12       Q.    Okay.  And then how long did you sit

13  there for?

14       A.    Again, I don't recall specific periods.

15  We were all together in the room for a number of

16  hours.

17       Q.    Okay.  What happened next?

18       A.    Most of us were taken, including me,

19  back outside and onto a bus, which took us to the

20  jail.

21       Q.    Which jail?

22       A.    I am not sure of my specific

23  terminology, but I believe it is -- I would defer to

24  whatever the actual record says.  I believe it's the

25  city jail.

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 168

1        Q.      And what happened once you reached the
2    city jail?

3        A.      We were seated in a room.  Each of us
4    had our photo taken again, and we were given a small
5    meal.  And we were informed, as I recall, by one of
6    the jail officers that we were being bailed out
7    virtually immediately by a group of good Samaritans,
8    as it was put to us.

9        Q.      Okay.  So did you actually enter into a
10   cell at the Atlanta Detention Center?

11       A.      No.

12       Q.      Were you ever ordered to change out of
13   your street clothes and into garments provided to you
14   by the Atlanta Detention Center?

15       A.      No.

16       Q.      How long were you at the Atlanta
17   Detention Center?

18       A.      Again, I don't know with precision, but
19   I believe a number of hours.  My particular release
20   was extended by -- by my noticing that they had
21   misspelled my name on the forms and had thus done
22   background checks or whatever they were doing
23   improperly, and so I had to be reprocessed.

24               So I -- I'm not sure what that period
25   of time was or how long it took.  We were kept in one

Page 169

1    room during the photography, and we were kept in a

2    different room during that period.

3          Q.     Okay.  And when you were released, were

4    your possessions returned to you?

5          A.     Yes.

6          Q.     Okay.  So you left the Atlanta

7    Detention Center --

8          A.     I'm sorry.  I take that back.  The

9    police had provided me with some of my possessions,

10   but some were in the bag that they had gathered at

11   the police station, and I had to get that later from

12   a police facility elsewhere in the city.

13         Q.     On Donald Lee Hollowell Parkway?

14         A.     I believe so.

15         Q.     And do you know when you went to go

16   gather those possessions?

17         A.     I don't recall.

18         Q.     And when you retrieved your

19   possessions, was your cell phone amongst those

20   possessions that you received from the Donald Lee

21   Hollowell facility?

22         A.     I don't recall the status of my phone

23   during that period.  I don't recall.

24         Q.     You don't recall if it was on your

25   person or not?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 170

```
1          A.    I would refer to my written statement
2    and what I may have recollected in there at that
3    time.
4                At this moment, I do not recall the
5    sequence of events and whether I maintained control
6    of the phone after the police returned it to me or if
7    they took it again.
8          Q.    And when you say "after they returned
9    it to you," would that have been when Gruen put it in
10   your shirt?
11         A.    Yes.
12         Q.    Okay.
13         A.    I just do not recall right now.
14         Q.    Given that information, I want to
15   expand on a question I asked before.  Because we
16   talked about any damage to your phone before it was
17   placed into your shirt.  So now I want to know if
18   there was any damage to your phone done between the
19   time it was put in your shirt and between the time
20   you picked up the remainder of your belongings at the
21   Donald Lee Hollowell facility.
22         A.    No.
23         Q.    And you do not recall anything being
24   deleted from your phone during that same time period;
25   is that correct?
```

Page 171

1              MR. WEBER:  Objection as to form, I

2        guess.

3              MS. WYATT-BULLMAN:  You guess?

4              MR. WEBER:  Yes, I guess.  I mean, you

5        already asked this question.  But yeah.

6              MS. WYATT-BULLMAN:  I think I'm just

7        expanding the timeframe on it.

8              MR. WEBER:  Okay.

9              THE WITNESS:  I'm sorry, can you say

10        the timeframe again?  And what you mean by

11        the --

12        Q.     (By Ms. Wyatt-Bullman) Sure.  So we

13   talked earlier about the -- about you not having a --

14   you not knowing whether or not that last photo you

15   took, you actually took it, if that photo was

16   completed, okay?  So we're unsure about whether that

17   photo was actually on your phone or not, okay?

18              Was anything else, at any point when

19   your phone may have been in the possession of the

20   Atlanta Police Department, deleted from your phone?

21        A.     I don't know.

22        Q.     So as you sit here today, can you state

23   with any certainty any item that was deleted from

24   your phone?

25        A.     No.

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 172 of 233

April 12, 2018

Page 172

1          Q.     Okay.  Did you have to appear at court

2    for the citation you were issued for your

3    November 25, 2014 arrest?

4          A.     Yes.

5          Q.     And when did you appear?

6          A.     I don't recall the exact date.  I,

7    again, defer to my written statement.  I defer to my

8    written statement.

9          Q.     Okay.  What happened when you went to

10   court?

11         A.     The city attorney, or solicitor -- I'm

12   not of the proper term -- requested a dismissal of

13   the charge against me.

14         Q.     Okay.  So the charges were not actually

15   brought against you in court; is that correct?

16               MR. WEBER:  Objection as to form.  The

17           charges were brought against him.

18               THE WITNESS:  I was arrested and had to

19           go to court.  So I'm not sure -- I don't know

20           the legal technicalities of that.  I was

21           arrested, held in a police station, held in a

22           jail, had my possessions confiscated, had to

23           go to court and had the charges dismissed only

24           after political pressure on the mayor's

25           office.  So I don't know what the legal

Page 173

1          technicalities of that are, but that's what

2          happened to me.

3          Q.     (By Ms. Wyatt-Bullman) How do you know

4     the charges were dismissed as a result of political

5     pressure on the mayor?

6          A.     Consequent -- after -- it happened

7     after calls to the mayor's office from my publisher

8     and -- that I know of.

9          Q.     But how do you know those phone calls

10    had any effect on whether or not your charges were

11    dismissed?

12         A.     I don't know.

13         Q.     Okay.  So that's an assumption on your

14    part; is that correct?

15         A.     Yes.  I never had a conversation with

16    the city attorney.

17         Q.     Okay.  Did you have any conversations

18    with the mayor?

19         A.     No.

20         Q.     So you're just -- the statement about

21    "political pressure" is an assumption?

22         A.     I do recall hearing from the editor of

23    the paper that they had been given a heads-up that

24    the charge would be dismissed.

25         Q.     And when did you get that heads-up?

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 174

```
 1           A.     I don't recall.
 2           Q.     Obviously prior to you going to court,
 3     correct?
 4           A.     Yes, or perhaps when I was in court.
 5           Q.     And which editor would that have been?
 6           A.     That was Debbie Michaud.
 7           Q.     And which paper is she with?
 8           A.     That's "Creative Loafing."  I don't
 9     recall her exact editorial title there, but she was
10     in essence the editor at that time.
11           Q.     Did any APD personnel that you named in
12     your complaint participate in the hearing regarding
13     your ticket?
14           A.     I don't recall.  It was a -- there were
15     several cases being handled essentially
16     simultaneously.  And I don't know who all was in the
17     room.
18           Q.     Okay.  Well, do you recall Chief
19     Spillane being present at the hearing on your ticket?
20           A.     I don't recall.  I don't know.
21           Q.     Do you have -- as you sit here today,
22     do you have any knowledge that Chief Spillane was
23     present at the hearing for your ticket?
24           A.     No.
25           Q.     As you sit here today, do you have any
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 175 of 233

April 12, 2018

Page 175

```
 1    knowledge that Officer Gruen was present for the

 2    hearing on your ticket?

 3         A.    No.

 4         Q.    As you sit here today, do you have any

 5    knowledge that Sergeant McKenzie was present for the

 6    hearing on your ticket?

 7         A.    No.

 8         Q.    As you sit here today, do you have any

 9    knowledge that Deputy Chief Bryant was present for

10    the hearing on your ticket?

11         A.    No.

12         Q.    As you sit here today, do you have any

13    knowledge that Officer Brown was present on the

14    hearing for your ticket?

15         A.    No.

16         Q.    As you sit here today, do you have any

17    knowledge that Major Whitmire was present for the

18    hearing on your ticket?

19         A.    No.

20         Q.    Do you know who Deputy Chief Rodney

21    Bryant is?

22         A.    Yes.

23         Q.    Who is it?

24         A.    Just that he's deputy chief.

25         Q.    Deputy chief of what?
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 176 of 233
April 12, 2018

Page 176

```
1              A.      The Atlanta Police Department.
2              Q.      What role did Deputy Chief Rodney
3      Bryant play in your arrest?
4              A.      I don't know --
5              Q.      As you sit here today, do you have any
6      information --
7              A.      -- directly.
8              Q.      Do you have any information -- let me
9      ask this a different way.
10                     What facts do you have that show that
11     Deputy Chief Rodney Bryant had any role in your
12     arrest?
13             A.      That I personally have?  None.
14             Q.      What role did Deputy Chief Rodney
15     Bryant have in your detention?
16             A.      None that I'm aware of.
17             Q.      What role did Deputy Chief Rodney
18     Bryant have in your prosecution?
19             A.      I don't know.
20             Q.      Do you have any knowledge that Deputy
21     Chief Rodney Bryant had any involvement in your
22     prosecution?
23             A.      I'm sorry -- can you rephrase the
24     question?
25             Q.      Do you have any --
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 177 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 177

```
 1            A.     Or repeat the question, rather.
 2            Q.     Do you have any knowledge regarding any
 3     role that Deputy Chief Rodney Bryant played in your
 4     prosecution?
 5            A.     No.
 6            Q.     Did you have any interaction with
 7     Deputy Chief Rodney Bryant on November 25th or 26th
 8     of 2014?
 9            A.     I don't recall.
10            Q.     Do you believe Deputy Chief Rodney
11     Bryant played any role in any of the facts or
12     circumstances surrounding the events that occurred to
13     you on November 25th, 2014?
14            A.     Yes, in terms of setting and directing
15     Atlanta police policy, that included not properly
16     training officers on First and Fourth Amendment
17     rights.
18            Q.     And what information do you have that
19     supports that statement?
20            A.     That is on advice from my attorneys.
21            Q.     Do you have any independent knowledge
22     that Deputy Chief Rodney Bryant was responsible for
23     training Atlanta police force?
24            A.     No.
25            Q.     Do you have any independent knowledge
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 178

1    that Deputy Chief Rodney Bryant had any response to

2    any officers or had any responsibility for any

3    officers that were present on November 25th, 2014, in

4    response to the Ferguson protest?

5         A.    No.

6         Q.    So any information that you have about

7    Deputy Chief Rodney Bryant came from your attorneys?

8         A.    No.  I have heard the name in news

9    stories and in command structures previously.  But in

10   terms of this specific case, yes.

11        Q.    Was Deputy Chief Rodney Bryant present

12   when you were booked?

13        A.    Can you clarify what you mean?

14        Q.    Sure.

15        A.    The police station and/or the jail?

16        Q.    Was Deputy Chief Rodney Bryant present

17   when you were at the Zone 5 precinct?

18        A.    I don't know.

19        Q.    If we walked Deputy Chief Rodney Bryant

20   into this room with a crowd of people, would you be

21   able to pick him out?

22        A.    I think so.

23              MR. WEBER:  Can we go off the record

24        for a second?

25

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 179

```
 1                  (Thereupon an off-the-record discussion
 2          was had.)
 3                  MR. WEBER:  The witness identified
 4          Debbie Michaud who was an editor of the paper.
 5          I had not heard her name until today so, you
 6          know, we will supplement our written discovery
 7          and include her name.  But I hadn't heard her
 8          name until now, so . . .
 9                  MS. WYATT-BULLMAN:  Okay.  Fair enough.
10          Q.      (By Ms. Wyatt-Bullman) Do you know who
11   Deputy Chief Joseph Spillane is?
12          A.      Very generally, yes.
13          Q.      What role did Deputy Chief Spillane
14   play in your arrest?
15          A.      The only knowledge I have is on the
16   advice of my attorneys as reflected in the complaint.
17          Q.      Okay.  Do you have any -- do you have
18   any personal knowledge of the role that Deputy Chief
19   Spillane played in your arrest?
20          A.      No.
21          Q.      Do you have any personal knowledge of
22   the role that Deputy Chief Spillane may have played
23   in your detention?
24          A.      No.
25          Q.      Do you have any personal knowledge of
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 180 of 233

April 12, 2018

Page 180

1    what role Deputy Chief Spillane may have played in

2    your prosecution?

3          A.    No.

4          Q.    Did you have any interaction with

5    Deputy Chief Spillane on November 25th or 26th of

6    2014?

7          A.    I don't know.  I don't recall.

8          Q.    Was Deputy Chief Spillane present at

9    your hearing for the citation that you received on

10   November 25th, 2014?

11         A.    I don't know.

12         Q.    Do you know who Officer Brown is?

13         A.    Yes.

14         Q.    Who is Officer Brown?

15         A.    He was the officer who assisted the

16   arresting officer in arresting me in this incident.

17         Q.    And what type of assistance did he

18   provide?

19         A.    He stood by her maintaining custody,

20   holding my arm and joined in the -- you know, just

21   sort of listening to our questions as to "what are

22   the charges" and not -- and not answering that.

23         Q.    Do you believe that Officer Brown was

24   your arresting officer?

25         A.    I don't -- I don't know what that means

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 181 of 233

April 12, 2018

Page 181

```
 1    technically, I guess.  He was the -- involved in my

 2    arrest, I would say, yes.  I don't know what -- the

 3    arresting officer that they were seeking that night

 4    was identified as McKenzie.

 5         Q.    What role did Officer Brown play in

 6    your detention?

 7         A.    I don't know.

 8         Q.    What role did Officer Brown play in

 9    your prosecution?

10         A.    I don't know.

11         Q.    Was Officer Brown present at your

12    hearing on November -- for the November 25th ticket?

13         A.    I don't know.

14         Q.    Was Officer Brown present when you went

15    through intake at the Atlanta Detention Center?

16         A.    I don't know.

17         Q.    Okay.  Do you know who Officer Gruen

18    is?

19         A.    Yes.

20         Q.    What role did Officer Gruen play in

21    your arrest?

22         A.    Can you specify what you mean by

23    "arrest" in this situation?

24         Q.    Well, in your complaint, you accused

25    Officer Gruen of unlawfully arresting you.  So how?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                              April 12, 2018

Page 182

1    How did he do that?

2         A.      So it was -- initially, having the

3    conversation with me, making it clear that he was

4    holding me while not knowing what my charges were and

5    suggesting that I had to tell him what to charge me

6    with, essentially.  And then later at the police

7    station, plainly telling me that the charge against

8    me was untrue, but he was going to continue with it

9    anyway.

10        Q.      Based on your interaction with Officer

11   Gruen, do you believe that Officer Gruen made a

12   decision to arrest you?

13             MR. WEBER:  Object as to form.

14             THE WITNESS:  I'm sorry.  Can you

15        specify what you mean by "arrest me" in this

16        sense means?

17             MR. WEBER:  And my objection was just,

18        the way you phrased it, there's only a single

19        person who can be the causative factor, rather

20        than multiple persons being the moving force

21        for an action.

22        Q.      (By Ms. Wyatt-Bullman) You've named

23   every single defendant -- you've charged all of them

24   for unlawful arrest.  So I want to know what each of

25   them did to unlawfully arrest you.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 183

```
1                    MR. WEBER:  I understand.
2          Q.    (By Ms. Wyatt-Bullman) So what did
3    Officer Gruen do to unlawfully arrest you?
4          A.    Again, my understanding being that the
5    arrest was that entire period that I was being held,
6    before charge, he held me while not knowing the
7    charge, and meanwhile telling me that there was not a
8    valid charge against me.
9          Q.    Based on your conversations with
10   Officer Gruen, do you believe that any of that was
11   his own personal decision?
12                   MR. WEBER:  Object as to form.
13                   THE WITNESS:  Yes.
14         Q.    (By Ms. Wyatt-Bullman) You believe that
15   Officer Gruen had the ability to just release you?
16         A.    I believe he had the ability to object
17   to his superiors and refused to carry out an unlawful
18   command.
19         Q.    What role did Officer Gruen play in
20   your detention?
21         A.    Can you define "detention" in this --
22         Q.    Well, again, you have accused Officer
23   Gruen of unlawfully detaining you, so what did he do
24   to support that allegation?
25                   MR. WEBER:  Objection as to form.
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                      April 12, 2018

Page 184

1          THE WITNESS:  Again, keeping me, with

2          knowledge that there was not a valid charge

3          against me within the police station where he

4          appeared, from his one-on-one interaction with

5          me and with some other arrestees, or he

6          appeared to have some sort of leadership

7          position.

8          Q.     (By Ms. Wyatt-Bullman) Okay.  What role

9     did Officer Gruen play in your prosecution?

10         A.     I don't know.

11         Q.     Was Officer Gruen present when you went

12    through intake at the Atlanta Detention Center?

13         A.     I don't think -- I don't know.

14         Q.     Okay.  Was Officer Gruen present at the

15    hearing for your citation that you received on

16    November 25th, 2014?

17         A.     I don't know.

18         Q.     What role did Major Whitmire play in

19    your arrest?

20         A.     Again, you know, I referred him the --

21    the complaint and the advice of my attorneys

22    afterwards, that he directed my arrest.

23         Q.     So it's your understanding that Major

24    Whitmire is the individual who ordered you to be

25    arrested?

John Ruch vs City of Atlanta, et al.
John Ruch
Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 185 of 233
April 12, 2018

Page 185

```
 1        A.    Yeah.  That's my understanding, on

 2   advice.

 3        Q.    Okay.  You have no independent

 4   recollection of that or independent knowledge of

 5   that?

 6              MR. WEBER:  Objection as to form.

 7              THE WITNESS:  Correct.

 8        Q.    (By Ms. Wyatt-Bullman) Well, let me

 9   clarify the question.  Do you have any independent

10   knowledge that Major Whitmire played any role in your

11   arrest?

12        A.    No.

13        Q.    Do you have any independent knowledge

14   that Major Whitmire played any role in your

15   detention?

16              MR. WEBER:  Object as to form.  I mean,

17         you're using a legal terminology of

18         "detention."

19              MS. WYATT-BULLMAN:  Well, that is what

20         was in the complaint.

21              MR. WEBER:  The complaint has facts and

22         law, sure.

23              MS. WYATT-BULLMAN:  I'm just trying to

24         flush out the complaint.

25              MR. WEBER:  I don't think you can do
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 186 of 233

April 12, 2018

Page 186

1          the question any better.  I'm just preserving

2          my objection.  Because it's an improper

3          question.

4                    But go ahead.

5                    THE WITNESS:  I'm sorry.  Could you

6          repeat?

7          Q.     (By Ms. Wyatt-Bullman) Do you have any

8   independent knowledge of any role that Major Whitmire

9   played in the events that lead up to your complaint?

10         A.     No.

11         Q.     Was Major Whitmire present at the

12  hearing for the citation you received on

13  November 25th, 2014?

14         A.     I don't know.

15         Q.     Please list all facts that support your

16  claim for unlawful detention.

17                    MR. WEBER:  Object as to form.

18                    THE WITNESS:  I was arrested for

19          attempting a First Amendment activity,

20          unconstitutionally and illegally.  And thus

21          everything the police did for me -- to me

22          thereafter, was unlawful.

23         Q.     (By Ms. Wyatt-Bullman) Okay.  And who

24  did those things?

25         A.     Every officer involved.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 187

1      Q.      And who are those officers?

2      A.      I refer to the -- to those named in my

3  complaint, and there were many others who were not

4  identifiable.

5      Q.      So to support your allegation for

6  unlawful detention, you're just referring to your

7  complaint?

8      A.      I gave my answer and I refer to the

9  complaint for the list of names that you requested.

10     Q.      Did you prepare your complaint?

11     A.      My attorneys prepared the legalistic

12  language of the complaint.

13     Q.      And you said that you had a

14  Constitutional violation.  How do you know you had a

15  Constitutional violation?

16     A.      Because I was on a sidewalk in Atlanta,

17  Georgia, U.S. of A., and there's a First Amendment

18  right to take a photograph without an arrest.

19     Q.      And you believe that that is the reason

20  that you were arrested?

21     A.      It's the -- yes.  It's the reason that

22  officer grabbed me.

23     Q.      And how do you know that was the reason

24  that the officer grabbed you?

25     A.      From her actions.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 188

```
1          Q.      What actions?

2          A.      Blocking me from taking the photograph

3   and grabbing me while I was taking the photograph

4   without saying a word.

5          Q.      And that all occurred within seconds of

6   you reaching that area; is that correct?

7          A.      Yes.

8          Q.      Okay.  And have you had any legal

9   training regarding Constitutional rights?

10         A.      Yes.

11         Q.      When?

12         A.      It was part of my brief time in law

13  school.  And I've also had college courses addressing

14  media rights and media law.

15         Q.      And do you hold any degrees or licenses

16  in regard to the practice of law?

17         A.      No.  I do not.

18         Q.      Do you believe that being a reporter

19  allows you to break the law?

20         A.      No.

21         Q.      Can you please list for me all facts

22  that support your claim for unlawful arrest.

23         A.      A police officer physically blocked me

24  from taking a photograph on a public sidewalk while I

25  was acting as a journalist and as a citizen of the
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 189

```
 1    U.S. and subsequently arrested me.
 2         Q.     Can you please list for me all facts
 3    that support your claim for malicious prosecution.
 4              MR. WEBER:  Object as to form.
 5              THE WITNESS:  Again, that's a legal
 6         definition that I am not sure how to answer
 7         that.
 8         Q.     (By Ms. Wyatt-Bullman) As you sit here
 9    today, do you have any personal knowledge of any
10    information regarding what you allege to be malicious
11    prosecution?
12         A.     I do not have a legal understanding.  I
13    don't have an understanding of the legal definition
14    of that term.
15         Q.     Okay.  Was any of your property damaged
16    during your arrest?
17         A.     Not to my knowledge.  I guess reserving
18    the possibility of the deletion of photos, but --
19         Q.     Of one photo, correct?
20         A.     Or perhaps others.  I just don't know.
21    I just don't know.
22         Q.     As you sit here today, do you have any
23    knowledge of any photos, with 100 percent accuracy,
24    that the Atlanta Police Department deleted from your
25    phone?
```

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

Page 190

```
 1         A.    No.

 2         Q.    Were you injured during the protest?

 3         A.    Does that include the arrest?

 4         Q.    Well, I want the whole gamut.  On

 5    November 25th, 2014, were you injured in any way?

 6         A.    Yes.

 7         Q.    In what way were you injured?

 8         A.    After being arrested, I was held for a

 9    long period of time, tightly handcuffed, leaving my

10    wrists marked and my shoulder sore and popping for a

11    number of days thereafter.

12         Q.    Which shoulder was popping?

13         A.    I believe it was my left shoulder.  I

14    will refer to my written statement as my best

15    recollection of facts at that time and particular

16    time periods that that feeling continued.

17         Q.    And how long did that feeling continue?

18         A.    It stopped after a matter of -- within

19    a month, would be safe to say.

20               Again, I refer to my written statement

21    as my best recollection of the facts at that time.

22         Q.    So your left-shoulder injury resolved

23    within a month of your arrest?

24         A.    Yes.  Again, I refer to my written

25    comment --
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

1          Q.      I understand that.

2                  MR. WEBER:  You have to let him finish

3          his response.

4                  THE WITNESS:  I refer to my written

5          statement as my best recollection, to put

6          together location of injuries and their

7          duration.

8          Q.      (By Ms. Wyatt-Bullman) And I understand

9    that.  I'm still allowed to ask the question.

10                 And you said your hands were cuffed

11   tightly.  Did you ever tell an officer that your

12   hands were cuffed tightly?

13         A.      No.

14         Q.      So at no point during the entire time

15   that you were in handcuffs, did you alert any officer

16   that you were handcuffed tightly?

17         A.      No.  I was terrified to talk to any of

18   those officers.

19         Q.      Did you make any -- did you relay any

20   information to any officer that would provide an

21   officer with an indication that you might have been

22   injured?

23         A.      No.

24         Q.      As you sit here today, do you believe

25   that there is any way the Atlanta Police Department

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 192 of 233

John Ruch vs City of Atlanta, et al.
John Ruch                                                    April 12, 2018

Page 192

1    would have known that you believed you were injured

2    during your arrest?

3                    MR. WEBER:  Object as to form.

4                    THE WITNESS:  Yes.  They knew they were

5         holding me tightly handcuffed for an extended

6         period of time.  Hours.

7         Q.    (By Ms. Wyatt-Bullman) How did they

8    know that you were handcuffed tightly?

9         A.    Because they did it.  And it is common

10   sense that having someone's arms pinned behind their

11   back for hours is painful and potentially injurious

12   with extended -- it's quite foreseeable that that

13   does damage.

14        Q.    Do you have any training as an officer

15   of the law?

16        A.    No.

17        Q.    Have you ever handcuffed anyone before?

18        A.    No.

19        Q.    Have you ever received any tutorial on

20   how to handcuff any individual?

21        A.    No.

22        Q.    Would it be accurate to say that any

23   assumptions that you make about police knowledge

24   would be just assumptions?

25                    MR. WEBER:  Form.

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 193 of 233

April 12, 2018

Page 193

```
 1                    THE WITNESS:  Not about arms being
 2           pinned behind your back being painful, no.
 3           That doesn't require specialized police
 4           knowledge.  It's just common sense and
 5           courtesy.
 6           Q.     (By Ms. Wyatt-Bullman) And I understand
 7    your perception of the situation.  I understand that
 8    you have your own perception of the situation.  But
 9    I'm asking about police officer knowledge.  Do you
10    have any training that would provide you with the
11    knowledge and understanding of a police officer, as
12    to how to cuff an individual?
13           A.     No.
14           Q.     I'm going to pass you some photographs,
15    and we're going to mark them as Exhibit 9.
16                  (Exhibit 9 was marked for
17           identification.)
18                  MR. WEBER:  Alisha, what was eight?
19                  MS. WYATT-BULLMAN:  Eight was the
20           diagram.
21                  MR. WEBER:  Gotcha.
22           Q.     (By Ms. Wyatt-Bullman) Are you ready?
23           A.     Yeah.
24           Q.     Okay, great.  Do you recognize the
25    photographs that are in Defendant's Exhibit 9?
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 194

```
 1          A.    Yes.
 2          Q.    Did you take them?
 3          A.    Yes.
 4          Q.    When did you take them?
 5          A.    I don't recall the specific time.
 6   Shortly after my arrest.  I refer to my written
 7   statement, which may be more -- give a more specific
 8   recollection.
 9          Q.    Let's look at your written statement.
10   I believe it's Exhibit 2.
11                Can you show me where in Exhibit 2 it
12   states when you took the photographs that we have
13   identified as Defendant's Exhibit 9?
14          A.    As I refer to the last full paragraph
15   of the statement to "Wrists remaining red from the
16   cuffs for about 24 hours."  So these photographs
17   would have been taken in that period of early on the
18   day following the arrest.
19          Q.    So you believe that these photographs
20   were taken on November 26, 2014?
21          A.    I believe so, yes.
22          Q.    Could you do me a favor?  On the copy
23   that you have, you can take that pen there and circle
24   the marks that you state were caused by the cuffs.
25          A.    Oh.  On each photo or one?
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 195

```
1            Q.      Let's start with 552.

2            A.      This particular area here, and --

3    primarily that (indicating).

4            Q.      And if you could just put your initials

5    by the marks you made.

6            A.      (Witness complies.)

7            Q.      Perfect.  And on the next photo, can

8    you please circle the marks you're alleging the cuffs

9    made.

10           A.      (Witness complies.)

11           Q.      Now, I have some questions about this.

12           A.      This is where I was -- this is the main

13   area of binding, and this is slipping them down.

14           Q.      What I'm trying to understand is,

15   there's sort of a red square --

16           A.      Well, in this area here (indicating),

17   this is the plastic --

18           Q.      Wait.  So I'm trying to understand --

19   there seems to be a red square within the box -- the

20   large box that you drew on 552.  And then there

21   appears to be less red, you know -- and this just

22   might be the copy.  But it just appears that your

23   skin tone in general tends to have like a pinkish

24   tone in this photograph.

25                   So with more specificity, can you
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 196

```
 1   circle --

 2               MR. WEBER:  You want him to circle --

 3               MS. WYATT-BULLMAN:  Yes.  The actual

 4        red mark.

 5               THE WITNESS:  So it's more circling

 6        specifics.

 7        Q.     (By Ms. Wyatt-Bullman) All right.  And

 8   if you could do that on the next photo as well, that

 9   would be very helpful.

10        A.     (Witness complies.)

11        Q.     Wonderful.  Thank you so much.

12        A.     I think this is just an out-of-focus

13   version.

14        Q.     Don't hand them back to me.

15               Did you seek -- thank you for circling

16   the red marks on your arms in Exhibit 9.

17               Did you seek any professional medical

18   care for any injuries you received as a result of

19   your arrest by the Atlanta Police Department?

20        A.     No.

21        Q.     On the night of your arrest, did you

22   notify anyone within APD in any way that you were

23   injured?

24        A.     No.

25        Q.     Okay.  Have you sought any mental
```

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 197 of 233

April 12, 2018

Page 197

1   health treatment as a result of your arrest?

2          A.     No.

3          Q.     As a result of your arrest, did you

4   lose any income?

5          A.     No.

6          Q.     You indicated earlier that you had some

7   credentials in your wallet.  I believe you said it

8   was a laminated card.  What would you have used those

9   credentials for?

10         A.     They are rarely used at all, but it

11  would be typically for identifying yourself to gain

12  access to a private meeting or something along those

13  lines.

14         Q.     Okay.  And you also indicated -- we

15  talked a lot about whether or not you completed the

16  photo you were attempting to take at the time of your

17  arrest.  What do you mean by "complete the photo"?

18         A.     Simply whether I was able to hit the

19  shutter button or not.

20         Q.     So as you sit here today, you're

21  unable -- you cannot remember whether or not you

22  actually pressed the button to take the photo?

23         A.     Correct.  I attempted.  I don't know if

24  I achieved it.

25         Q.     Okay.  Do you know approximately how

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 198 of 233

April 12, 2018

Page 198

 1   many photos you took before you were arrested?

 2        A.    No.

 3        Q.    Did you record any videos prior to your

 4   arrest?

 5        A.    I don't believe so.  I refer to

 6   whatever we provided in discovery.  I provided all

 7   images in my possession.  But I do not believe that I

 8   was shooting video.

 9        Q.    How long were you in the area where you

10   were arrested prior to your arrest?

11        A.    I'm not -- I'm not sure, but -- a few

12   minutes.

13        Q.    More than five?

14        A.    Probably not.

15        Q.    Okay.  Less than three?

16        A.    I don't know.

17        Q.    Okay.  Less than five, though?

18              MR. WEBER:  You have to give an answer.

19              THE WITNESS:  Yeah.  I don't recall

20   specifically.  Not a long period of time.

21        Q.    (By Ms. Wyatt-Bullman) Okay.  Prior to

22   your arrest, did you know Officer Gruen?

23        A.    No.

24              MS. WYATT-BULLMAN:  If you'll give me a

25   minute, I'm going to boot up my computer, and

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 199 of 233

April 12, 2018

Page 199

1      I want to show you a video.  And we are going

2      to enter the video onto the record as

3      Exhibit 10.

4              (Exhibit 10 was marked for

5      identification.)

6              MS. WYATT-BULLMAN:  There is no audio

7      on the video, but I will e-mail the video to

8      the court reporter, as soon as I get back to

9      the office, and I will make sure I cc your

10     counsel on the e-mail, and then the court

11     reporter will attach it as an exhibit to the

12     record.

13             MR. WEBER:  This is, I'm assuming, what

14     we've all already seen?

15             MS. WYATT-BULLMAN:  Yes.  You've listed

16     him as a witness, so --

17             MR. WEBER:  I just don't know what

18     you're seeing.

19             MS. WYATT-BULLMAN:  We can go off the

20     record while this takes a minute.

21             (Thereupon an off-the-record discussion

22     was had.)

23     Q.    (By Ms. Wyatt-Bullman) Mr. Ruch, this

24     is the best device I have to show this on, at this

25     point.  And we can move it as we need to.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 200

```
 1                     What I'd like you to do is watch the
 2     video all the way through, and then we can play it as
 3     many times as we need to.  But I believe you are in
 4     the video, and to the extent you're able to identify
 5     yourself, that's ultimately the goal, all right?
 6                     Let me know when you're ready.
 7          A.     Yeah.
 8          Q.     Can you see the screen?  Do I need to
 9     tilt in any way?
10          A.     I can see it.
11          Q.     Perfect.  There is no audio.
12                 (Video played.)
13          Q.     (By Ms. Wyatt-Bullman) Were you able to
14     see yourself in the video?
15          A.     Yes.
16          Q.     Okay.
17                 MS. WYATT-BULLMAN:  Now, I believe I
18                 know -- I would like to put on the record that
19                 this is the video that we received from -- is
20                 it American Drone Industries? -- that
21                 plaintiffs list as a witness.
22          Q.     (By Ms. Wyatt-Bullman) And this might
23     work better if I get on your side.  I apologize for
24     my closeness.
25                     I'm going to start the video at -- I'm
```

Page 201

1    going to start the video at timestamp 3:33.  And let

2    me know when you see yourself.

3         A.    I see myself there.

4         Q.    Okay.  Where are you?  And I've stopped

5    the video at timestamp 3:41.

6         A.    This is me entering from here.

7         Q.    So you are in the lower right-hand

8    corner of the video next to a gentleman in an orange

9    or red shirt; is that correct?

10        A.    Correct.

11        Q.    All right.  And you entered -- when we

12   stopped at that previous timestamp, you were standing

13   in the street; is that correct?

14        A.    No.  I was walking.

15        Q.    In the street?

16        A.    Yes.

17        Q.    Okay.  I'm going to play it again.  Do

18   you see yourself in the video at timestamp 3:57?

19        A.    Yes.

20        Q.    Where are you at?

21        A.    (Indicating.)

22        Q.    So you've moved towards the upper

23   right-hand side of the frame?  And where are you

24   standing at timestamp 3:57?

25        A.    On the sidewalk.

Page 202

1       Q.      And just prior to timestamp 3:57, where

2   were you at?

3       A.      Stepping from the sidewalk into the

4   street back onto the sidewalk.

5       Q.      Okay.  And do you recognize anyone else

6   in this frame?

7       A.      Not to -- you know, I can't see that.

8       Q.      Why did you move from one location on

9   the sidewalk into the street and then to another

10  location on the sidewalk?

11      A.      To proceed farther ahead to where I

12  assumed the main protest was continuing.

13      Q.      So your intent was to bypass all of

14  these individuals and continue to walk on the

15  sidewalk?

16      A.      To document what they were doing and

17  then, yes, proceed to where I believed the protest

18  was occurring on the -- further up the sidewalk.

19      Q.      Do you see this gentleman just inside

20  the street in the upper right-hand portion of the

21  sidewalk?

22      A.      Yes.

23      Q.      Or the upper right-hand portion of the

24  screen?  Do you see what he has in his hand?

25      A.      It appears to be a bullhorn or

John Ruch vs City of Atlanta, et al.
John Ruch
Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 203 of 233
April 12, 2018

Page 203

1    megaphone.

2        Q.    And do you believe that that's the

3    individual who tapped you on the back, just prior to

4    your arrest?

5        A.    Yes.

6        Q.    All right.  I'm going to continue

7    playing.  Just a second.

8              I'm starting it from timestamp 3:55.

9    Do you see Officer McKenzie in that frame at

10   timestamp 3:59?

11       A.    So just looking at the still image, I'm

12   not even sure where I am.

13       Q.    I know it's hard.  You're behind the

14   tree.  Let's back it up again.

15            MR. WEBER:  We've had the same

16        struggle.  It's hard to see that one area.

17       Q.    (By Ms. Wyatt-Bullman) This is you

18   (indicating), correct?

19       A.    Yes.

20       Q.    Let's watch it one more time.

21       A.    Yes.  I believe that's Officer

22   McKenzie.

23       Q.    You're able to see Officer McKenzie in

24   front of you at timestamp 3:59; is that correct?

25       A.    I don't know.

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 204

1     Q.     You don't know?  Can you see --

2     A.     I don't know what I was able -- I'm

3  sorry.  You mean looking at the video?

4     Q.     Yes.

5     A.     Sorry.  I believe that to be her, yes.

6     Q.     So at timestamp 3:59, you believe

7  Officer McKenzie is standing in front of you?

8     A.     Yes.

9     Q.     Let me back it up.  At timestamp 3:55,

10  you're stepping off of the sidewalk; isn't that

11  correct?  Let's go back.

12     A.     Yes.

13     Q.     Okay.  So the time that you step off

14  the sidewalk to move around the crowd from the time

15  that Officer McKenzie is in front of you is four

16  seconds; is that correct?

17     A.     Yes.

18     Q.     And at timestamp 4:00, do you see Major

19  Whitmire tapping your back?

20     A.     He appears to be doing that, yes.

21     Q.     So from the time McKenzie enters in

22  front of you; from the time Whitmire taps your back,

23  it's approximately one second?

24     A.     Yes.

25     Q.     I'm going to move the video back to

John Ruch vs City of Atlanta, et al.
John Ruch

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 205 of 233

April 12, 2018

Page 205

```
 1    3:50.  If you could find yourself.

 2          A.     (Indicating.)

 3          Q.     Okay.  Do you see your phone in your

 4    hand at timestamp 3:59?  It's easier to look at in

 5    motion.

 6          A.     I can't see anything.

 7                 Yes.

 8          Q.     Do you see the distance that Officer

 9    McKenzie was from you at that time?  Let me back it

10    up one more time.

11                 Does it appear that she's further away

12    from you than eight-and-a-half inches?

13          A.     I -- I don't know.  I can't say.

14                 MR. WEBER:  At this point, I'd say we

15          have to let the video speak for itself because

16          there are some questions about how much you

17          can see on that video.

18                 MS. WYATT-BULLMAN:  No, I completely

19          understand.

20          Q.     (By Ms. Wyatt-Bullman) I do want to get

21    one more thing down.

22                 So starting at timestamp 3:55, are you

23    the individual who steps off the sidewalk into the

24    street and then moves back onto the sidewalk with a

25    hat on?
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 206

```
 1          A.     Yes.

 2          Q.     Perfect.  I think that's all I have for

 3   the video.  Let me look at my notes.

 4                 (Pause in proceedings.)

 5          Q.     (By Ms. Wyatt-Bullman) How far were you

 6   from the arrest that you were attempting to

 7   photograph just prior to Sergeant McKenzie

 8   apprehending you?

 9          A.     I don't know exactly.  I would say in

10   the six to 10-foot range.

11          Q.     And why were you walking back onto the

12   sidewalk at that location?

13          A.     To proceed up the street to catch up to

14   the main protest.  And, you know, to essentially

15   continue reporting.

16          Q.     Did Officer McKenzie leap in front of

17   you prior to your arrest?

18          A.     She, yes, moved towards me rapidly.

19          Q.     In the one second that you were still

20   on the sidewalk, you were able to, according to your

21   statement, maintain an angle for the photograph,

22   observe someone waving their hand in front of your

23   camera, refocus your camera, attempt to pivot in

24   order to regain the sight -- the sight of the image

25   you were attempting to photograph, and witness
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 207

1    Officer -- or Sergeant McKenzie leap in front of you.

2    Is that accurate?

3         A.    Yes.

4              MS. WYATT-BULLMAN:  I don't think I

5         have anything else.

6              Do you have anything?

7              MR. WEBER:  Two clarifications that

8         will take less than a minute.

9              MS. WYATT-BULLMAN:  Let me step out for

10        a second.

11             (Pause in proceedings.)

12             MS. WYATT-BULLMAN:  Mr. Ruch, I don't

13        have any further questions at this time.

14

15                      EXAMINATION

16   BY MR. WEBER:

17        Q.    And, John, I think I just have a

18   couple.

19             If you could look at Exhibit D7 --

20   there you go.  For any of the photographs that are in

21   Exhibit D7, did you observe any officers observing

22   you as you took those photographs?

23        A.    No.

24        Q.    And do any of those photographs involve

25   a police officer making an arrest?

John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

Page 208

```
 1          A.     No.

 2                 MR. WEBER:  No further questions.

 3                 MS. WYATT-BULLMAN:  I have one

 4          followup.

 5

 6                       FURTHER EXAMINATION

 7     BY MS. WYATT-BULLMAN:

 8          Q.     Did you observe Sergeant McKenzie

 9     observing you, prior to the alleged hand waving?

10          A.     No.

11                 MS. WYATT-BULLMAN:  That's all I have.

12                 THE REPORTER:  And I think you guys

13          like paper and electronic?

14                 MS. WYATT-BULLMAN:  I'll just take an

15          electronic this time.

16                 MR. WEBER:  Yes.  We only want

17          electronic as well.

18                 (Pursuant to Rule 30(e) of the Federal

19          Rules of Civil Procedure and/or O.C.G.A.

20          9-11-30(e), signature of the witness has been

21          reserved.)

22

23                 (Thereupon, the deposition was

24          concluded at 2:25 p.m.)

25
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 209 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 209

```
1                    C E R T I F I C A T E

2    STATE OF GEORGIA:

3    FULTON COUNTY:

4                I hereby certify that the

5         foregoing deposition was reported, as

6         stated in the caption, and the questions

7         and answers thereto were reduced to the

8         written page under my direction, that the

9         preceding pages represent a true and

10        correct transcript of the evidence given

11        by said witness.

12                I further certify that I am not of

13        kin or counsel to the parties in the

14        case, am not in the regular employ of

15        counsel for any of said parties, nor am I

16        in any way financially interested in the

17        result of said case.

18

          Dated this 20th day of April, 2018.

19

20        _____

          ANTHONY D. LORENZ, CCR-B-2022

21        RDR-CRR

22

23

24

25
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 210 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                              April 12, 2018

Page 210

```
 1              DISCLOSURE OF NO CONTRACT

 2
             I, Anthony D. Lorenz, do hereby
 3   disclose pursuant to Article 10.B of the Rules
     and Regulations of the Board of Court
 4   Reporting of the Judicial Council of Georgia
     that Elizabeth Gallo Court Reporting, LLC was
 5   contacted by the party taking the deposition
     to provide court reporting services for this
 6   deposition, and there is no contract which is
     prohibited by O.C.G.A. 15-41-37(a) and (b) or
 7   Article 7.C of the Rules and Regulations of
     the Board for the taking of this deposition.
 8

 9           There is no contract to provide court
     reporting services between Elizabeth Gallo
10   Court Reporting, LLC or any person with whom
     Elizabeth Gallo Court Reporting, LLC has a
11   principal and agency relationship nor any
     attorney at law in this action, party to this
12   action, party having a financial interest in
     this action, or agent for an attorney at law
13   in this action, party to this action, or party
     having a financial interest in this action.
14   Any and all financial arrangements beyond our
     usual and customary rates have been disclosed
15   and offered to all parties.

16
             Dated this 20th day of April, 2018.
17

18

19   _____
     Anthony D. Lorenz, CCR-B-2022
20   Elizabeth Gallo Court Reporting, LLC

21

22

23

24

25
```

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 211

```
 1    CASE:  John Ruch vs City of Atlanta, et al.

 2    NAME OF WITNESS:    John Ruch

 3              The preceding deposition was taken

 4    in the matter, on the date and at the time and

 5    place set out on the title page hereof.

 6

 7              It was requested that the deposition

 8    be taken by the reporter and that same be

 9    reduced to typewritten form.

10

11              It was agreed by and between counsel

12    and the parties that the deponent will read and

13    sign the transcript of said deposition.

14

15              Said jurat is to be returned within

16    30 days following receipt of the transcript to

17    the following address:

18

19              Elizabeth Gallo Court Reporting, LLC

20              2900 Chamblee Tucker Road

21              Building 13, First Floor

22              Atlanta, Georgia 30341

23

24

25
```

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 212 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                          April 12, 2018

Page 212

1   NAME OF CASE:        John Ruch vs City of Atlanta, et al.

    DATE OF DEPOSITION: 04/12/2018

2   NAME OF WITNESS:    John Ruch

3   EGCR Job No.:        46694

4                       CERTIFICATE

5        Before me this day personally

    appeared JOHN RUCH, who, being duly

6   sworn, states that the foregoing transcript of

    his/her deposition, taken in the matter, on

7   the date and at the time and place set out on

    the title page hereof, constitutes a true and

8   accurate transcript of said deposition.

9                       _____

10                      JOHN RUCH

11       SUBSCRIBED and SWORN to before me

12  this _____ day of _____ 20_____.

13  in the jurisdiction aforesaid.

14

    _____       _____

15  My Commission Expires       Notary Public

16      STATE OF _____

17      COUNTY/CITY OF _____

18

19      []   No changes made to the Errata Sheet;

20  therefore, I am returning only this signed,

21  notarized certificate.

22      []   I am returning this signed,

23  notarized certificate and Errata Sheet with

24  changes noted.

25

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

Page 213

```
 1                 Errata Sheet

 2   NAME OF CASE:      John Ruch vs City of Atlanta, et al.

 3   DATE OF DEPOSITION: 04/12/2018

 4   NAME OF WITNESS:    John Ruch

 5   Reason Codes:  1. To clarify the record

 6                  2. To correct transcription errors

 7                  3. Other

     _____

 8   _____

 9   Page _____ Line _____ Reason _____

10   From _____ to _____

11   Page _____ Line _____ Reason _____

12   From _____ to _____

13   Page _____ Line _____ Reason _____

14   From _____ to _____

15   Page _____ Line _____ Reason _____

16   From _____ to _____

17   Page _____ Line _____ Reason _____

18   From _____ to _____

19   Page _____ Line _____ Reason _____

20   From _____ to _____

21   Page _____ Line _____ Reason _____

22   From _____ to _____

23

24   SIGNATURE:_____ DATE:_____

25                John Ruch
```

Page 214

```
1                    Errata Sheet

2    NAME OF CASE:      John Ruch vs City of Atlanta, et al.

3    DATE OF DEPOSITION: 04/12/2018

4    NAME OF WITNESS:    John Ruch

5    Reason Codes:  1. To clarify the record

6                   2. To correct transcription errors

7                   3. Other


     _____

8    _____

9     Page _____ Line _____ Reason _____

10   From _____ to _____

11    Page _____ Line _____ Reason _____

12   From _____ to _____

13    Page _____ Line _____ Reason _____

14   From _____ to _____

15    Page _____ Line _____ Reason _____

16   From _____ to _____

17    Page _____ Line _____ Reason _____

18   From _____ to _____

19    Page _____ Line _____ Reason _____

20   From _____ to _____

21    Page _____ Line _____ Reason _____

22   From _____ to _____

23

24    SIGNATURE:_____DATE:_____

25            John Ruch
```

Case 1:15-cv-03296-MLB  Document 124-2  Filed 06/13/18  Page 215 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

**Exhibits**

**Exhibit 01** 3:11 12:15, 16,20,22,25

**Exhibit 02** 3:12 21:1,2, 8,10 22:13,17 194:10, 11

**Exhibit 03** 3:13 21:25 22:1,5,7,14

**Exhibit 04** 3:14 29:22, 23 30:1,3,6

**Exhibit 05** 3:15 48:9, 12,20 116:25 117:16 118:16 119:5

**Exhibit 06** 3:16 67:15, 16,25 68:3 105:23,25 114:5,14 128:6

**Exhibit 07** 3:17 110:4, 5,13,16,18 111:12,14 112:7 113:15,18

**Exhibit 08** 3:18 150:2,3

**Exhibit 09** 3:19 193:15, 16,25 194:13 196:16

**Exhibit Binder** 3:9

**1**

**10** 54:19 133:12 142:16 157:23,25 199:3,4

**10-foot** 206:10

**100** 108:14 189:23

**1015** 100:19

**1019** 100:20

**10:11** 78:13 79:14,17

**10:15** 93:16

**10:18** 80:9

**10:20** 81:4 82:9,18 83:6

**10:22** 83:1,5 84:22 85:4

**10:27** 86:14 89:3 90:20

**10:30** 89:23 90:13,21 91:6,13,19 114:6

**10:43** 92:4,9,13,16

**10:47** 92:25

**10:48** 95:4

**10:51** 97:10 98:1,12,22

**10:52** 99:11 100:12,16

**10:56** 101:8

**11** 43:9

**11:02** 103:4

**11:04** 104:14 105:6,17

**15** 128:25 129:1,5,10

**2**

**2** 118:16 119:5 194:10, 11

**20** 129:1,5,10

**2014** 41:3,22 42:2,12,25 43:24 44:6 47:2,6 50:2 57:25 64:9 67:14 68:4, 15 71:20 79:14 86:15 89:4 92:4 95:5 97:11 99:11 100:16 101:9 103:5 104:14 106:7 107:12 109:17 110:20 112:9,22 113:8 117:7 129:12 159:7 160:6 172:3 177:8,13 178:3 180:6,10 184:16 186:13 190:5 194:20

**24** 194:16

**25** 41:15 172:3

**25th** 41:3,22 42:2,12,24 43:24 44:6 47:2,6 50:2 57:25 64:9 67:14 68:4, 15 71:20 79:14 86:15 89:4 92:4 95:5 97:11 99:11 100:16 101:9 103:5 104:14 109:17 110:20 112:9,22 113:7 117:7 159:7 160:6 177:7,13 178:3 180:5, 10 181:12 184:16 186:13 190:5

**26** 107:12 129:12 194:20

**26th** 106:7 113:8 177:7 180:5

**2:25** 208:24

**3**

**30** 73:13 133:10 155:9 162:22 163:1

**30(e)** 208:18

**3:33** 201:1

**3:41** 201:5

**3:50** 205:1

**3:55** 203:8 204:9 205:22

**3:57** 201:18,24 202:1

**3:59** 203:10,24 204:6 205:4

**4**

**4:00** 204:18

**5**

**5** 48:9,12,20 116:25 117:16 118:16 119:2,5 125:11 144:15 178:17

**50** 54:13 128:15

**506** 68:21 70:24 71:3,8

**507** 75:8

**508** 78:13 79:1

**509** 80:6

**510** 80:25

**511** 82:21,23

**512** 85:13,15 90:19,20 91:1

**513** 89:17,18 90:19,20 91:14 96:4,8 114:6

**514** 91:24 92:1 96:11,12

**515** 92:19,20

**516** 94:14,16 96:24

**517** 97:3 100:5

**518** 99:7,8 100:4

**519** 100:22,24 101:2

**520** 102:21,23

**521** 104:7 114:14

**522** 128:7

**523** 113:16

**551** 113:16

**552** 195:1,20

**5:16** 106:7 107:11 129:12

**6**

**6** 67:15,16,25 68:3 105:23,25 114:5,14 128:6

**7**

**7** 43:4,5,6,12 110:4,5, 13,16,18 111:12,14 112:7 113:15,18

**75-85** 115:20 116:3,21

**8**

**8** 150:2,3

**8:30** 71:18

**8:40** 71:15,18

**8:48** 73:17 74:17 75:18, 25 105:6,16

**9**

**9** 43:7 193:15,16,25 194:13 196:16

**9-11-30(e)** 208:20

**9:59** 75:9,18,25 76:3 77:4,15,19 78:1

**A**

**ability** 138:2 143:7 150:16 183:15,16

**absolutely** 85:11 88:23

Elizabeth Gallo COURT REPORTING, LLC

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 216 of 233
John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

95:16 112:1

**abstract** 141:12

**accepted** 57:7

**access** 197:12

**accommodate** 122:12

**accuracy** 78:21 108:14 143:14 150:10 189:23

**accurate** 71:14 137:23 142:23 158:18 192:22 207:2

**accused** 181:24 183:22

**achieved** 197:24

**acquire** 61:25

**acting** 188:25

**action** 44:17,19 135:15 182:21

**actions** 48:17 95:10 97:15 98:19 128:2 187:25 188:1

**activities** 62:16,17,22, 23 63:1 84:15

**activity** 50:3,11,12 52:5,7,9 59:6 73:25 84:2 87:15 88:7,9,13 125:25 126:9 186:19

**acts** 119:15

**actual** 103:15 120:17 167:24 196:3

**ad** 83:24

**add** 143:9

**adding** 149:20

**addition** 126:15

**addressing** 188:13

**adjacent** 119:1

**advertising** 84:6

**advice** 177:20 179:16 184:21 185:2

**advised** 48:23,25

**affiliation** 104:23

**aftermath** 123:1

**agencies** 45:15 62:13

**aggressive** 158:10

**agree** 61:18 70:17 135:2,6

**agreement** 128:22

**ahead** 53:5 124:17,25 126:6 128:11,12,13 129:10 133:17 136:19 139:2 149:13 186:4 202:11

**alert** 191:15

**alerted** 152:21

**Alisha** 193:18

**allegation** 183:24 187:5

**allegations** 109:9

**allege** 189:10

**alleged** 162:2 208:9

**alleging** 195:8

**allowed** 61:1 85:25 191:9

**allowing** 98:10

**alongside** 53:9 60:25 118:4 125:12

**Amendment** 87:25 98:11,23 177:16 186:19 187:17

**American** 102:1,3 123:6,7 200:20

**Americas** 118:22,23

**amount** 115:5

**and/or** 178:15 208:19

**angle** 100:5 206:21

**announce** 87:5

**answering** 180:22

**anticipate** 65:4 112:8

**anyone's** 98:23

**APD** 45:11 63:21 112:25 113:7,12,17,23 114:1 160:2,6 174:11 196:22

**apologize** 85:5 100:24 200:23

**app** 133:3

**apparent** 45:6 48:2,3

**appeared** 65:2 123:16 124:18 126:1 127:14 163:23 164:3 184:4,6

**appearing** 129:15

**appears** 80:12 83:20 93:18 195:21,22 202:25 204:20

**Apple** 64:8

**apprehending** 206:8

**approached** 55:2 161:7 166:4

**approaching** 71:25 157:9

**approximately** 53:23 56:22 57:24 129:5,10 132:12,21 147:6 151:12 157:25 197:25 204:23

**area** 43:17 44:20 48:21 49:10,15 50:17 51:19 52:4 54:8 57:10 61:6 62:7 64:20,25 81:21 82:1 84:24 85:1 117:14 131:3,11 132:9 133:4 135:24 147:6 148:6 155:12 188:6 195:2,13, 16 198:9 203:16

**areas** 50:19

**arm** 129:24 130:22,24, 25 131:1,13,23 135:10 150:25 151:6 162:14 180:20

**arms** 130:8 137:13 192:10 193:1 196:16

**arrest** 47:3,7 48:23,25 86:12 107:22 108:3,10, 19 112:6,15 113:3,6 117:8,11 118:9,20 119:12,16 120:23 123:1,4,8 127:4,7 129:15,19 132:1,2 133:5 135:17 140:11 143:25 147:5,8 148:16, 17 149:8 152:5 156:8

159:8,10 160:15,16 162:4,17 164:14 172:3 176:3,12 179:14,19 181:2,21,23 182:12,15, 24,25 183:3,5 184:19, 22 185:11 187:18 188:22 189:16 190:3,23 192:2 194:6,18 196:19, 21 197:1,3,17 198:4,10, 22 203:4 206:6,17 207:25

**arrested** 70:24 71:3 107:13,16 111:2,22 114:19 115:8 117:13,18 118:3 119:8 122:16,20, 21,24 123:10 131:23 152:22 156:23 157:2 158:5 163:22 172:18,21 184:25 186:18 187:20 189:1 190:8 198:1,10

**arrestee** 164:11

**arrestees** 157:4,10,20 161:3 165:7,11 166:24 184:5

**arresting** 129:14 133:25 161:17,20 180:16,24 181:3,25

**arrive** 42:23 118:8

**arrived** 43:11 51:19 71:5,11

**artist** 143:7

**assigned** 57:7 58:25 60:4,11,21

**assignments** 42:8

**assist** 136:10 161:14

**assistance** 161:10 180:17

**assisted** 49:9 180:15

**assists** 49:2

**assume** 74:8 104:21

**assumed** 70:6 134:16 202:12

**assuming** 107:8 144:23 199:13

**assumption** 74:7,10 164:9,19 173:13,21



Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 217 of 233

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

**assumptions** 192:23, 24

**astonishing** 166:21

**Atlanta** 42:4,13,24 43:22 44:6,14,21,22,25 45:3 46:1 47:22 50:22 54:6 62:10 68:5,14 71:23 72:4,9,14,20 73:24 74:18 80:17 94:7 108:23 109:14,15 110:21 115:20 116:2,20 121:4,15,23 122:10 126:20 131:22 159:16 168:10,14,16 169:6 171:20 176:1 177:15,23 181:15 184:12 187:16 189:24 191:25 196:19

**attach** 199:11

**attached** 141:23

**attempt** 42:17 48:2 135:8 153:11 154:12 206:23

**attempted** 51:25 107:21 108:9 129:18 130:2 166:22 197:23

**attempting** 42:3 61:17 96:19 111:2 112:14 113:3 132:8 133:4 134:13 142:18 147:4,7 149:7 161:9 163:15,17 186:19 197:16 206:6,25

**attendance** 42:2 51:22

**attended** 41:23 164:5

**attention** 74:1 149:11

**attorney** 146:12 172:11 173:16

**attorneys** 151:22 177:20 178:7 179:16 184:21 187:11

**attracted** 50:17

**audio** 199:6 200:11

**Avenue** 69:20

**aware** 47:19 108:17,19, 22 109:5,8,13 113:6,11, 12,13 159:5 176:16

---

**B**

**back** 41:19 61:6 73:21 85:3 89:1 93:15 116:24 127:21 131:19 147:24 149:3 151:7,25 152:3, 18 154:6,9 156:9 160:22,24 161:2 166:1 167:19 169:8 192:11 193:2 196:14 199:8 202:4 203:3,14 204:9, 11,19,22,25 205:9,24 206:11

**background** 168:22

**badge** 64:16 153:4,9, 21,24

**badges** 153:23

**bag** 169:10

**bags** 165:20

**bailed** 168:6

**bank** 120:13

**Barry** 123:3

**based** 69:18,24 87:20 98:20 105:9 114:4 150:12 182:10 183:9

**Bates-labeled** 80:5 89:16

**began** 44:8 57:2 62:5 63:4 64:2,3 65:5,18 95:23 96:13 144:22 165:14,17

**begin** 44:10 90:16

**beginning** 65:25

**begins** 144:23

**begun** 96:7

**behavior** 134:12

**belief** 112:18 134:8,11

**believed** 55:9 124:24 192:1 202:17

**believing** 128:11

**belongings** 170:20

**benefit** 136:5

---

**bicycle** 165:12

**bill** 141:13

**binding** 195:13

**bit** 124:2 142:10 158:9

**black** 106:24 107:4 110:8

**Blau** 47:11 56:3,5,10, 23,25 57:9,17 58:1,16, 21 65:16,17 77:16,19 122:15

**Blau's** 55:10

**block** 134:13 140:16

**blocked** 126:15 188:23

**blocking** 84:4,10 122:4 129:22 141:6 188:2

**blocks** 52:4 115:10

**blog** 59:15 60:7

**Blustien** 122:19

**body** 141:24 142:1,7 147:22

**bond** 167:7

**booked** 178:12

**boot** 198:25

**boss** 42:8

**Boulevard** 117:7

**box** 195:19,20

**break** 41:11,21 88:19, 20,23 120:13 131:15,21 188:19

**breaking** 42:3,17,18 119:11 120:1

**briefly** 61:21 127:21

**bringing** 129:15

**broken** 123:16

**brought** 152:18 165:18 172:15,17

**Brown** 175:13 180:12, 14,23 181:5,8,11,14

**Bryant** 175:9,21 176:3, 11,15,18,21 177:3,7,11, 22 178:1,7,11,16,19

---

**building** 118:23 119:19 144:11,22,23 145:2 146:17 149:9

**buildings** 66:4 118:24, 25 144:16

**Bull** 83:24

**bullhorn** 126:24 132:5 202:25

**bullshit** 166:18

**bundle** 67:12

**bus** 69:23 70:1,7,10,11, 14,15,17,20 73:4,8 163:23,24,25 164:2,10, 12,20,23 165:4 167:19

**buses** 69:18 164:7

**business-type** 64:18

**button** 197:19,22

**bypass** 202:13

---

**C**

**cabs** 119:22,24

**call** 115:20 120:22 147:13

**called** 167:7

**calls** 159:23 173:7,9

**camera** 93:18 94:5 129:24 133:3 136:2 137:19 138:3,7,18,20 139:8,20 140:6 141:5 142:2,8 160:9 162:3 206:23

**cameras** 93:20

**capable** 159:19

**caption** 83:22 85:24 90:2,4 93:5,6 96:5 101:11,12,14 107:15

**caption's** 107:18

**capture** 136:4 150:11

**captured** 93:14

**capturing** 93:15 103:7

**car** 41:13 44:9 46:3 50:22 77:2,3,4 83:24

---

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 218 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

155:14,19 156:18
162:19

**card** 64:16,18 197:8

**care** 196:18

**carried** 159:6 160:6

**carry** 183:17

**carrying** 153:4

**cars** 62:20 84:10

**case** 178:10

**cases** 174:15

**catch** 125:20,23 206:13

**caught** 126:1,6,21
128:2

**causative** 182:19

**caused** 194:24

**cell** 64:6,7 87:18,19,20
131:23 132:22 133:3
160:5 168:10 169:19

**Centennial** 115:16
117:2,4 118:10

**Center** 66:7,10 168:10,
14,17 169:7 181:15
184:12

**central** 49:10

**certainty** 71:22 171:23

**chairs** 165:11 166:1

**change** 149:12 168:12

**changed** 126:1,9

**chanting** 90:7 127:16

**charge** 42:17 153:3
161:25 166:13,14,16,18
172:13 173:24 182:5,7
183:6,7,8 184:2

**charged** 113:20 157:2
161:18,24 166:20 167:5
182:23

**charges** 152:24
172:14,17,23 173:4,10
180:22 182:4

**charging** 161:24

**chatting** 157:10

**check** 68:6

**checking** 41:7

**checks** 168:22

**chief** 174:18,22 175:9,
20,24,25 176:2,11,14,
17,21 177:3,7,10,22
178:1,7,11,16,19
179:11,13,18,22 180:1,
5,8

**chronologically** 65:13

**chronology** 65:22

**circle** 194:23 195:8
196:1,2

**circling** 196:5,15

**circumstances**
177:12

**citation** 172:2 180:9
184:15 186:12

**citizen** 88:2 188:25

**city** 44:20 72:6 121:25
122:13 167:25 168:2
169:12 172:11 173:16

**Civil** 208:19

**civilian** 127:22,24

**civilians** 86:2

**claim** 88:8 186:16
188:22 189:3

**clarifications** 207:7

**clarifies** 137:7

**clarify** 45:14 47:17 51:4
55:17 63:12 65:10
72:16 74:4 76:6 95:14
108:21 112:2 134:3
178:13 185:9

**clear** 82:1 132:9 137:3
163:20 182:3

**clock** 58:19 78:18

**close** 77:8 110:1 117:3
139:15,21,22,23,25
140:15 149:8

**closeness** 200:24

**closer** 147:5

**clothes** 168:13

**CNN** 66:6,8,10

**coincidence** 55:7

**collecting** 113:21

**college** 188:13

**color** 106:23 107:3

**command** 178:9
183:18

**commanding** 151:20

**comment** 190:25

**comments** 166:22

**commit** 158:12

**committed** 158:7

**committing** 119:15

**common** 121:3 192:9
193:4

**commotion** 124:16
125:15,18 127:2,5,8

**communicating** 93:8

**company** 101:23,25
104:3

**complaint** 109:10
174:12 179:16 181:24
184:21 185:20,21,24
186:9 187:3,7,9,10,12

**complete** 108:6
111:21,24 161:15
163:16,17 197:17

**completed** 108:11
109:19 111:1 112:6
113:5 161:18 171:16
197:15

**completely** 81:15
205:18

**complied** 152:8

**complies** 143:21
144:20 149:15 195:6,10
196:10

**computer** 198:25

**computers** 165:12

**concerns** 133:22

**concluded** 208:24

**conclusion** 87:14

**conduct** 166:13

**confiscated** 172:22

**confused** 145:25

**connected** 151:18

**connector** 115:20
116:3,20

**Consequent** 173:6

**consistent** 134:12

**Constitutional** 187:14,
15 188:9

**construed** 159:2

**consult** 110:24

**contained** 90:6 93:7

**content** 59:19,24 62:3
83:23

**continue** 87:10 88:4
125:21 182:8 190:17
202:14 203:6 206:15

**continued** 115:8
153:10 190:16

**continuing** 42:9 89:2
126:3 202:12

**continuous** 47:19

**contradiction** 81:17

**control** 170:5

**controversy** 42:6

**conversation** 55:3,19,
23,25 158:14 163:4,5
166:6,8 167:10 173:15
182:3

**conversations** 173:17
183:9

**cop** 76:25 77:1,2,3,4
83:24 156:18

**copies** 149:20

**cops** 76:10 85:24 87:22
107:16

**copy** 149:18 194:22
195:22



Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 219 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                                              April 12, 2018

**corner** 124:1,9 201:8

**correct** 41:5,24 42:11, 21 44:14,17 46:12 49:13,18 50:7,9 56:13 58:17 59:20,21 60:16, 24,25 61:6,7 62:1 69:3 74:14 75:1 76:16 77:16 78:2,9,14 79:18 87:18 89:8 98:13,24 104:22 105:7,17 108:3 114:7 123:22 124:10 125:3 127:9 130:12,15,22 131:24 132:13 135:10, 21 138:10,17 141:24,25 147:9,25 154:20,21 155:7 156:1 159:17,18, 20,21 160:2,3 164:15 170:25 172:15 173:14 174:3 185:7 188:6 189:19 197:23 201:9, 10,13 203:18,24 204:11,16

**correctly** 109:3

**counsel** 199:10

**count** 54:10,18,21 57:13

**couple** 140:10 148:18 207:18

**couple-of-minute** 41:11

**courses** 188:13

**court** 154:5 172:1,10, 15,19,23 174:2,4 199:8, 10

**courtesy** 193:5

**cover** 42:10 46:1 55:16, 20 57:6,8 59:1,8,10,11 60:21 64:21 69:7 71:20 94:22 95:18

**coverage** 57:3,4 66:9 71:24 90:16

**covering** 45:10 55:10 65:1 97:15 103:20,25 104:1

**cowboy-style** 106:22

**coworkers** 104:4

**cracked** 159:15,16

**Creative** 42:7 43:22 55:9 59:15,23,25 60:7 174:8

**credentials** 64:10,12, 15 153:12,18,22 154:1, 13,19,23 155:1 197:7,9

**cries** 125:16

**crime** 158:8,12

**cross** 117:3 118:13

**cross-fit** 102:13

**crowd** 98:5 123:11,12, 15,22 125:24 126:11, 21,24 127:10 147:1,2 148:17 149:9 178:20 204:14

**cuff** 193:12

**cuffed** 191:10,12

**cuffs** 156:1,5,11 194:16,24 195:8

**cultural** 121:3

**curb** 145:18

**custody** 122:22 123:2 153:10 162:6,8 180:19

**cut** 166:19

---

**D**

**D7** 207:19,21

**damage** 159:3,5 160:5 170:16,18 192:13

**damaged** 158:21 189:15

**dark** 46:22

**date** 78:21 93:3 95:4 99:14 149:14 172:6

**day** 194:18

**daylight** 43:2

**days** 190:11

**deal** 45:7 48:3

**dealing** 148:16

**Debbie** 174:6 179:4

**decided** 166:13

**decision** 182:12 183:11

**defendant** 182:23

**Defendant's** 48:9,20 67:15,25 68:2 105:23, 24 110:3,12,16,18 111:12,14 112:7 113:15 114:4,13 116:25 117:16 118:16 119:5 128:6 193:25 194:13

**defendants** 112:13

**defendants'** 111:6

**defer** 167:23 172:7

**define** 85:1 183:21

**defined** 59:3,5

**definition** 189:6,13

**definitive** 91:4

**degrees** 188:15

**deleted** 107:24 108:15, 18,20,23 109:15 112:25 113:7,12 159:2 170:24 171:20,23 189:24

**deletion** 189:18

**demanded** 152:23

**demonstrate** 136:5 137:5,9 138:2

**demonstrated** 138:19, 21

**demonstration** 136:15,18 137:14,23 140:18

**department** 62:10 94:8 108:23 109:14,15 117:17 126:20 159:16 171:20 176:1 189:24 191:25 196:19

**depending** 47:17 132:24

**depends** 83:14,15

**depicted** 98:21 119:2

**depicting** 99:16 104:16,18

**depicts** 101:13

**deposition** 137:14 150:2 208:23

**deputy** 175:9,20,24,25 176:2,11,14,17,20 177:3,7,10,22 178:1,7, 11,16,19 179:11,13,18, 22 180:1,5,8

**describe** 136:9

**describing** 70:9 101:16 131:21 136:14 138:24,25

**description** 142:23

**design** 69:24 70:9

**designated** 146:22

**desks** 165:13

**detail** 99:23

**details** 166:7

**detaining** 183:23

**detect** 149:11

**detention** 168:10,14, 17 169:7 176:15 179:23 181:6,15 183:20,21 184:12 185:15,18 186:16 187:6

**determine** 48:4,16 127:2,5

**determined** 59:17

**device** 64:4 109:16,17 112:16,21 113:1,7 134:14 157:15 199:24

**devices** 53:1 63:6,10, 13 70:13 165:11

**diagram** 147:18 150:10,11,17 193:20

**differ** 70:10

**difficult** 81:13 86:20

**direct** 98:15

**directed** 184:22

**directing** 62:19 121:5, 16 122:11 177:14

**direction** 49:21 65:3,6

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 220 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

directions 65:20 122:6

directly 86:18,21 88:7, 10,12 138:19 142:11 176:7

discover 44:25

discovery 68:8 110:25 111:6 112:12 179:6 198:6

discuss 55:5 57:3

discussed 55:6,8,9,12

discussing 41:22

discussion 57:5 149:24 179:1 199:21

dismissal 172:12

dismissed 172:23 173:4,11,24

disorderly 166:13

dispersing 124:21

distance 43:18 115:9 124:17 128:14 140:2,3, 13,19 141:20 157:9,18, 19 205:8

distinct 43:16 83:14

document 71:2 88:1 89:18 97:2 113:14 156:17 161:8 202:16

documentation 69:14

documented 83:15

documenting 59:13 87:16

documents 67:25 68:10

dollar 141:13

Donald 169:13,20 170:21

door 118:6 125:13

dot 148:8

doubt 78:20

downtown 42:24 44:22,24 45:2 46:1,16 47:21 48:20 54:6 71:23 72:3,8,14,20 73:23 74:18 110:21

draw 143:5,8,10 145:12,24

drawing 143:19 149:14 150:2,6

drew 195:20

drive 73:23

driven 42:13 164:24

driving 62:20

drone 47:12 101:12,13, 19 102:1,4,9 104:3 123:6,7 200:20

drove 44:20,22,24 45:2 74:18

due 150:10

duration 191:7

duties 58:24 59:18 60:3 95:23 96:6,12 97:14

duty 59:8

## E

e-mail 199:7,10

earlier 48:1 95:17 171:13 197:6

early 66:5 194:17

easier 205:4

edge 157:21

Edgewood 69:18,20 72:25 73:1

editor 42:7 43:21 173:22 174:5,10 179:4

editorial 174:9

effect 138:7 151:3 152:24 158:4,10 166:17 167:1 173:10

effort 86:24 88:6 161:19

eight-and-a-half 141:18 205:12

elbow 131:4,8

electronic 208:13,15, 17

employ 57:6

employed 42:10 65:17

encompass 63:2

encompasses 68:3 118:24

encounter 42:7 134:19

encountered 43:19 125:4

encountering 55:7

end 41:10 59:1,9 60:14, 15,21,23 95:18 103:21 104:1 121:15

ended 56:1

ending 55:9

engaging 59:7

entail 57:5

enter 115:19 116:22 168:9 199:2

entered 116:19 201:11

entering 116:2 133:3 201:6

enters 204:21

entire 94:10 98:18 126:6 183:5 191:14

entrance 156:23

equipment 87:17

essence 167:9 174:10

essentially 60:13 147:20 174:15 182:6 206:14

establish 137:10

evening 111:8 136:12 154:20,24 164:14

event 59:11 125:22 126:7 147:7 157:8

events 120:5 156:14,16 160:25 161:5 170:5 177:12 186:9

Eventually 45:7

exact 54:18 78:19 166:11 172:6 174:9

## EXAMINATION
207:15 208:6

exchanged 156:1,11

excluding 112:4

exercise 98:10

exhibit 48:9,12,20 67:15,16,25 68:3 78:25 105:23,25 110:4,5,13, 16,18 111:12,14 112:7 113:15,18 114:5,14 116:25 117:16 118:16 119:5 128:6 150:2,3 193:15,16,25 194:10, 11,13 196:16 199:3,4, 11 207:19,21

exit 45:25 46:14 75:23

exited 49:12 50:5 51:9 58:4,7,10,13,21 71:7,19 74:9,15,25 75:3,10,13 78:9 79:7

exiting 50:22 57:25 73:2

expand 170:15

expanding 171:7

expect 143:6

expectation 64:23

expecting 145:12

experience 98:16 164:6

explain 111:16 153:6 158:25

explained 153:7

expressing 166:12

extended 130:3,5,8 168:20 192:5,12

extent 134:15 200:4

eyes 73:24

## F

face 156:7

facility 169:12,21 170:21



Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 221 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

**facing** 127:13 131:14
138:8 148:2,4

**fact** 87:20 111:24
152:21 153:24

**factor** 182:19

**facts** 176:10 177:11
185:21 186:15 188:21
189:2 190:15,21

**fair** 129:2,7 143:17
179:9

**false** 74:10 141:21

**familiar** 56:7 67:24
110:11 141:6

**fancy** 117:1

**Fargo** 119:18

**farther** 126:5 202:11

**fashion** 138:17 142:22

**fate** 113:2

**favor** 194:22

**Federal** 208:18

**feed** 60:5 80:7 83:1

**feeling** 190:16,17

**feels** 141:9

**feet** 128:15,25 129:5,10
139:16 140:4,11 152:18
157:23,25

**fell** 124:2

**felt** 105:1,3 126:4
151:14

**female** 104:21

**Ferguson** 42:5 68:4,14
110:20 178:4

**field** 69:2

**fights** 119:11

**figure** 72:23 156:25

**figures** 145:12

**fill** 161:9

**filmed** 102:4

**filming** 52:22 133:24

**find** 42:3,17 51:24

56:23 58:1 124:14,19
205:1

**finding** 42:18

**fine** 41:12,16 117:23
134:2 136:22 141:3
145:13 149:17 150:13,
23 154:7

**fingers** 137:22

**finish** 191:2

**Fleming** 123:3

**flex** 156:4,11

**flush** 185:24

**flying** 62:21

**follow** 60:13 62:5 63:4
64:2 69:12 95:21 116:1,
16

**followup** 208:4

**foot** 54:6 56:13 82:8
130:7 132:12 139:13,25
140:21

**footwear** 104:18

**force** 47:4 151:7 177:23
182:20

**forearm** 131:3,11

**foreseeable** 192:12

**form** 48:6 50:8 51:16
52:23 53:4 60:17 63:11,
18,23 64:15,17,18
66:13 75:19 81:22
84:12,14 87:1 88:14
98:14 102:5 106:14
108:25 109:2 110:22
111:9,15,23 120:6
132:23 133:16 134:22
135:3,14,25 158:24
162:7 171:1 172:16
182:13 183:12,25
185:6,16 186:17 189:4
192:3,25

**formal** 61:20

**forming** 44:21,23 45:3
59:7

**forms** 168:21

**found** 53:7 56:25 57:9
65:16

**Fourth** 177:16

**frame** 201:23 202:6
203:9

**freelance** 42:8 69:15

**freely** 161:22

**frequently** 162:11

**freshest** 156:15 166:10

**frightening** 166:21

**front** 105:9 117:18
118:3,6 125:11,13
129:21,23 134:14
135:16 136:2 137:18
138:3,18,19,20 139:8
142:2,8,11,13 147:16,
20,22 160:9 162:3
164:25 203:24 204:7,
15,22 206:16,22 207:1

**full** 194:14

**full-scale** 54:15

**full-sized** 102:12

**fully** 130:8 159:12

**fun** 117:22

**future** 59:17 69:16

---

## G

**gain** 197:11

**game** 117:22

**gamut** 190:4

**garage** 156:24

**garments** 168:13

**garnering** 74:1

**Gary** 122:18

**gather** 169:16

**gathered** 49:6,14,17
50:14,19 125:5,10
127:13,14 169:10

**gathering** 111:5
112:11

**gauntlet** 83:24

**gave** 83:3 160:19 187:8

**gazettes** 64:14

**general** 195:23

**generally** 81:19 84:3
145:15 179:12

**gentleman** 93:17
122:18 123:7 201:8
202:19

**Georgia** 41:4,24 42:13
68:14 187:17

**give** 194:7 198:18,24

**glasses** 138:6

**goal** 200:5

**good** 166:23 167:3
168:7

**Google** 48:10

**gotcha** 114:9 193:21

**grab** 130:18,24 131:7,
10

**grabbed** 127:23 129:24
130:15,21 131:2,13,22
135:10 150:24 151:6
152:4,19 158:22 162:14
187:22,24

**grabbing** 127:22
134:15 188:3

**great** 144:21 193:24

**green** 118:11

**Greg** 122:19

**grilles** 70:12

**ground** 129:16 152:7
156:7,12 160:16,21
162:3,5,6

**group** 45:8,20 46:10
51:9 54:17,23 60:15
66:12 81:8,10,14 85:22
97:20 99:18 115:18,19,
25 116:19 122:3 123:18
124:1,4,8,18,24 125:3,
4,8,9,10 126:3,9,13
127:12,14 128:3 158:3
166:5 168:7

**groups** 123:17

**Gruen** 157:9,11 160:25
163:5,6 166:4 170:9



Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 222 of 233
John Ruch vs City of Atlanta, et al.
John Ruch
April 12, 2018

175:1 181:17,20,25 182:11 183:3,10,15,19, 23 184:9,11,14 198:22

**guess** 82:3 134:21 136:7 171:2,3,4 181:1 189:17

**guessing** 137:12

**guy** 101:12,17

**guys** 208:12

## H

**half** 137:22 141:16 151:8,9,12

**halted** 76:20

**hand** 129:21 130:17 131:12 134:13 135:16 136:1,6 137:18 138:3, 10,13,16 139:7,11,20 140:25 141:1,6,18,23 142:2,7,10,13,21 143:2, 4 144:4 145:8 146:21 147:1,12,21 148:6 150:19 160:8 162:2 196:14 202:24 205:4 206:22 208:9

**handcuff** 192:20

**handcuffed** 152:11,16 190:9 191:16 192:5,8, 17

**handcuffing** 156:8

**handcuffs** 156:2 163:4 191:15

**handled** 174:15

**hands** 130:3,12 132:13 137:12 155:15 162:10 191:10,12

**happen** 161:22 163:21 167:5

**happened** 42:7 75:17 110:21 123:24 129:13, 17,20 136:11,14 137:4, 20 150:25 151:13 152:3,6,10 153:1 155:11 156:20 157:6,7 158:2 161:1 163:19 165:5,8,15,21 166:2

167:17 168:1 172:9 173:2,6

**happening** 42:5 124:22 125:1,21 126:2 127:11

**happenstance** 44:1

**hard** 134:23 203:13,16

**hardware** 160:7

**hat** 106:19,21,22 152:11 205:25

**heads-up** 173:23,25

**health** 197:1

**heard** 124:16 125:14 151:15 178:8 179:5,7

**hearing** 81:18 125:18 173:22 174:12,19,23 175:2,6,10,14,18 180:9 181:12 184:15 186:12

**held** 67:25 172:21 183:5,6 190:8

**helicopter** 62:21

**helpful** 196:9

**higher** 131:7 132:15,18 135:20

**highway** 115:20 116:3, 21,23

**Hill** 64:14

**hire** 55:16,20

**hired** 69:6,8,10 90:16, 23 91:7 92:10 94:22 95:18 114:7 116:1,16 121:14,25 122:4,10 154:20,23

**hit** 76:25 77:1,5 197:18

**hold** 134:11 140:25 141:11 188:15

**holding** 130:1,9,11 132:11,15,18 180:20 182:4 192:5

**Hollowell** 169:13,21 170:21

**hopes** 48:15

**hotels** 118:17

**hour** 41:15 54:2,6 58:3, 15,21 73:11 114:21 155:7 162:20 163:10

**hours** 58:6,10,12,16 66:17,23 67:1,4 71:10 114:24 115:2 163:8,12 167:16 168:19 192:6,11 194:16

**hundred** 57:15 124:6

## I

**idea** 100:10 115:13

**identifiable** 187:4

**identification** 48:13 67:17 110:6 150:4 193:17 199:5

**identified** 112:7 179:3 181:4 194:13

**identify** 117:17 200:4

**identifying** 197:11

**illegally** 186:20

**image** 93:15 107:23 108:2 203:11 206:24

**images** 159:2,19 198:7

**immediately** 83:18 85:2 118:21 120:22 129:18 151:3 167:8 168:7

**impossible** 86:20

**impressive** 105:3

**improper** 186:2

**improperly** 168:23

**in-person** 41:3,23

**inability** 150:11

**inaccurate** 95:5 99:14 107:19,20

**inappropriate** 153:15 154:16

**inarticulate** 125:16

**inch** 137:22

**inches** 140:10 141:14, 19,20 205:12

**incident** 147:3 161:6 180:16

**include** 90:3 93:6 112:7 179:7 190:3

**included** 73:4 111:14 177:15

**includes** 48:23,24 113:15

**including** 84:16 146:1 148:21 149:5 156:23 161:23 167:18

**income** 197:4

**incorporated** 59:15 60:6

**incorrect** 89:25 93:3

**independent** 80:9 81:3 82:4 151:23 177:21,25 185:3,4,9,13 186:8

**independently** 81:3

**indicating** 70:15 81:25 138:8 141:10 146:15,24 147:2,6 148:19 195:3, 16 201:21 203:18 205:2

**indication** 191:21

**Indirectly** 86:19

**individual** 129:15 150:18 151:24 160:21 163:15 184:24 192:20 193:12 203:3 205:23

**individually** 166:4

**individuals** 63:21 87:22 93:19,22,24 94:3, 9 103:12 104:2 126:13 132:9 202:14

**Industries** 102:2,4 123:6,7 200:20

**infer** 87:23,24

**information** 44:16 161:9,15 170:14 176:6, 8 177:18 178:6 189:10 191:20

**informed** 168:5

**initial** 55:19

**initially** 182:2

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 223 of 233

John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

**initials** 195:4

**injured** 190:2,5,7
191:22 192:1 196:23

**injuries** 191:6 196:18

**injurious** 192:11

**injury** 190:22

**inquire** 64:19

**inquiry** 45:4

**inside** 165:9 202:19

**inspired** 52:5

**instruct** 86:15

**instructing** 136:17

**intake** 181:15 184:12

**intended** 84:6

**intent** 44:11 50:6,10
202:13

**intentionally** 134:9
137:18

**interact** 54:25

**interacting** 103:24

**interaction** 106:10
144:2 177:6 180:4
182:10 184:4

**interest** 42:14

**interfered** 98:23 134:5,
9

**interfering** 84:7 133:24

**interpose** 143:12
149:16

**interposing** 150:9

**interpretation** 84:5

**interrupted** 107:23
109:19 113:3

**intersection** 76:21
164:25 165:5

**interview** 51:25 61:18
96:19

**interviewed** 61:19

**interviews** 113:22

**investigating** 45:9

**involve** 207:24

**involved** 47:11 86:12
148:15 150:12 181:1
186:25

**involvement** 103:15
176:21

**iphone** 64:8 76:15

**irrelevant** 83:20

**issued** 88:12,16 172:2

**issuing** 98:5 126:24
132:2,6 160:12

**item** 171:23

## J

**jacket** 106:19,25 107:2,
5 151:14

**jail** 161:23 167:6,20,21,
25 168:2,6 172:22
178:15

**Jamaica** 64:14

**jeans** 106:20 107:9

**jogged** 125:20

**John** 117:6 207:17

**joined** 56:2 180:20

**Joseph** 179:11

**journalist** 69:11
188:25

**journalists** 134:25

**journey** 44:8,10 56:12

**JR** 145:9,14 146:23

**jumped** 129:23

**Justice** 90:3 96:5

## K

**keeping** 73:24 82:2
184:1

**kind** 142:22 150:21
165:17 166:23 167:2

**knew** 87:9 135:12
192:4

**knocked** 119:23

**knowing** 49:9 161:25
171:14 182:4 183:6

**knowledge** 78:19 80:9
81:4 82:4 87:5 91:9
102:7 103:14 109:6,13
120:16 127:8 151:24
160:4 174:22 175:1,5,9,
13,17 176:20 177:2,21,
25 179:15,18,21,25
184:2 185:4,10,13
186:8 189:9,17,23
192:23 193:4,9,11

## L

**labeled** 68:21 70:23
71:2,8 78:12 80:24
82:20,22 85:13 91:23,
25 92:19,20 97:2 99:8
102:22 147:8

**laid** 152:8

**laminated** 64:18 197:8

**landmarks** 46:7,9
49:1,8 57:20 61:14 66:3
118:16,20

**language** 187:12

**large** 57:14 68:10 97:20
118:11 123:22 124:3
165:11 195:20

**larger** 54:22 124:8,24
166:5

**law** 185:22 188:12,14,
16,19 192:15

**laying** 156:12

**lead** 56:7 186:9

**leadership** 184:6

**leading** 157:9

**leaning** 142:10

**leap** 206:16 207:1

**learn** 44:5

**learned** 44:13

**leather** 107:2

**leave** 81:14,20,24 86:2

**leaving** 81:25 190:9

**led** 45:9 155:16 157:17,
22 158:2 162:17

**Lee** 169:13,20 170:21

**left** 130:25 131:1,23
138:13 142:9,25 147:21
150:25 155:12 169:6
190:13

**left-hand** 118:12

**left-shoulder** 190:22

**legal** 103:10 162:8
172:20,25 185:17 188:8
189:5,12,13

**legalistic** 187:11

**length** 128:17

**lengthy** 165:16

**liability** 158:11

**license** 153:8

**licenses** 188:15

**lieutenant** 166:20

**light** 166:23

**lights** 77:10,12

**lines** 197:13

**list** 68:7 110:24 186:15
187:9 188:21 189:2
200:21

**listed** 119:4 199:15

**listening** 127:20
180:21

**literally** 66:10 76:8

**live** 59:15 60:7

**Loafing** 42:8 43:22
55:10 59:23,25 174:8

**Loafing's** 59:15 60:7

**local** 44:7 54:24

**locate** 161:16,20

**located** 57:10 125:2
147:4

**location** 43:14 48:24
49:1,9 50:21 51:3,6,12
53:7 56:6,7,8 57:17



Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 224 of 233

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

90:8 91:21 92:12 94:25
100:11 102:17 117:10
118:8 143:8 147:17
148:14 150:12,17
156:20 163:15 191:6
202:8,10 206:12

**locations** 84:17 100:8
155:17 156:23

**long** 53:23 55:22 56:12,
22 57:24 66:11 67:19
71:5,6 73:7,9 79:20
95:25 102:3 114:14,17
119:8 132:21 133:7
147:19 155:18 162:5,14
163:6 164:20 165:13
167:12 168:16,25
190:9,17 198:9,20

**longer** 54:2 124:18
126:11 163:8,10,12

**looked** 129:22 140:20
151:1,2,8

**loose** 166:19

**loosely** 59:3,5

**lose** 124:9 197:4

**lost** 123:21

**lot** 134:19 135:4 148:11
197:15

**loud** 125:14,16

**lower** 131:10 135:20
201:7

---

**M**

**made** 48:17 67:13 68:3
72:20 73:3,7 77:2 81:7,
13,17 86:23,24 112:13
114:21,25 115:3 155:13
160:21 161:19 166:22
167:1 182:11 195:5,9

**main** 43:17 45:10 47:19
54:15 59:6 71:24 73:25
124:1 126:3 128:12
195:12 202:12 206:14

**maintain** 206:21

**maintained** 64:25
170:5

**maintaining** 180:19

**major** 74:1 175:17
184:18,23 185:10,14
186:8,11 204:18

**majority** 127:19

**make** 45:21 109:2
146:14 147:17 150:7
191:19 192:23 199:9

**makes** 158:11

**making** 72:14 86:20
114:2 159:23 182:3
207:25

**male** 151:15

**malicious** 189:3,10

**man** 93:18

**map** 48:10,20,21,22,24
49:2 117:15,16 119:2,5

**maps** 48:21 116:25
117:1

**march** 42:2 52:11
54:15 55:8 59:7 65:18
71:24 115:8

**marched** 60:23

**marchers** 61:5

**marching** 61:9 84:16
105:4,20 119:18 126:12

**mark** 67:14 109:22
110:3 144:10 150:2
193:15 196:4

**marked** 48:9,12 67:16
85:14 94:15 96:23 99:6
101:1 102:20 104:6
105:24 110:5,12,16
113:14,18 150:3 190:10
193:16 199:4

**marketing** 69:13

**marks** 90:6 93:8 149:20
194:24 195:5,8 196:16

**Mart** 118:22,23

**material** 59:16

**matter** 56:24 68:18
71:12 112:13,19 155:21
190:18

**matters** 161:10

**Max** 47:11 55:10 56:2
57:2 104:3

**Max's** 56:8

**mayor** 173:5,18

**mayor's** 172:24 173:7

**Mckenzie** 175:5 181:4
203:9,22,23 204:7,15,
21 205:9 206:7,16
207:1 208:8

**meal** 168:5

**meaning** 167:8

**means** 134:1 139:23
180:25 182:16

**meant** 60:22 77:2 82:3,
6 84:19 153:5,6

**measure** 139:18
140:19 141:1

**measured** 140:13

**measurement** 139:24

**measuring** 115:9

**media** 44:7 54:24 60:8
74:1 151:4 153:4,15,21,
23,24 154:16 160:1
188:14

**medical** 196:17

**meet** 43:14,23 44:8
53:12,15

**meeting** 44:11 77:15,
19 197:12

**megaphone** 203:1

**member** 108:23 109:15

**members** 62:9 121:5
126:19

**memory** 156:15

**men** 101:19

**mental** 196:25

**mention** 101:18

**messages** 160:1

**messy** 60:19

**met** 53:21,24 54:9

**metal** 70:12 156:2,10

**meter** 41:8

**method** 165:3

**Michaud** 174:6 179:4

**mind** 60:22

**minute** 108:2 109:25
198:25 199:20 207:8

**minutes** 41:15 55:24
56:24 71:13 73:13
133:1 155:6,9,21
162:23 163:1 198:12

**missing** 111:7 112:16

**Mission** 64:14

**Missouri** 42:6 110:20

**misspelled** 168:21

**moment** 137:3 156:13
170:4

**month** 190:19,23

**motion** 205:5

**motive** 50:1

**move** 41:13 65:5,18
66:11 91:22 94:13 99:5
102:20 120:21 199:25
202:8 204:14,25

**moved** 60:15 121:25
122:12 142:10,13
163:14 165:4,7 201:22
206:18

**movements** 48:18

**moves** 124:9 137:11
205:24

**moving** 45:6 65:3
76:11,15,17 81:12 82:2,
3 86:20,24 87:11 88:4
95:12 120:23,24 135:24
142:21 182:20

**multiple** 182:20

**music** 99:19

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 225 of 233

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

## N

**named** 174:11 182:22 187:2

**names** 57:22 61:22,25 101:21 187:9

**nametag** 157:14

**national** 44:7 54:24

**nationwide** 42:5

**nature** 125:25 126:8

**nearby** 56:6 152:21 155:16

**necessarily** 50:16 88:20 98:7

**needed** 61:6

**negative** 116:12

**news** 42:3,7,17,18 43:21 44:12 52:6 64:13 69:12 95:9 101:11 178:8

**newsworthy** 105:2

**night** 47:2,6 50:1 62:3 71:16 106:18 120:14 181:3 196:21

**noncitizen** 88:2

**Nonetheless** 158:12

**note** 59:24

**notebook** 87:19,21

**noted** 49:1 118:16 119:5

**notes** 206:3

**notice** 111:6 112:15

**noticing** 168:20

**notify** 196:22

**November** 41:3,22 42:12,24 43:24 44:6 47:2,6 50:2 57:25 64:9 67:14 68:4,15 71:20 79:14 86:15 89:4 92:4 95:5 97:11 99:11 100:16 101:9 103:5 104:14 106:7 107:12 109:17 110:20 112:9,22

113:7 117:7 129:12 159:7 160:6 172:3 177:7,13 178:3 180:5, 10 181:12 184:16 186:13 190:5 194:20

**number** 45:5,11 50:18 54:18 57:14 68:10 84:15 91:1 93:21 125:5 149:20 165:10 167:15 168:19 190:11

## O

**O.C.G.A.** 208:19

**object** 48:6 50:8 51:16 52:23 53:4 60:17 63:11, 18,23 66:13 75:19 81:22 84:12 87:1 88:14 106:14 108:25 110:22 111:9,15 120:6 132:23 133:16 134:21 135:3, 14,25 136:7,13 138:4 148:10 158:24 162:7 182:13 183:12,16 185:16 186:17 189:4 192:3

**objecting** 111:23

**objection** 98:14 102:5 120:15 136:20,23 137:8 143:12 149:17 150:6,7, 10 171:1 172:16 182:17 183:25 185:6 186:2

**obnoxious** 134:17,19

**observation** 45:9,21

**observations** 72:15 98:20 116:5

**observe** 62:6 63:5,16, 21 94:7 99:2 113:23 114:1 120:8 122:10 206:22 207:21 208:8

**observed** 52:8,20 62:24 72:11,13 87:14 99:24

**observers** 103:10

**observing** 52:14,15,21 97:21 207:21 208:9

**obstruction** 166:14

**obvious** 87:12

**occur** 120:5

**occurred** 68:5,14 69:6 75:10,12,13 177:12 188:5

**occurring** 44:6,13 85:20 97:17 128:12 149:8 202:18

**off-the-record** 149:24 179:1 199:21

**offer** 153:17,21,25 154:22

**offered** 57:6 166:17

**office** 172:25 173:7 199:9

**officer** 47:3 84:21 86:15 100:14 102:14 107:22 109:20 127:22, 23 129:25 130:15,17 131:22 133:15,21,24,25 134:5,8,16 135:9 138:2, 16 139:7 140:9 147:11, 13,14 150:19,24 151:2, 20 152:4,13,19,20 153:20 155:3 157:8,11 158:22 160:8 161:7,14, 17,20 162:2,13 163:5, 16 166:3 167:1,3 175:1, 13 180:12,14,15,16,23, 24 181:3,5,8,11,14,17, 20,25 182:10,11 183:3, 10,15,19,22 184:9,11, 14 186:25 187:22,24 188:23 191:11,15,20,21 192:14 193:9,11 198:22 203:9,21,23 204:7,15 205:8 206:16 207:1,25

**officer's** 138:12 139:11 144:1

**officers** 45:5,8,20 46:11,20,25 48:4 49:6, 15,17,25 50:7,14,15,18, 20,22 51:2,10,11,14,15, 23 52:10,20,22 62:6,9, 14 72:12,13 80:17 81:7, 20 82:6,17 84:3,24 85:2,22 86:4,7,23 87:6, 9 88:12 96:22 97:21,22, 25 98:5,9,21 106:11 121:16,24 122:2,11

126:23 127:14,16,18,19 129:14 132:2,8 148:5,9, 11,22 149:1,4 152:23 153:2,5,12 154:12 155:16 156:25 161:19 164:5 165:17,23 168:6 177:16 178:2,3 187:1 191:18 207:21

**officers'** 50:3

**official** 50:11 97:15

**officials** 61:2

**Olympic** 115:16 117:2, 4 118:11

**one-on-one** 184:4

**open** 73:24 133:3

**operating** 101:19

**operational** 159:12

**operators** 47:12

**opportunity** 52:6 76:22

**orange** 201:8

**order** 48:4 71:19 81:7, 9,16,23,24 84:16 86:2, 23,24 88:12,16 112:12 118:8 133:8 155:17 160:12,19,20 206:24

**ordered** 87:10 152:7 156:22 166:20 168:12 184:24

**ordering** 86:19

**orders** 81:11,17 82:6 98:5 126:20,24 132:3,6

**organization** 154:19, 23

**organizations** 153:16 154:17

**original** 68:7

**originally** 52:5

**out-of-focus** 196:12

**outlet** 69:16

**outward** 130:3

**overshirt** 106:20



John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

## P

**p.m.** 43:5,6,7,9,12
74:17 78:13 79:14,17
80:9 81:4 86:14 89:3,23
90:13,20,21 91:6,13,19
92:4,9,25 95:4 97:10
98:12 99:11 100:16
101:8 103:4 104:14
105:6,16,17 106:7
107:11 114:6 129:12
208:24

**painful** 192:11 193:2

**palm** 138:8

**pants** 107:7,8

**paper** 143:3,4 173:23
174:7 179:4 208:13

**paragraph** 83:16
194:14

**pardon** 74:7

**park** 43:17 44:9 46:3
49:10,11,13,17,19
51:11,19 53:9,10,11,13,
18 65:15 72:17 74:2
75:5 77:16 79:10 80:13
115:16 117:2,4 118:11

**parked** 45:6,12 48:2
71:15 74:9 76:18 78:1,8
84:17 120:13

**parking** 71:25 156:24

**Parkway** 169:13

**part** 46:16 57:8 60:3
69:12 95:9 97:14 137:8
173:14 188:12

**Partially** 50:9

**participate** 174:12

**pass** 48:9 67:12 109:21
110:3 193:14

**passed** 48:19 66:4
76:23 77:7,11 115:11
126:17 142:12

**passersby** 51:23 61:3

**passes** 64:17

**passing** 66:6 76:20
118:19 119:22

**pat** 151:14

**pause** 206:4 207:11

**paused** 123:25

**paying** 149:10

**peace** 90:3 93:6,7,10
96:5

**Peachtree** 76:11,12

**pedestrian** 84:11

**pen** 143:5 194:23

**people** 47:11 54:18,19
59:8,9 88:1 93:9 96:19
103:9 123:19 124:3,8,
15 125:6 126:2,5
134:20 156:22 163:22
167:2 178:20

**percent** 108:14 189:23

**perception** 193:7,8

**perception-based**
135:2

**Perfect** 116:24 195:7
200:11 206:2

**period** 73:9 162:17
164:22 165:2,13,16
166:3 168:24 169:2,23
170:24 183:5 190:9
192:6 194:17 198:20

**periods** 164:22 167:14
190:16

**person** 61:5 113:23
129:23,24 134:17
155:22 159:6 169:25
182:19

**personal** 60:5 78:19
109:6 116:5 179:18,21,
25 183:11 189:9

**personally** 176:13

**personnel** 70:4,18
174:11

**persons** 182:20

**phase** 66:5

**phone** 64:6,7 87:18,19,
21 107:21 108:3,15,18,
24 109:9,16 129:21
130:1,5,9,11,15,18,21

131:23 132:12,15,18,22
133:3 135:16,19 136:2
139:11 140:25 152:11,
14 155:22 158:15,20,21
159:3,6,12,23 160:1,5,
25 162:14 169:19,22
170:6,16,18,24 171:17,
19,20,24 173:9 189:25
205:3

**photo** 76:22 78:1,4,5,7,
8,11,12 79:9 80:7,11
83:18 85:14 89:4,5
90:10,12 92:20 93:16
99:7 107:11,12,15,16,
21,22 108:9 128:4,5
129:18,22 132:22
133:4,8 134:6,9,13
135:9 168:4 171:14,15,
17 189:19 194:25 195:7
196:8 197:16,17,22

**photograph** 68:22
69:19 70:23 71:1,7 76:7
77:4,7,14,19,25 78:25
79:4,6,13,17,20,24
80:2,5,14,18,21 81:1,6
82:9,11,14,18,22,25
83:5,6,10,11,23 84:21,
25 85:4,5,8,12,17,21
86:14,16,17 89:3,16,18,
20 90:2 91:5,10,13,18,
23,25 92:3,9,13,16,22
93:12 94:14,18,21 95:1,
8,13,22 96:1,6,12,23
97:2,4,7,10,13,18 98:1,
8,11,21 99:17 100:2,4,
11,15 101:1,4,8,13
102:9,11,12,15,18,22,
25 103:4,8,18,22 104:8,
13,17 105:19,24 106:2,
13 107:25 108:11
109:19 111:1,21,25
112:5,14 113:2,4
114:15,18 115:14 117:1
128:10 129:11 130:2
135:13 142:19 147:4,8
149:8 150:18 187:18
188:2,3,24 195:24
206:7,21,25

**photographed** 50:21
77:3

**photographer** 165:24

**photographic** 109:17

**photographing** 87:13
106:9,10

**photographs** 50:15,25
51:25 59:12,19 63:7,16,
22 64:1,5 69:1 83:9
86:8 93:24 96:16,18
108:7,14,17,22 109:14
110:12,15,19 111:5,7,
13 112:8,12,16,19,25
113:6,12,18,22,24
165:19 193:14,25
194:12,16,19 207:20,
22,24

**photography** 169:1

**photos** 51:23 76:14
94:9 160:10 189:18,23
198:1

**phrase** 90:5 93:7,9

**phrased** 182:18

**physical** 70:8

**physically** 76:8 134:15
188:23

**pick** 178:21

**picked** 170:20

**picture** 80:23,24 81:5
132:25

**pictured** 77:6 80:18
90:7 93:9

**piece** 143:3,4 146:3,8

**pieces** 143:9

**pinkish** 195:23

**pinned** 192:10 193:2

**pivot** 206:23

**place** 140:25 149:5
161:6

**Plain** 64:14

**plainly** 54:14 135:17
182:7

**Plaintiff** 68:21 70:23
71:2,8 75:8 78:12 80:6,
25 82:21,22 85:13
91:24 92:1,19 94:13,15
96:24 97:3 99:6,8
100:18 101:1 102:21,22
104:7 113:15,16 114:5

www.GeorgiaReporting.com/Schedule
404.389.1155

Elizabeth Gallo
COURT REPORTING, LLC

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 227 of 233

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

128:6

**Plaintiff's** 78:25 85:15 89:17

**plaintiffs** 200:21

**plans** 43:23

**plastic** 156:3 195:17

**play** 176:3 179:14 181:5,8,20 183:19 184:9,18 200:2 201:17

**played** 177:3,11 179:19,22 180:1 185:10,14 186:9 200:12

**playing** 99:19 203:7

**pocket** 158:15

**point** 45:24,25 49:2 55:15,18 64:19 78:1 102:9 103:12 104:24 105:5 115:17,24 123:21 124:17 131:5 144:6 153:18 155:25 157:20 166:24 171:18 191:14 199:25 205:14

**pointed** 135:17

**pointing** 117:24

**police** 42:6 45:5,8,15, 20 46:11,25 47:4 48:1 49:6,14,16,25 50:2,6, 14,15,18,20,22 51:2,10, 11,23 52:4,22 62:6,9, 10,12 76:20 80:17 81:6, 20 84:2,3,7,9,14,20,24 85:22 86:4,7,22 88:4,12 91:17,20 92:15 93:23 94:8 96:22 97:21 98:4, 9,21 100:14 102:14 106:11 107:24 108:23 109:5,7,10,14,15 117:14,17 119:1,2 121:4,15,24 122:2,11 125:11 126:15,20 127:14,16,17,19 129:14,25 131:22 134:16 151:2 152:12 155:14,19 159:16 162:18 164:5,25 165:7, 9 166:25 167:3 169:9, 11,12 170:6 171:20 172:21 176:1 177:15,23 178:15 182:6 184:3

186:21 188:23 189:24 191:25 192:23 193:3,9, 11 196:19 207:25

**policy** 177:15

**political** 172:24 173:4, 21

**poor** 83:20

**popping** 190:10,12

**portion** 77:8 84:4 202:20,23

**Portman** 117:7

**pose** 165:19

**position** 184:7

**positive** 116:13

**possession** 107:24 171:19 198:7

**possessions** 165:20 169:4,9,16,19,20 172:22

**possibility** 189:18

**possibly** 58:18 62:21 63:1

**post** 60:10 77:18 79:21 80:7,24 81:1 82:14,20, 25 83:9,11,12 85:8,17 89:4,20 92:3,18,22,25 94:18 97:6,10 99:10 101:4,8 102:25 103:4 104:10,13 106:2,6 159:25

**posted** 73:16 74:16 75:9 76:2 78:3,13 79:13,17 82:9,18 83:5, 22 84:22 86:14 89:3,11 90:12,20,21 91:6,13,18 92:9 98:1,22 100:1,12, 15 106:5 107:11 114:6, 17 129:11

**posts** 78:22

**potential** 59:17

**potentially** 192:11

**practice** 83:8,10,14,17 121:3 188:16

**practice-based** 135:5

**precinct** 118:2 119:2 125:11 165:1 178:17

**precisely** 68:24 155:5 162:16

**precision** 66:15 141:22 148:14 155:20 168:18

**preparation** 45:7 48:3

**prepare** 187:10

**prepared** 187:11

**preparing** 52:11

**presence** 42:12 55:6,7 84:5 91:17,20 92:15 162:15 163:1

**present** 174:19,23 175:1,5,9,13,17 178:3, 11,16 180:8 181:11,14 184:11,14 186:11

**presented** 167:8

**preserving** 186:1

**press** 64:10,25 153:12, 17,21,25 154:12,19,22, 25

**pressed** 197:22

**pressure** 172:24 173:5, 21

**pretty** 139:14

**prevent** 82:17 84:21 86:8,16,25 91:12 93:11 94:8 96:22 97:25 100:14 102:14 113:23

**prevented** 111:3

**preventing** 93:23 113:17 114:1

**previous** 86:2 126:17 201:12

**previously** 178:9

**primarily** 195:3

**prior** 47:3,7 72:14 77:15,19 108:3,10,20 111:22 117:7 118:20,21 119:12,15 127:4 132:1 133:3 140:11 142:18 147:16 160:14 174:2 198:3,10,21 202:1

203:3 206:7,17 208:9

**prison** 69:17,22 70:1,6, 10,15 73:4,7 163:23

**prisoner** 163:23 164:2, 7,10

**prisoners** 70:20

**private** 197:12

**problem** 121:11 129:8 133:19 137:13

**problems** 143:13

**procedure** 166:1 208:19

**proceed** 128:13,17 202:11,17 206:13

**proceeded** 47:20 73:23 128:11 129:10

**proceedings** 41:18 88:25 131:18 206:4 207:11

**process** 60:2 61:20

**produced** 68:18

**Production** 68:21 70:24 71:3,8 78:12,25 80:6,25 82:21,23 85:13, 15 89:17 91:24 92:1,19 94:14,15 96:24 97:3 99:6,8 100:18 101:2 102:21,23 104:7 113:16 114:5 128:7

**professional** 57:3,4 196:17

**prohibiting** 97:23

**prompted** 44:16 74:2

**proper** 172:12

**properly** 177:15

**property** 189:15

**prosecution** 176:18,22 177:4 180:2 181:9 184:9 189:3,11

**protest** 41:3,4,22,23 42:2,9,12,24 43:12,15, 17,24 44:6,9,11,13 45:10 46:1 47:12,14,18 50:10,12 54:15 55:8,11

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 228 of 233
John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

57:3,7,8 59:2,16,19
60:10,14,22,23 63:17
64:21 65:1,2 68:4,14
69:7 71:20,24 73:25
93:20 94:5,10,23 95:19
96:1 98:18 102:4
103:12,15,21,25 106:18
120:14 121:15 128:12
178:4 190:2 202:12,17
206:14

**protest's** 47:19

**protested** 152:22

**protesters** 43:16 45:7
48:3 51:22,24 52:13,14,
16,21,22 53:1,7 54:8,23
56:20 57:10,12 60:14,
15 61:18,21 62:2,6,21
63:5,9,16 64:2 65:5
66:12 79:12 81:8,10,20
86:19,23 87:10,13 88:4
90:7,9 95:12 96:16
97:15,19 98:10 99:18,
20 105:20 106:11
113:21 115:18,19,25
116:2,15,19 119:9,12,
14,19,23 120:1,11,12,
17,23 121:2,5,16,24
122:3,5,12 123:11,13,
15,19 124:19 127:12

**protesters'** 59:6 95:10

**protesting** 97:23

**protests** 42:4 44:21,23
45:3 110:21

**provide** 69:11 81:9
136:17 180:18 191:20
193:10

**provided** 62:3 168:13
169:9 198:6

**providing** 126:20
161:14

**public** 88:1 188:24

**publication** 113:23

**publisher** 173:7

**purpose** 101:16 164:13

**purposes** 159:22

**pursuant** 208:18

**put** 68:23 110:8 121:9
129:3 136:8 144:7,19
145:6,9 146:9,18 148:8
166:23 168:8 170:9,19
191:5 195:4 200:18

**putting** 158:15

---

## Q

**quality** 83:16,21

**quantify** 134:23

**question** 44:5 45:25
60:19 71:6 94:2,7
113:11 114:13 115:22
120:9 122:7 133:19
137:6 138:5 139:4
142:4 149:20 154:11
170:15 171:5 176:24
177:1 185:9 186:1,3
191:9

**questioner** 136:14

**questions** 48:15 67:21
116:11 137:2 180:21
195:11 205:16 207:13
208:2

**quotation** 90:6 93:8

**quote** 62:2 90:6

**quote-unquote** 55:16
103:21

---

## R

**random** 134:17

**range** 206:10

**rapid** 138:17 142:22

**rapidly** 138:7 139:8
206:18

**rarely** 197:10

**rational** 87:14

**reach** 41:9

**reached** 50:13 127:10
168:1

**reaching** 188:6

**reacting** 61:2,3

**read** 154:6,9

**reads** 107:15

**ready** 69:18 193:22
200:6

**realized** 42:9 134:16
148:18 151:1

**reason** 78:16,20 87:8
89:24 93:2 95:3 97:9
99:13 101:7 103:3
104:12 106:6 120:4,11,
12 187:19,21,23

**recall** 43:1,8,10,19
45:16,18 46:4,5,9,15,
16,19,21 47:5,13 48:7
49:7 50:23 51:13,17
52:21,24,25 53:3,7,10,
20,22 54:1,3,7,20 55:14
56:12,15,19,24 57:20,
21 58:2,19 61:11,14
62:4,12,25 65:8,19,23
66:3,6,8,14 67:8,10
68:22,24 70:16,21 71:4,
9 72:25 73:1,9,14,19
74:22 75:8,15,20 77:6,
13,17,20,22,24 78:3,10,
24 79:2,3,22 80:10
81:11,16,18 82:21 83:2,
3,7 84:1,2,13,14,18
85:1,14 89:6 90:11,18,
24 91:3,11,17,20,24
92:5,12,15,17,20 93:23
94:14 95:2,11 96:3,10
97:3,6,24 98:4 100:6,9
101:21 102:3,6,11,17,
21 103:13,17,24 104:4,
7,20,23,25 105:21
106:12,23 111:10
112:10,17,25 113:17
114:10,14,17,23 115:1,
6,7,10 116:1,14 117:3,
6,9,10 118:7,13,15,19,
25 119:6,10,11,14,18,
22 120:1,22 121:4,15,
23 124:5 126:19,23
127:1 130:10,13,19
131:5,12,14 132:2,5,8
133:6,7 137:21,25
138:12,14,15 140:12
142:9 143:1 145:2
147:23 148:15 149:3
152:15 155:20 156:4,6,
9,13 157:15,19,20
160:12 161:5 162:16

164:21 165:2 167:14
168:5 169:17,22,23,24
170:4,13,23 172:6
173:22 174:1,9,14,18,
20 177:9 180:7 194:5
198:19

**receive** 160:1

**received** 169:20 180:9
184:15 186:12 192:19
196:18 200:19

**receiving** 159:23

**recess** 41:17 88:24
131:17

**recognize** 86:10
118:22 193:24 202:5

**recollected** 170:2

**recollection** 41:6,25
91:8 107:10 119:3
132:14 137:24 140:20
158:18 161:4 166:10
185:4 190:15,21 191:5
194:8

**record** 41:14,19 89:1
109:3 131:19 136:4,8,
25 137:7 149:23 150:8
154:9 167:24 178:23
198:3 199:2,12,20
200:18

**recording** 53:1 63:6,
10,13 93:17 159:20

**recordings** 63:7 114:2

**red** 83:24 194:15
195:15,19,21 196:4,16
201:9

**refer** 116:2,20 156:15
158:17 161:3 166:9
170:1 187:2,8 190:14,
20,24 191:4 194:6,14
198:5

**reference** 86:1 156:17

**referred** 154:9 161:8
184:20

**referring** 66:9 70:8
71:23 72:25 80:13 84:2
125:9 187:6

**refers** 101:14

---

Elizabeth Gallo
COURT REPORTING, LLC

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

**reflected** 179:16

**reflection** 137:24

**reflective** 147:18

**reflects** 150:17

**refocus** 206:23

**refused** 153:2 183:17

**regain** 206:24

**regard** 188:16

**relates** 150:17

**relating** 42:5

**relation** 142:1,7

**relay** 191:19

**release** 152:25 168:19 183:15

**released** 161:23 167:7, 9 169:3

**relevant** 68:4,13 112:19

**remainder** 170:20

**remaining** 194:15

**remark** 167:1

**remarked** 166:25

**remember** 99:24 116:9 152:13 197:21

**repeat** 70:25 115:21 142:3 177:1 186:6

**repeatedly** 153:2

**rephrase** 74:11 116:9, 13 176:23

**replaced** 156:2

**report** 49:22 50:2,6,10 60:7 86:21

**reported** 41:4

**reporter** 42:14 55:10 83:17 87:6,9,23 97:14 104:5,19 151:4 152:23 154:5,10 188:18 199:8, 11 208:12

**reporter's** 115:7

**reporters** 64:20 65:1 103:25

**reporting** 52:6 59:13 86:25 87:15 88:7,9,13 95:9 104:21 125:21 206:15

**reports** 44:7 54:24

**represent** 110:19 154:24

**representing** 153:16 154:17

**reprocessed** 168:23

**requested** 172:12 187:9

**requests** 111:6 112:13

**require** 193:3

**requirement** 60:2

**reserved** 208:21

**reserving** 189:17

**resolved** 190:22

**respond** 112:12

**response** 50:11 97:16 111:5 128:1 178:1,4 191:3

**responsibility** 178:2

**responsible** 177:22

**restaurant** 120:13

**restaurants** 120:2

**result** 88:9 173:4 196:18 197:1,3

**retrieved** 169:18

**return** 73:4,8

**returned** 73:17,20 74:17 155:22 158:14,23 159:13 160:2,25 167:11 169:4 170:6,8

**returning** 158:20

**review** 50:6 114:4

**right-hand** 93:17 201:7,23 202:20,23

**rights** 98:11,23 177:17 188:9,14

**Rockdale** 64:13

**rocks** 119:19

**rode** 47:23

**Rodney** 175:20 176:2, 11,14,17,21 177:3,7,10, 22 178:1,7,11,16,19

**role** 69:11 176:2,11,14, 17 177:3,11 179:13,18, 22 180:1 181:5,8,20 183:19 184:8,18 185:10,14 186:8

**room** 128:18 129:5 165:11 167:15 168:3 169:1,2 174:17 178:20

**rough** 150:22

**route** 84:6 118:7

**Ruch** 41:20 48:14 68:21 70:23 71:2,8 75:8 78:12 80:6,25 82:20,22 85:13,14 89:17 91:24, 25 92:19 94:13,15 96:24 97:2 99:6,8 100:18 101:1 102:21,22 104:7 110:11 113:15,16 114:5 128:6 131:20 150:16 199:23 207:12

**Rule** 208:18

**Rules** 208:19

**run** 83:24

---

## S

**safe** 190:19

**Samaritans** 168:7

**sat** 97:20 163:24 164:23

**scale** 143:16,19 145:16 150:21

**scene** 47:20 151:20

**school** 188:13

**screen** 159:15 200:8 202:24

**seat** 167:11

**seated** 165:10 166:1 168:3

**seats** 163:24

**seconds** 133:1,9,10,12 135:10 142:15,16 188:5 204:16

**section** 41:10

**secured** 164:3,4

**security** 70:13

**seek** 196:15,17

**seeking** 181:3

**sell** 69:15

**send** 83:18,19

**sense** 126:4 139:19,21 182:16 192:10 193:4

**separate** 71:25 100:7

**sequence** 48:17 72:1 156:17 158:19 159:8,10 160:24 166:11 170:5

**sequences** 161:5

**Sergeant** 175:5 206:7 207:1 208:8

**series** 48:15 83:8 156:14

**services** 69:13

**set** 64:20,25

**setting** 165:17 177:14

**share** 59:23

**shirt** 158:15 170:10,17, 19 201:9

**shoes** 105:1,4 106:20 114:15,18 115:7 117:1

**shooting** 198:8

**short** 41:17 68:24 71:12 79:22 88:24 91:4 128:14 131:17

**shortly** 82:14 89:5 100:2 194:6

**shot** 140:16

**shoulder** 190:10,12,13

**shoulders** 132:19 135:21

**shouting** 127:15

**shouts** 125:17

---

Elizabeth Gallo
COURT REPORTING, LLC

www.GeorgiaReporting.com/Schedule
404.389.1155

Case 1:15-cv-03296-MLB    Document 124-2    Filed 06/13/18    Page 230 of 233

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

**show** 45:4 144:13
153:12,17,25 154:12
176:10 194:11 199:1,24

**shutter** 197:19

**side** 93:17 118:12
144:11,12 200:23
201:23

**sidewalk** 52:17 53:17
55:2 59:7 60:24 76:23
77:9 80:3 81:15,24,25
85:23 86:5,6 88:1 97:20
99:19 106:15,16
120:24,25 121:1,5,17
123:19 124:1,16 125:5
126:12 127:13 129:16
135:18 143:8,20 144:5,
7,22,24 145:20,24
146:4,9,10,14 152:8,9
156:24 157:21 187:16
188:24 201:25 202:3,4,
9,10,15,18,21 204:10,
14 205:23,24 206:12,20

**sidewalks** 62:18
123:20 125:6

**sight** 206:24

**sign** 66:8 149:13

**signal** 76:19

**signature** 167:7
208:20

**significant** 59:14
66:15 161:6

**signing** 149:19

**signs** 49:8 81:12

**Simply** 197:18

**simultaneously**
174:16

**singing** 93:5,9

**single** 182:18,23

**siren** 77:13

**sirens** 77:11

**sit** 108:8,13,22 112:24
159:4 164:20 167:12
171:22 174:21,25
175:4,8,12,16 176:5
189:8,22 191:24 197:20

**sit-in** 100:7

**site** 161:6

**sitting** 52:11 62:19
98:6 99:18

**situation** 181:23 193:7,
8

**skin** 195:23

**slipping** 195:13

**slogans** 127:16

**slowly** 83:9

**small** 123:18 125:4,9
126:12,21 127:12 128:3
168:4

**smaller** 54:17 123:16,
18 125:2,10

**social** 60:8 159:25

**sole** 50:1

**solely** 42:13

**solicitor** 172:11

**someone's** 192:10

**sophisticated** 48:10

**sore** 190:10

**sort** 95:18,21 135:1
149:4 166:11 180:21
184:6 195:15

**sought** 44:4 196:25

**sounds** 128:19 167:2

**space** 110:8 118:11
141:8

**span** 90:22,25 163:6

**speak** 46:24 47:3,7,9
48:4 51:15 73:18 81:14
88:1 98:18 103:11
104:24 157:3 205:15

**speaking** 62:20 87:13,
21 91:1 104:4

**specialized** 193:3

**specific** 45:1 46:9 51:6,
13 57:16 58:24 59:22
65:19 67:21 71:22
74:23 75:22 94:1 99:23
101:23 115:5 117:9

118:13 131:5 140:3,12
157:15,19 158:19 161:4
164:21 167:14,22
178:10 194:5,7

**specifically** 46:15
50:17 54:1,4,7 56:11
58:2 75:21 79:2 84:1,18
90:25 99:25 112:25
114:11 165:3 198:20

**specificity** 195:25

**specifics** 163:7 196:6

**speculated** 161:21

**speculation** 158:1

**Spillane** 174:19,22
179:11,13,19,22 180:1,
5,8

**spoke** 47:10,11,12 57:2
61:21,24 80:15 104:2,3
122:22

**spoken** 47:13

**spontaneous** 42:4

**spot** 98:16

**square** 195:15,19

**stack** 75:8

**stamp** 78:21 93:3 95:4
99:14

**stand** 155:14 156:22
162:18

**standing** 45:8,20
46:11,20,25 52:10,12,
17 62:18 72:13 80:1,3
81:12 84:16 106:12
123:20 125:6 126:13
127:20 140:10 142:25
145:4 147:12 201:12,24
204:7

**star** 148:8

**start** 143:19 146:5
195:1 200:25 201:1

**started** 42:16 61:12,15
67:9 164:24

**starting** 203:8 205:22

**state** 171:22 194:24

**stated** 132:11 162:4

**statement** 42:11 69:19
156:15 158:18 161:4
166:10 170:1 172:7,8
173:20 177:19 190:14,
20 191:5 194:7,9,15
206:21

**statements** 158:19

**states** 194:12

**station** 104:20 117:14
165:1,7,9 169:11
172:21 178:15 182:7
184:3

**stationary** 125:8

**stations** 165:17

**status** 123:18 169:22

**stay** 121:5,16

**step** 151:7 166:5
204:13 207:9

**stepped** 49:4

**stepping** 202:3 204:10

**steps** 205:23

**Stick** 145:12

**sticker** 110:8

**stood** 155:18 156:18
180:19

**stop** 50:24 52:5 69:25
72:14,24 74:20 79:23
80:20 133:22 134:1
160:9

**stopped** 71:22 72:3,17
74:5,8,13,24 97:20
133:7,15,21 135:8
164:25 190:18 201:4,12

**stopping** 63:21 73:2

**stops** 72:20,23

**storage** 165:12

**stories** 59:17 69:15
178:9

**story** 55:16,20 86:25

**street** 45:8,12,16,21
46:5,11,20,25 49:8
52:18 57:22 62:11
72:12,13 74:23 76:12
80:1 84:4,10 118:14



Case 1:15-cv-03296-MLB Document 124-2 Filed 06/13/18 Page 231 of 233

John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

119:6 120:24 123:20
126:16 134:18 144:10,
12,17,19 145:19 146:14
147:25 148:2,22 149:2,
6 155:13,14,16 156:24
157:21,22 162:18,19
168:13 201:13,15
202:4,9,20 205:24
206:13

**streets** 46:8 52:3,12
53:24 56:15 61:8 62:19
65:8,19,23 85:25 86:3,5
117:3,9 119:4 122:5
125:7 126:17

**stretch** 156:21

**structures** 178:9

**struggle** 203:16

**submitted** 68:8 110:25

**subsequently** 189:1

**suggesting** 158:6
182:5

**sum** 166:12

**superiors** 183:17

**supplement** 179:6

**support** 183:24 186:15
187:5 188:22 189:3

**supports** 177:19

**supposed** 59:24

**surprised** 64:24

**surrounding** 177:12

---

**T**

**T-SHIRT** 106:19

**T-SHIRTS** 103:9

**table** 165:18

**tail** 59:2 60:21 95:18
103:21 104:1 121:15

**takes** 199:20

**taking** 50:24 56:6
63:16,22 69:1 76:14
79:23 80:20 81:5,6
82:18,21 84:21 85:14
86:8,16 91:12,25 92:20

93:11,24 94:9,14 96:18,
23 97:3 98:1 100:15
102:15,22 104:8 108:7
109:19 111:3,21 113:5,
17,24 129:22 134:5,9
135:13 159:19 160:9
188:2,3,24

**talk** 72:2 105:22 191:17

**talked** 170:16 171:13
197:15

**talking** 65:13 116:4

**tapped** 151:24 152:2
160:21 203:3

**tapping** 204:19

**taps** 204:22

**task** 42:18

**technical** 60:1

**technicalities** 172:20
173:1

**technically** 181:1

**telling** 86:2 182:7 183:7

**temporarily** 76:20

**Ten** 128:15

**term** 162:8 172:12
189:14

**terminology** 167:23
185:17

**terms** 47:21 87:12
98:15 118:18 150:20
177:14 178:10

**terrified** 191:17

**testified** 45:19 94:3
95:17 111:19 135:8

**testifying** 138:22

**testimony** 41:2 49:3
108:9 130:14,20 133:23
136:21 137:17 138:16
139:7 147:16 150:13
156:10

**text** 160:1

**thing** 64:23 153:8,24
205:21

**things** 99:20,21 117:20

158:20 161:22 186:24

**Thomas** 43:19,20,21,
23 47:10,18 53:10 56:2,
6,8 57:6 69:8 90:16
91:2 104:3 152:21
153:7

**thought** 42:10

**thoughts** 166:11

**thousand** 54:11

**three-minute** 90:22

**thrown** 119:19

**thwart** 88:7,12

**thwarting** 88:9

**ticket** 161:8,15,23
163:16,17 174:13,19,23
175:2,6,10,14,18
181:12

**tie** 156:3

**tightly** 190:9 191:11,
12,16 192:5,8

**till** 163:4

**tilt** 200:9

**time** 42:23 43:22 45:13
46:9,19 47:20 49:15
53:20 65:14 66:15 67:8
68:25 70:22 71:1,12,17,
19 73:1,10,15 74:21,25
75:3,11,14,24 76:18,24
77:11 78:21 79:7,22
80:6,25 81:13 86:10,13
87:10 90:9,22,25 91:18
92:16 93:3 95:4,12
96:20 97:19 98:11 99:3,
4,14 102:17 103:18,21
106:13 110:9 112:6,15
113:5,20 115:5 119:7
120:22 121:9,10,21,22
123:3,8 127:3,7 130:21
135:8,9 140:7 141:5,8
142:2,7,12 143:22,24
144:3 145:7 146:21
147:1 148:6 149:9
151:19 152:20 153:11
154:3,11 155:3,4,15,23
156:21 158:22,23 159:9
162:1,17 163:3,4,6
164:22,23 165:2 166:3
168:25 170:3,19,24

174:10 188:12 190:9,
15,16,21 191:14 192:6
194:5 197:16 198:20
203:20 204:13,14,21,22
205:9,10 207:13 208:15

**timeframe** 171:7,10

**timeliness** 83:15

**times** 200:3

**timestamp** 78:15 80:8
81:2 83:2 89:23,24
201:1,5,12,18,24 202:1
203:8,10,24 204:6,9,18
205:4,22

**timestamps** 105:11,
12,15

**timing** 165:3

**title** 174:9

**today** 108:8,13,22
112:24 159:5 171:22
174:21,25 175:4,8,12,
16 176:5 179:5 189:9,
22 191:24 197:20

**told** 53:10 67:13 81:14
116:11 151:20,21 152:4
160:15 165:23,24
166:12

**tone** 195:23,24

**top** 102:10 144:10

**torso** 130:4,6

**totally** 89:9,14 162:24

**track** 123:21 124:9

**traded** 162:10

**traffic** 62:19 76:19,21
122:11 126:16

**training** 177:16,23
188:9 192:14 193:10

**transferred** 155:15

**transpired** 156:14

**transpiring** 135:17

**transport** 70:3,18
164:2,7,10,11

**transport-style**
163:24



Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 232 of 233
John Ruch vs City of Atlanta, et al.
John Ruch

April 12, 2018

**travel** 47:14 84:10,11 122:5

**traveled** 56:9

**treatment** 197:1

**tree** 203:14

**true** 158:7

**tug** 151:14

**turn** 89:15 93:15 97:1 100:18

**turned** 43:18 50:18 68:13 112:18

**tutorial** 192:19

**TV** 104:18

**Tweet** 59:18 60:4 68:20 69:5,17 72:25 73:3,8,17 74:17 75:7,9,18,25 76:3,10 77:4,15 96:4 101:18 105:19,22 114:22,25 115:3 123:25

**tweeted** 91:1 98:12 115:7 128:5

**Tweeter** 92:4

**Tweeting** 67:9 69:2,9 75:17,18 96:15,19 105:6,16

**Tweets** 59:13 60:10 67:13 68:3,13 75:17 105:9

**Twitter** 60:5,10 68:23 77:18 78:21 79:21 80:7, 24 81:1 82:20 83:1,3,9, 11,12 84:22 85:18 86:14 89:21 92:18,23 93:3 94:19 95:4 97:7 98:2,22 99:10,14 100:2, 16 101:5 102:12 103:1 104:10,13 105:13,16 106:3 107:11 114:18 129:12

**Twitter's** 78:15

**type** 50:10,11 64:4,7 73:24 106:21,25 107:7 180:17

**types** 52:9

**typically** 197:11

**typo** 77:2

---

**U**

**U.S.** 187:17 189:1

**Uh-huh** 94:4,6 95:20 107:17

**ultimately** 200:5

**unable** 124:14 197:21

**unarrest** 158:11

**uncommon** 134:24

**unconstitutionally** 186:20

**understand** 61:1 81:19 137:17 143:6 183:1 191:1,8 193:6,7 195:14, 18 205:19

**understanding** 51:8 136:11 137:1,4 183:4 184:23 185:1 189:12,13 193:11

**underwent** 165:25

**unified** 83:14 123:12 124:18 126:11

**uniform** 157:13

**unlawful** 182:24 183:17 186:16,22 187:6 188:22

**unlawfully** 181:25 182:25 183:3,23

**unsure** 108:10 112:5 113:5 171:16

**untrue** 182:8

**upper** 201:22 202:20, 23

**utility** 150:22

**utilizing** 63:9,13

---

**V**

**vaguest** 150:20

**valid** 183:8 184:2

**vandalism** 119:15

**varies** 132:24

**variety** 62:16

**variously** 126:13

**vehicle** 45:13,22,25 46:12,14 47:23 49:4,12 50:5 51:9 53:24 57:25 58:4,7,10,13,22 65:14 71:7,15,19 73:2,5,8,16, 17,21,22 74:3,9,13,15, 17,20,24,25 75:4,10,14, 24 76:3,8,15,17,23 77:6,10 78:2,8 79:4,5,7 122:11

**vehicle's** 84:6

**vehicles** 45:6,12 48:2 52:12 72:12 76:20 84:17 120:14

**vehicular** 84:10 126:16

**verified** 78:18 81:3

**version** 48:22,25 196:13

**vicinity** 49:19 50:19 51:21 52:2,13 53:17,18 79:15 80:12,13 115:15 128:19 131:6 149:1 161:20

**video** 63:7 109:16 114:2 198:8 199:1,2,7 200:2,4,12,14,19,25 201:1,5,8,18 204:3,25 205:15,17 206:3

**videos** 50:15 86:8 159:20 198:3

**view** 49:22 50:2

**Vine** 44:20 72:6

**violation** 187:14,15

**violations** 99:2

**virtually** 168:7

**voice** 151:15,17

---

**W**

**waist** 132:16 135:20

**wait** 114:8 165:6 195:18

**waited** 155:17 165:1

**waiting** 161:2 163:20 164:23 165:14,16

**walk** 202:14

**walked** 51:21 52:1,3 65:9,24 178:19

**walking** 56:16,20 85:22 91:2 96:19 117:6 123:20 124:15 125:6 126:13 201:14 206:11

**wall** 144:24 145:1,2 147:5

**wallet** 153:13,22 154:1, 14 197:7

**wandering** 149:5

**wanted** 129:2 161:10

**watch** 41:8 200:1 203:20

**watching** 44:12 58:19

**water** 88:21

**wave** 135:16 142:10

**waved** 129:21 136:1,6 137:18 138:3 142:8,13 147:11 150:19 160:8 162:2

**waving** 134:13 138:16 139:7 142:22 144:4 145:8 146:21 147:1 148:6 206:22 208:9

**ways** 59:22

**wearing** 103:9 106:18, 19 107:1 157:14

**WEBER** 41:9,16 48:6 50:8 51:16 52:23 53:4 60:17 63:11,18,23 66:13 67:20,23 72:17, 21 75:19 81:22 84:12 87:1 88:14 98:14 100:22 102:5 106:14 108:25 109:4,23 110:22 111:9,15,19 112:3 114:8 115:21 116:4,7, 17 117:19,23 120:6,15 121:8,12 122:8 128:21 129:1,7 132:23 133:16, 20 134:21 135:3,14,25

Case 1:15-cv-03296-MLB   Document 124-2   Filed 06/13/18   Page 233 of 233
John Ruch vs City of Atlanta, et al.
John Ruch                                                                April 12, 2018

136:7,13,19 137:8,21
138:4,18,24 140:14,17
141:3,13 142:3 143:11,
17,22 144:1,7,15 145:6,
9,14,21 146:4,18,22
147:15 148:10,21
149:16,22 150:9 154:2,
7 158:24 162:7 171:1,4,
8 172:16 178:23 179:3
182:13,17 183:1,12,25
185:6,16,21,25 186:17
189:4 191:2 192:3,25
193:18,21 196:2 198:18
199:13,17 203:15
205:14 207:7,16 208:2,
16

**website** 60:7

**Wells** 119:18

**whatever's** 144:19

**whatsoever** 160:13

**Wheatley** 43:21 47:10
53:13,16,21,25 54:5,9
55:1,13,15,20,23 56:1,
23 58:25 60:4,11,20
65:15,16,17 69:6,10
79:10,18 80:15 82:12
85:6,9 89:8,12 90:14,22
91:6 92:10 94:22 95:18
114:7 121:14,25 122:4,
10,23 152:21 154:22

**Wheatley's** 113:22

**Whitmire** 175:17
184:18,24 185:10,14
186:8,11 204:19,22

**wide** 62:16 144:5,22

**windows** 70:13 119:20,
23 120:2,13 164:4

**withhold** 83:18

**Wonderful** 196:11

**Woodruff** 43:17 49:11,
13,17,19 51:10,19
53:11,13,18 65:15 75:5
77:16 79:10 80:13

**word** 127:21 134:14
147:19 188:4

**words** 166:11,17

**work** 55:10 65:12

**wrist** 131:3,4,10,11

**wrists** 190:10 194:15

**write** 59:12 144:9

**writing** 70:14 123:25

**written** 59:19 156:15
158:17 161:3 166:9
170:1 172:7,8 179:6
190:14,20,24 191:4
194:6,9

**wrong** 74:8 109:1

**Wyatt-bullman** 41:7,
12,19,20 48:8,14 50:13
51:18 52:25 53:6 60:18,
20 63:15,20,25 66:16
67:18,22,24 72:19,22
75:23 82:5 84:20 87:4
88:17,22 89:1,2 98:17
100:24,25 102:8 106:17
109:1,8,12,25 110:2,7
111:4,11,17 112:1,4
114:12 115:23,24
116:6,10,18 117:21
118:1 120:10,19
121:10,13 122:9 128:24
129:4,8,9 131:15,19,20
133:2,18 134:2,4 135:1,
7,19 136:3,9,16,24
137:16 138:1,9,22
139:3,6 140:23,24
141:11,15,17 142:5,6
143:15,18,24 144:3,9,
18 145:7,10,11,17,23
146:2,7,11,20,25
147:24 148:20,25
150:1,5,14,15 154:3,8,
18 159:4 162:12 171:3,
6,12 173:3 179:9,10
182:22 183:2,14 184:8
185:8,19,23 186:7,23
189:8 191:8 192:7
193:6,19,22 196:3,7
198:21,24 199:6,15,19,
23 200:13,17,22 203:17
205:18,20 206:5 207:4,
9,12 208:3,7,11,14

---

**Y**

**years** 156:16

**you-all** 55:3

---

**Z**

**zip** 156:3

**Zone** 119:2 125:11
144:15 178:17

**zoomed** 140:6

**zoomed-in** 48:22,24
117:16

