# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

John Ruch,

                    Plaintiff,       Case No. 1:15-cv-03296

v.                              Michael L. Brown
                                   United States District Judge

Sergeant Michelle McKenzie,
individually,

                    Defendant.

_____/

## OPINION AND ORDER

Plaintiff John Ruch sued Atlanta Police Sergeant Michelle McKenzie for violating his constitutional rights and for false arrest after she arrested him for disorderly conduct during a protest in downtown Atlanta. For the reasons below, the Court grants Defendant McKenzie's Motion for Summary Judgment (Dkt. 122).

## I.    Factual Background

On November 24, 2014, a crowd gathered in downtown Atlanta to march and protest the police shooting of a young man in Ferguson, Missouri. Plaintiff John Ruch, a freelance reporter, traveled to the

downtown area "to find breaking news in Atlanta about spontaneous protests that were happening nationwide, relating to the Ferguson, Missouri police controversy." (Dkt. 124-2 at 42:3–6.) Plaintiff photographed protest activity, police officer response to the same, and posted those photos to Twitter from 8:48 P.M. until 11:04 P.M. without interference from police. (Dkt. 122-1 at ¶ 2.)

Shortly before midnight, a crowd of protesters moved toward the Atlanta Police Department's ("APD") Zone 5 Precinct downtown. (*Id.* at ¶ 3.) Some protestors began striking the Precinct windows and a large fight broke out. (*Id.* at ¶ 4.) Officers began arresting people. (*Id.*) Major James Whitmire, who was outside the Precinct, radioed other APD officers, including Defendant, for help stopping the fight. (*Id.* at ¶ 5; Dkt. 124-7 at 36:1–4.) He also used a bullhorn to order the protestors to clear the area around the fight and to leave the vicinity.[1] (Dkt. 122-1 at ¶ 6.)

Defendant was on the same city block as the fight. (Dkt. 124-7 at 38:2–3; 38:9.) She saw the group of protestors fighting on the sidewalk

---

[1] Plaintiff "denies" that police gave the order to disperse but cites only his deposition testimony that he does not "recall any officers issuing orders." (Dkt. 129-3 at ¶ 8.) As explained below, whether *Plaintiff* recalls the instruction is irrelevant.

outside of the Precinct.  (*Id.* at 36:19–21.)  She also saw protesters crowding around the police officers who were arresting the individuals involved in the fight.  (*Id.* at 42:1–2.)  She saw and heard Major Whitmire tell everyone in the area to disperse and clear away from the area around the fight.  (*Id.* at 31:22–32:3.)  Defendant and other officers tried to secure the area where the officers were making arrests to ensure none of the protestors attacked the officers while making those arrests.  (Dkts. 122 at 15; 124-6 at 47:2–8.)  Apparently, that "happens a lot" during protests. (Dkt. 124-6 at 47:2–8.)  Defendant faced the street with her back to the arresting officers.  (Dkt. 124-7 at 40:4–5.)

Plaintiff walked directly toward the area that APD was trying to secure.  (Dkts. 122-1 at ¶ 7; 124-7 at 34:21–23.)  Defendant McKenzie spotted him.[2]  (Dkt. 124-7 at 42:21–22.)  Defendant perceived Plaintiff's presence in the restricted area as hazardous to the arresting officers' safety and an obstacle to the arresting officers' access to the booking

---

[2] Plaintiff "denies" this.  He has no basis to deny what another individual observed or heard, particularly when he admittedly did not notice Defendant until the moment before she arrested him.  (Dkt. 124-2 at 142:20.)  None of the evidence Plaintiff cites refutes Defendant McKenzie's assertion that she saw him.  The Court finds this fact admitted under Local Rule 56.1.

teams inside the Precinct.[3]  (*Id.* at 78:6.)  She stepped directly in front of Plaintiff's path.  (Dkt. 122, Ex. L at minute mark 3:59.)  She intercepted Plaintiff, preventing him from moving any closer toward the group of officers arresting the protestors who had been involved in the fight. Defendant grabbed Plaintiff on his left wrist or forearm area with some force, causing him to take a step backward.  (Dkt. 124-2 at 151:6–7.)

Major Whitmire also saw Plaintiff approaching the area where officers were making arrests.  (Dkt. 122, Ex. L at minute mark 3:58.)  At about the time Plaintiff withdrew from Defendant's initial grasp, Major Whitmire tapped Plaintiff on the shoulder and said, "Take this one."[4] (Dkts. 122-1 at ¶ 8; 124-2 at 151:13–16.)  Defendant told Plaintiff that he was under arrest and to put his phone away.  (Dkt. 124-2 at 152:2–5.) She ordered him to lie on the ground and put his hands behind his back.

---

[3] By asserting that "There was no restricted area, and no order to exit such area," Plaintiff tries to "deny" this fact.  (Dkt. 129-2 at ¶ 18.)  He cites no supporting evidence.  (*See id.* (citing his own deposition testimony that he did not recall anyone issuing orders, the same evidence used to "deny" the prior two material facts).)  The Court finds this fact admitted under Local Rule 56.1.

[4] Plaintiff disputes whether Major Whitmire first gave Defendant the order to arrest him or if she acted on her own.  (Dkt. 129-2 at ¶ 8.)  The sequence of these events is not determinative of qualified immunity.

(Dkt. 129-2 at ¶ 10.) Plaintiff complied without argument. (Dkt. 124-2 at 152:7–8.)

In his complaint, Plaintiff claims he was standing still on the sidewalk and "remained there" prior to his arrest. (Dkt. 32 at ¶ 16.) He says he stayed on the sidewalk and merely "shifted his body slightly" to get a better camera angle just before his arrest. (*Id.* at ¶ 20.) But video shot by a drone that night shows otherwise. (Dkt. 122, Ex. L.) The video footage shows Plaintiff step off the sidewalk in one location, walk around a group of people watching and filming the fight, and step back onto the sidewalk — directly into the area where Defendant stood protecting the officers making arrests. (*Id.* at minute mark 3:58.) Contrary to Plaintiff's allegations, he was not standing still at the time of his arrest. He was moving toward the area Defendant was trying to secure. Plaintiff also claims she arrested him while he was shooting video of the police action. (Dkt. 32 at ¶¶ 16–17, 20, 24.) But other people were taking photos or shooting video, and police did not arrest them. (Dkt. 122, Ex. L at minute mark 3:33–3:50.)

Defendant turned Plaintiff over to APD's booking team. (Dkt. 122-1 at ¶ 11.) The arrest citation states that Plaintiff "refused to clear the

area when officers were in-gaged [sic] in a fight. The accused remained in the path of officer [sic] and refused to comply, blocking officers from each other." (Dkt. 122-2, Ex. A.) Police took him to the Atlanta Detention Center but released him before placing him in a cell. (Dkt. 122-1 at ¶ 12.) The police later dropped all charges. (*Id.* at ¶ 13.)

## A.    Procedural History

Plaintiff filed his initial complaint alleging violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution, 41 U.S.C. § 2000aa, and Georgia state law. (Dkt. 1.) He asserted these claims against the City of Atlanta and various members of APD. (*Id.*) He then filed an amended complaint, again naming the City of Atlanta and several police officers. (Dkt. 32.) After the Court dismissed some charges and other procedural steps, the parties jointly agreed to dismiss with prejudice all claims against the City of Atlanta and all individual defendants except Defendant Sergeant Michelle McKenzie. (Dkt. 121). She became to sole defendant. In Count One, Plaintiff alleges Defendant McKenzie violated his Fourth Amendment rights when she arrested him without justification for simply trying to photograph the police. (Dkt. 32 at ¶¶ 86–90.) In Count Two, he alleges Defendant McKenzie violated his

First Amendment right to constitutionally protected free speech when she arrested him while he was filming the police. (*Id.* at ¶¶ 91–94.) He filed Counts One and Two under 42 U.S.C. § 1983. In Count Four,[5] he asserted a claim under Georgia law for unlawful detention (GA. CODE ANN. § 51-2-70),[6] assault and battery (§ 51-1-13, -14), and malicious prosecution (§ 51-7-44). (*Id.* at ¶¶ 98–103.)

Defendant McKenzie moved for summary judgment on all counts. (Dkt. 122 at 10.) She claims she is entitled to qualified immunity on Plaintiff's Fourth and First Amendment claims and official immunity on his Georgia state-law claims.[7] (*Id.* at 10, 20.)

---

[5] The Court previously dismissed Count III. (Dkt. 40 at 31.)

[6] Plaintiff's amended complaint alleges a claim under § 51-2-70 for unlawful detention. (Dkt. 32 at ¶ 99.) Unlawful detention is not a claim under Georgia law and § 51-2-70 does not exist within the Georgia Code. Out of an abundance of caution, the Court assumes that Plaintiff meant to cite § 51-7-20, the code provision for False Imprisonment under Georgia law. This potential oversight, however, does not alter the Court's official immunity analysis below.

[7] Plaintiff violated Local Rule 56.1B, which requires that "[e]ach material fact must be numbered separately and supported by a citation to evidence proving such fact." *See* LR 56.1B(2)(b), NDGa (requiring the same from respondents to motions for summary judgment). Some of Plaintiff's "facts" contain seven or eight individual facts. He also fails to explain why certain facts are material, provides argumentative responses, and cites deposition testimony that is irrelevant to the point at issue. (*See, e.g.*, Dkt. 129-2 at ¶ 6.)

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is

---

The Court is not required to "investigate the record in search of an unidentified genuine issue of material fact to support a claim or defense." *See Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (quoting *Libel v. Adventure Lands of Am.*, 482 F.3d 1028, 1032 (8th Cir. 2007)). That is Plaintiff's job. Even so, the Court "conduct[ed] an assiduous review of the record" before concluding Defendant is entitled to summary judgment. *Id.* at 1271 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).

no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A moving party meets this burden merely by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The movant, however, need not negate the other party's claim.  *Id.* at 323.  In determining whether the moving party has met this burden, a court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion.  *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Ultimately, there is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party.  *Id.*  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

As mentioned above, a drone recorded much of the action relevant to Plaintiff's claims. Under Eleventh Circuit precedent, "in cases where a video in evidence obviously contradicts the nonmovant's version of the facts, [a court] accept[s] the video's depiction instead of the nonmovant's account and view[s] the facts in the light depicted by the videotape." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (2018) (citations omitted) (alterations accepted). Neither party has disputed the accuracy or authenticity of the video nor suggested that it is untrustworthy. As a result, the Court "accept[s] facts clearly depicted in a video recording even if there would otherwise be a genuine issue about the existence of those facts." *Id.* at 1097 n.1.

## III. Discussion

### A. Federal Claims & Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted). So "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). When properly applied, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted).

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010). A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties and within the scope of his authority." *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988). "Once the defendant establishes that he was acting within his

discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. The parties agree Defendant acted within the scope of her discretionary authority when arresting Plaintiff. (Dkts. 122 at 11; 130 at 5 n.3.) *See, e.g.*, *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect). Plaintiff, thus, has the burden of showing that qualified immunity is unavailable to Defendant.

The qualified immunity analysis presents two questions: first, whether the allegations taken as true establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established, [the court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [the court is] permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

A constitutional right is only clearly established for qualified immunity purposes if "every reasonable official would have understood

that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted) (alteration adopted). Put differently, "existing precedent must have placed the statutory or constitutional question beyond debate" to give the official fair warning that his conduct violated the law. *Id.*; *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) ("The critical inquiry is whether the law provided [defendant officers] with 'fair warning' that their conduct violated the Fourth Amendment."). The Supreme Court has explained that the question is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *See Saucier v. Katz*, 533 U.S. 194, 194–95 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202.

A plaintiff typically shows that a defendant's conduct violated clearly established law by pointing to "materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296. While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin,* 642 F.3d at 1013.

In *White v. Pauly*, the Supreme Court reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). The Supreme Court held that to defeat a claim of qualified immunity, a plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Id.* "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* The Supreme Court has also explained that avoiding qualified immunity does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

Fair warning can also arise from two other sources. First, "[a]uthoritative judicial decisions may 'establish broad principles of law' that are clearly applicable to the conduct at issue." *Gates*, 884 F.3d at 1296 (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1209 (11th Cir. 2007)). Second, "it may be obvious from 'explicit statutory or

constitutional statements' that conduct is unconstitutional." *Id.* (citing *Griffin Indus.*, 496 F.3d at 1208–09). Regardless of the method, the preexisting law must "make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). In this way, qualified immunity does what it should: it "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (alterations adopted).

"The burden thus lies with Plaintiff to show that his arrest violated a constitutional right and that the right was clearly established at the time of the arrest." *Gates*, 884 F.3d at 1297. The Court finds Plaintiff cannot satisfy either prong of this analysis.

### 1. Constitutional Violation

In his Section 1983 claims, Plaintiff alleges Defendant arrested him without probable cause in violation of his Fourth Amendment rights and while engaging in activity protected by the First Amendment. To be sure, a "warrantless arrest without probable cause violates the Fourth

Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). Likewise, such an arrest could give rise to a claim under the First Amendment. On the other hand, the existence of probable cause is an absolute bar to a claim of unlawful arrest under either the Fourth or First Amendment. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest."); *Dahl v. Holley,* 312 F.3d 1228, 1236 (11th Cir. 1998) ("Whatever the officers' motivation, however, the existence of probable cause to arrest [the plaintiff] defeats her First Amendment claim."), *abrogated by Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018).

An officer has probable cause to arrest "if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016); *see also Boyd v. State*, 658 S.E.2d 782, 784 (Ga. Ct. App. 2008) (internal quotation marks omitted) (alterations adopted) (finding probable cause "if, considering the totality of the circumstances,

at the time of arrest he had a reasonable belief that the defendant had committed a crime in his presence or within his knowledge"). Importantly, the test for qualified immunity is not whether the officer actually had probable cause to support the arrest. The test is whether arguable probable cause exists. In other words, "[e]ven without actual probable cause . . . a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." *Gates*, 884 F.3d at 1298.

Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] <u>could</u> have believed that probable cause existed to arrest." *Id.* (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1383–84 (11th Cir. 1998)). Arguable probable cause provides protection from both Fourth Amendment claims for false arrest and First Amendment claims stemming from an arrest. *Id.* at 1298; *see also Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013) ("[A]n arrest may be for a different crime from the one for which probable cause actually exists, . . . but arguable probable cause to arrest for *some* offense must exist in order for officers to assert qualified immunity from suit." (citations omitted)).

Based on the undisputed material facts, the Court finds that, in the light of the totality of circumstances, Defendant had a reasonable belief that, at the time of the arrest, Plaintiff was or was about to obstruct the work of the officers arresting those involved in the fight. Alternatively, even if Defendant did not have probable cause to arrest Plaintiff, she at least had arguable probable cause — that is, the Court finds that a reasonable officer in Defendant's position could have believed she had probable cause to arrest Plaintiff for disorderly conduct and obstruction.

An individual commits that crime when he or she "[i]nterfere[s], by acts of physical obstruction, another's pursuit of a lawful occupation." Atlanta City Ordinance § 106-81(7). The ordinance applies to include obstruction and interference, for instance, with a police officer attempting to effectuate an arrest, as in this case.

The undisputed evidence shows that Major Whitmire gave several orders over the bullhorn for the protesters to disperse, that Defendant was in a position to hear the instruction since he was "on the very same block," and that other protestors heeded the orders. (Dkt. 124-7 at 30:16–25; 31:8–12; 31:22–32:4; 38:9–14.) She testified that she saw Plaintiff ignore Major Whitmire's direction by approaching her and the area

around the officers making the arrest. (Dkt. 124-7 at 30:10–15.) She did not know what his intentions were, that is, whether he intended to interfere with the arrest or cause trouble. (*Id.* at 33:12–14.) But, she knew he had disobeyed Whitmire's instructions and feared he might be a threat to the arresting officers. (*Id.* at 31:22–32:3.) She arrested him for failing to follow those orders. (*Id.* at 34:8.)

It is undisputed that Plaintiff did not comply. To the contrary, he moved from one place on the sidewalk, into the street, and then back up onto the sidewalk. He re-entered the sidewalk, where Defendant provided back up support to the officers making arrests. In doing so, Plaintiff walked between Major Whitmire and Defendant McKenzie — that is, directly into the area Major Whitmire had ordered the crowd to evacuate and the area in which Defendant was trying to keep clear to protect the other officers. The drone footage establishes his movement beyond any doubt. From these circumstances and based on the information available to Defendant at the time, it was reasonable for her to infer that Plaintiff was defying Major Whitmire's blaring order to back away from the arresting officers and clear the area.

Plaintiff argues that he does not recall hearing Major Whitmire's instructions and thus is not at fault for failing to obey. (Dkt. 130 at 24.) He also claims police never gave him an individualized warning not to enter the area. (*Id.*) Finally, he claims summary judgment is inappropriate because the "safety zone" he allegedly entered was not "sufficiently clear for a citizen to know what area to avoid." (Dkt. 130 at 18–20.) His explanations are irrelevant. *See Gates*, 884 F.3d at 1302 ("It is not Plaintiff's post-hoc explanation of his actions that counts."). The qualified immunity analysis focuses on what *Defendant* knew at the time and "what a reasonable police officer under the circumstances could infer from [plaintiff's] actions." *Id.* Plaintiff's recollection of a warning, whether officers warned him individually, and his understanding of the area he could not enter are not the relevant facts.

When she arrested Plaintiff, Defendant knew there was a "melee of people fighting." (Dkt. 124-7 at 38:18.) She knew Major Whitmire had ordered people to leave the area. (*Id.* at 31:22.) She knew there were other officers making arrests. (*Id.* at 30:7–8.) She knew, in these situations, people sometime attacked officers from the rear. (Dkt. 124-6 at 47:2–8.) She took a position to protect them. (Dkt. 124-7 at 31:4.) She

knew Plaintiff walked into that area, against Major Whitmire's orders. (*Id*. at 42:21–22.) Finally, she knew Major Whitmire had instructed her to arrest Plaintiff by pointing him out. (*Id*. at 44:24.) A reasonable person in Defendant's position could have believed Plaintiff intentionally disobeyed police instructions and was a threat to the officers making the arrests. As a result, a reasonable officer could have concluded there was probable cause to arrest Plaintiff for disorderly conduct and obstruction.[8]

The Eleventh Circuit recently addressed a similar issue in another false arrest case arising from the same protests in Atlanta. *Gates v. Khokhar*, 884 F.3d 1290 (11th Cir. 2018). *Gates* involved the arrest of protestors wearing Guy Fawkes masks styled after a character in a popular movie. *Id*. at 1295. Georgia has a so-called "mask statute" that makes it a crime to wear a mask concealing one's identity in a public area. *Id*. (citing GA. CODE ANN. § 16-11-38). To establish a violation of this

_____

[8] That the City later dropped all charges against Plaintiff is also irrelevant. The City's later decision does not prevent a finding of probable cause at the time of the arrest. Indeed, Plaintiff claims the City made the decision "only after political pressure on the Mayor's office." (Dkt. 124-2 at 172:23–24.) The Court analyzes qualified immunity from the view of the reasonable officer at the time of the arrest, not the charging decision of a prosecuting lawyer at a later time.

statute, the government must show that the wearer of the mask knows or reasonably should know that his or her actions cause reasonable apprehension of intimidation, threats, or violence. *Id.*

On the night of the protest, Major James Whitmire instructed protestors to remove their masks and warned that police would arrest anyone who failed to do so. *Id.* The masked plaintiff in *Gates* did not comply, and police arrested him. *Id.* He sued several police officers claiming they were without probable cause to arrest him and alleging violations of his Fourth and First Amendment rights. *Id.* As the basis for his claim, the plaintiff alleged he never heard Major Whitmire tell people to remove their masks and therefore did not intentionally violate the order. *Id.* He also alleged that he never intended to threaten or intimidate anyone. *Id.*

The trial court denied qualified immunity, finding that — given the plaintiff's undisputed evidence that he never intended to intimidate anyone — the police lacked even arguable probable cause to arrest him for violating the mask statute. *Id.* The Eleventh Circuit reversed, finding the district court erred in assessing the facts from the plaintiff's subjective intent — that he never intended to intimidate anyone by

donning the mask. *Id.* at 1301–02 ("Ergo, the court concluded, arguable probable cause evaporated. This approach was error."). The panel also rejected as irrelevant the plaintiff's claim that he did not hear the order instructing him to remove his mask. *Id.* at 1301. In doing so, the court again reiterated the often-repeated rule: "for purposes of qualified immunity analysis [a court looks] only to whether a reasonable officer, knowing what defendants knew at the time, objectively could have believed probable cause existed." *Id.* (internal quotations omitted). The court went on to explain that a reasonable officer could infer an individual's intention to violate Georgia law from his apparent decision to disobey Major Whitmire's instructions. *Id.* at 1302.

The same is true here. It may be that Plaintiff did not hear the instructions and did not know he was prohibited from approaching the area where officers were making arrests. But he did disobey the order. And he did enter the restricted area. As a result, a reasonable officer at the scene could have determined he intended to violate the City's obstruction ordinance. Defendant had probable cause to believe that Plaintiff — as he moved toward her and thus directly toward the

arresting officers behind her — was about to commit an offense by interfering with those officers.

There seems to be some disagreement about whether Major Whitmire first ordered Plaintiff's arrest and Defendant then followed his direct order, or whether Defendant began to arrest Plaintiff before Whitmire's order. In any event, the precise sequence of when exactly Major Whitmire issued the order is immaterial to the Court's determination of whether Defendant is entitled to summary judgment. With or without a direct order from her superior officer, Defendant had probable cause, or at least arguable probable cause, to arrest Plaintiff under these facts. The Court, however, concludes that based on the evidence before it and the information available to her at the time, Defendant reasonably believed that Major Whitmire had directed her to arrest Plaintiff when he gestured to Plaintiff and tapped him on the shoulder. Major Whitmire's provision of the specific instruction further supports the Court's finding that Defendant had probable cause to arrest Plaintiff.

Plaintiff asserts that he "states a triable claim for retaliatory arrest" — specifically that Defendant arrested him for exercising his

First Amendment right to film the police. (Dkt. 130 at 8.) First, Plaintiff filed no claim for retaliatory arrest. He alleged that he was arrested while filming and that the arrest prevented him from continuing to film the police, not that the police arrested him *because* he was filming. (Dkt. 32 at ¶¶ 92–94.)

Second, even if he had brought a retaliation claim, Defendant would still be entitled to qualified immunity. The Eleventh Circuit has held that, when an officer has probable cause or arguable probable cause to arrest an individual who is engaged in First Amendment activity, the officer is entitled to qualified immunity from suit for alleged First Amendment violations. *Redd*, 140 F.3d at 1383. Probable cause to arrest, whether actual or arguable, shields the arresting officer from First Amendment liability just as it does Fourth Amendment liability. *Id.*

There is one narrow exception. In *Lozman v. City of Riviera Beach*, the Supreme Court held that a First Amendment claim for retaliatory arrest might survive probable cause to arrest, if the plaintiff bases his claim not on an alleged retaliatory action by a specific officer, but on a claim of "an official municipal policy of intimidation." 138 S. Ct. 1945,

1948 (2018) (internal quotation marks omitted). An aggrieved party typically brings such a claim against the municipality, not the arresting officer. *See id.* Plaintiff certainly has not pleaded this narrow exception. He sued Defendant for her actions on the night of the protest, not the City of Atlanta for some grander plan to retaliate against him.

Third, even if Plaintiff had asserted such a claim, Defendant would still be entitled to summary judgment. While Plaintiff asserts his subjective belief that Defendant tried to keep him from taking photographs of the scene and (now) argues she arrested him for doing so, the record contains no evidence to support this claim. Defendant explained that she stopped Plaintiff because he was trying to enter the restricted area in disobedience of Major Whitmire's order. (Dkt. 124-7 at 42:21–22.) She asserts that the time between when she first saw Plaintiff and when she arrested him was less than a second. (*Id.* at 44:4–6.) Her recollection is further supported by the drone footage. Defendant also denies waving her hand in front of Plaintiff's camera to purposefully disrupt him from taking a video or photo. (*Id.* at 78:17.)

Plaintiff has not presented any evidence to raise a material dispute in support of a retaliation claim. The undisputed evidence shows that

Defendant arrested Plaintiff within mere "seconds" of the time he arrived on the scene.[9]  Plaintiff concedes that he saw no officers observing him as he took photographs of the scene and that none of the photographs he took involve a police officer making an arrest.  (Dkt. 124-2 at 207:19–23; 207:24–208:1.)  He admits he did not see Defendant watching him take photos before he stepped in front of her, Defendant never told him to stop taking photos, and police later returned his camera phone in proper working condition.  (*Id.* at 160:4–7; 160:8–11; 208:8–10.)  The video footage and other evidence proves also that dozens of other people were taking photos of the commotion and police activity, with no police interference.  And Plaintiff acknowledges that no one stopped him or anyone else from taking photographs that night.  (*Id.* at 50:24–51:1; 63:15–24; 80:20–22.)  Even viewing all facts in Plaintiff's favor, the record plainly contradicts his subjective beliefs and conclusory allegations.  *See*

---

[9] Dkt. 124-2 at 206:19–207:3 ("Q. In the one second that you were still on the sidewalk, you were able to, according to your statement, maintain an angle for the photograph, observe someone waving their hand in front of your camera, refocus your camera, attempt to pivot in order to regain the sight – the sight of the image you were attempting to photograph, and witness . . . Sergeant McKenzie leap in front of you. Is that accurate? A. Yes.").

*Gates*, 884 F.3d at 1302 ("It is not Plaintiff's post-hoc explanation of his actions that counts.").

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The video drone footage here "completely and clearly contradicts" Plaintiff's testimony that Defendant arrested Plaintiff because he was recording the protests with his phone. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (noting that "where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible").

And while a court must draw reasonable inferences in the nonmovant's favor, the Court cannot reasonably infer, based on the evidence before it, that a causal connection exists between Plaintiff's First Amendment activity and his arrest. There is no material dispute of fact here. Plaintiff's beliefs and conjectures about Defendant's motivations are not facts. The Court thus concludes that no reasonable jury could find for Plaintiff on this point.

Plaintiff has failed to carry his burden of establishing the first prong of the qualified immunity analysis — that Defendant McKenzie violated his Fourth or First Amendment rights.

## 2. Clearly Established Law

Plaintiff also fails to meet his burden to show that the right was clearly established at the time of the arrest — as of November 25, 2014. The core question on this prong of the qualified immunity analysis is "whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff <u>under the particular circumstances Defendant[ ] confronted.</u>" *Gates*, 884 F.3d at 1303.

Plaintiff claims he had a clearly established right to photograph on Atlanta's public streets. (Dkt. 130 at 3.) That general right is irrelevant to the fact-specific analysis required for qualified immunity. Instead, Plaintiff has the burden of identifying some legal precedent precluding Defendant McKenzie's conduct under these circumstances. He cites no "materially similar precedent" existing at the time from the Supreme Court, this Circuit, or the Georgia Supreme Court that would have put

every reasonable officer on notice that it was unlawful to arrest Plaintiff for disregarding Major Whitmire's instructions and walking into the area police were trying to secure. The Court has also found no such case.

None of the cases Plaintiff cites deal with Atlanta City Ordinance § 106-81(7), the municipal ordinance APD charged Plaintiff with violating. None of the cases concern individuals arrested during large public demonstrations. Plaintiff's citation to out-of-circuit cases is unavailing in showing that the law at the time was clearly established and in fact highlights the lack of binding, clearly established law. (Dkt. 130 at 6 (citing cases from the First, Seventh, and Ninth Circuits).) Plaintiff has failed to carry his burden on this second prong of the qualified immunity inquiry, and "that is not surprising, given [the] conclusion that, at the very least, Defendant[ ] arguably had probable cause to arrest." *Gates*, 884 F.3d at 1303–04.

Plaintiff cites *Bowens v. Superintendent of Miami South Beach Police Department*. 557 F. App'x 857 (11th Cir. 2014). That case — which went to the Eleventh Circuit on a motion to dismiss, not summary judgment — concerned allegations by the plaintiff that while he was photographing an arrest from two blocks away, police approached him,

covered their badges, demanded to see him camera, and then when he refused, forcibly seized the camera, arrested him with guns drawn, and erased the images he had taken. *Id.* at 859. None of the facts in *Bowens* are similar to those in Plaintiff's case. It is undisputed that Defendant did not cover her badge to hide her identity, demand to see Plaintiff's camera phone, draw her weapon, or erase any of the images from his phone, which Plaintiff acknowledges was returned to him unaltered and in proper working condition. *Bowens* is thus inapposite.

Plaintiff also cites several other cases — including *Smith v. City of Cumming* and *WSB-TV v. Lee* — that stand for the proposition that individuals enjoy a First Amendment right to videotape police activities. (Dkt. 130 at 5–7.) As the Court mentioned above, however, that right is not in dispute here. What matters is the material similarity between the facts of Plaintiff's own case and the cases he cites. None of the cases are similar, beyond defining the First Amendment right at a high level of generality, which is not at issue here. Plaintiff has thus failed to carry his burden of establishing the second prong of the qualified immunity analysis — that on the day of his arrest, Defendant McKenzie violated clearly established law.

## B. State Law Claims & Official Immunity

Defendant also claims she is entitled to summary judgment on the ground of official immunity for Plaintiff's remaining state-law claims — false imprisonment, assault and battery, and malicious prosecution. (Dkt. 122 at 19–20.)

Under Georgia law, government officials "are entitled to official immunity from suit and liability unless they '. . . act with actual malice or an intent to injure when performing a discretionary act.'" *Speight v. Griggs*, 579 F. App'x 757, 759 (11th Cir. 2014) (citing *Roper v. Greenway*, 751 S.E.2d 351, 352 (Ga. 2013) and GA. CONST. art. I, § II, par. IX(d)). Again, the parties agree that Defendant performed a discretionary act when arresting Plaintiff. (Dkts. 122 at 11; 130 at 5 n.3.) The only question, then, is whether Defendant acted with actual malice or actual intent to injure.

The Supreme Court of Georgia has defined actual malice in the context of official immunity to mean a "deliberate intention to do a wrongful act" or "an actual intent to cause injury." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). Similarly, actual intent to injure requires

"actual intent to cause harm to the plaintiff," not merely the intent to do an act that causes harm. *Gates*, 884 F.3d at 1304.

The record contains no evidence Defendant acted with actual malice or an actual intent to injure Plaintiff as Georgia law defines those terms. Though Plaintiff alleges that Defendant's actions were "malicious, reckless, and callously indifferent" to Plaintiff's rights, he cites no record evidence to support this allegation. (Dkt. 130 at 32.) The undisputed evidence shows that Defendant simply arrested him. No evidence suggests she hurt him, mistreated him, or abused him in any way. Indeed, Plaintiff does not even argue that she did. He only cursorily addresses this claim in response to Defendant's motion for summary judgment. (*Id.*) He simply refers to the Court's previous order denying defendants' motions to dismiss, where the Court stated there was "a reasonable inference that at least some of the Defendant officers acted with actual malice." (Dkt. 40 at 34.) The Court, however, made that statement based on the allegations in Plaintiff's complaint, not the evidence presented at summary judgment. The Court based its conclusion on Plaintiff's allegation — accepted as true for purposes of the

motion to dismiss — that the officers arrested Plaintiff *without* probable cause.[10]

As explained above, however, the undisputed evidence available at summary judgment shows Defendant had probable cause or at least arguable probable cause to arrest — a fundamentally different factual predicate than existed at the motion to dismiss stage. Based on the evidence in the record, no reasonable jury could find that Defendant acted with actual malice or an intent to injure, as defined under Georgia law. Drawing all reasonable inferences in Plaintiff's favor, the evidence shows that Defendant arrested Plaintiff because she believed he had intentionally disobeyed Major Whitmire's order and posed a potential risk to the arresting officers. Plaintiff's own testimony provides the best evidence of how she treated him. He claims she grabbed his left wrist or forearm with "some force" and "ordered [him] to get on the ground, so [he] laid down on the sidewalk." (Dkt. 124-2 at 130:21–131:3; 151:7; 152:7–

---

[10] The Court also did not direct that particular finding at Defendant McKenzie. (Dkt. 40 at 34.) The Court cited Plaintiff's allegations of conduct by other officers, including Plaintiff's claim another officer admitted to him that he had been arrested on a "bullshit charge" but would not let him go. (*Id.*)

8.)  Yet none of these facts, either individually or collectively, support a plausible finding of actual malice under Georgia law.  *Cf. Selvy v. Morrison*, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008) (finding absence of actual malice when defendant police officer grabbed and twisted plaintiff's arm behind her back, slammed her face into the wall, kicked her legs out from under her, and directed profane language at her during arrest).  Official immunity under Georgia law provides expansive protection for police officers acting in good faith.  *Reed v. DeKalb Cty.*, 589 S.E.2d 584, 587 (Ga. App. 2003) ("Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies.").

At most, "Plaintiff was arrested and subjected to the routine inconveniences that attend any arrest.  These facts are obviously insufficient to show actual malice or intent to injure." *Gates*, 884 F.3d at 1305.  Defendant is entitled to judgment as a matter of law on Plaintiff's state-law claims under Georgia official immunity.

## IV.  Conclusion

In addressing the obligations of police officers facing protestors and chaotic circumstances, the Supreme Court stated:

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance."

*Cty. of Sacramento v. Lewis,* 523 U.S. 833, 853 (1998) (citation omitted).

The law does not second-guess the split-second decisions of police officers in the field. *See Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007). Immunity — when properly applied — mitigates "the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties." *Harlow v. Fitzgeral*d, 457 U.S. 800, 814 (1982) (internal quotation marks omitted). Defendant McKenzie is entitled to immunity for her actions.[11] The Court **GRANTS** her Motion for Summary Judgment (Dkt. 122) and **DIRECTS** the Clerk to close this case.

---

[11] The Court is in receipt of Plaintiff's Notice of Supplemental Authority (Dkt. 140). Plaintiff did not request leave to file any supplemental briefing and his filing is therefore untimely and improper. The Court, however, has considered the two cases that Plaintiff cites and concludes that neither affects the Court's decision to grant summary judgment.

**SO ORDERED** this 28th day of March, 2019.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE